IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| ROBYN MORGAN, on behalf of herself and all similarly situated individuals,<br><br>     Plaintiff,<br><br>vs.<br><br>SUNDANCE, INC.,<br><br>     Defendant. | Case No.:  4:18-cv-00316-JAJ-HCA |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS OR, ALTERNATIVELY, TO STAY**

Plaintiff's putative collective action lawsuit against Defendant Sundance, Inc. ("Sundance" or "Defendant"), a Michigan corporation, should be dismissed or, alternatively, stayed under the first-filed rule and Fed. R. Civ. P. 12(b)(3). This is the second nationwide putative collective action case alleging that Defendant engaged in a common plan to violate the overtime provisions of the Fair Labor Standards Act ("FLSA") by failing to pay employees for all hours they worked and/or failing to pay employees the required overtime rate for all hours worked over forty in a week. The first was filed more than two years ago in the Eastern District of Michigan on October 7, 2016, *Wood v. Sundance, Inc.*, Case No. 2:16-cv-13598-GCS-RSW (the "Wood Action"); Exhibit A, *Collective Action Complaint in the Wood Action*. The previously filed action involves overlapping parties and identical issues with this case. In fact, the Complaint in this action and Amended Collective Action Complaint in the Wood Action are near carbon copies of each other. Each centers on whether a purported nationwide class of current and former hourly crew members and other employees employed by Defendant at its Taco Bell branded restaurants were subjected to

Defendant's alleged "common plan or practice failing to pay them for all hours worked and/or failing to pay them proper overtime wages." Compl. ¶¶ 26-27; Exhibit B, *Amended Collective Action Complaint in the Wood Action*, ¶ 34-35.  Also, each case involves Sundance as the sole defendant. Dismissing this case (or alternatively staying it) would serve the interests of comity, judicial economy, and certainty in the law.  Accordingly, under the first-filed rule and Fed. R. Civ. P. 12(b)(3), Defendant moves to dismiss or, alternatively, stay Plaintiff's Complaint.

## BACKGROUND FACTS

### I.    The Complaint

On September 25, 2018, Plaintiff, Robyn Morgan ("Plaintiff" or "Morgan"), filed this putative nationwide collective action complaint under the FLSA, 29 U.S.C. §§ 201-219. [Dkt. No. 1] ("Compl.").   Plaintiff brings this action "on behalf of herself and all other Crew Members and other hourly employees who have worked for Sundance at any time between three years before the commencement of this action and the date of final judgment in this matter."  Compl. ¶ 26 [Doc. 1].  Plaintiff alleges that Defendant had a "common plan" to violate the overtime provisions of the FLSA by failing to pay employees for all hours they worked and/or failing to pay employees the required overtime rate for all hours worked over forty in a week by allegedly: (1) requiring employees to perform off-the-clock work, (2) shifting employees' worked hours from week to week to avoid paying the overtime rate on such hours, and (3) capping employees' hours at 40 hours per week regardless of the number of hours actually worked. Compl. ¶¶ 17-25, 27.

Plaintiff seeks to include in her collective action "all other Crew Members and other hourly employees who have worked for Sundance at any time between three years before the commencement of this action and the date of final judgment in this matter."  Compl. ¶ 26. Plaintiff

2

seeks compensation for overtime hours worked, liquidated damages, and attorneys' fees for herself and on behalf of all similarly situated employees. *Id.* ¶ 40.

## II.     The Wood Action

Nearly two years before Plaintiff filed this action, the first putative nationwide collective action was filed against Sundance for the same alleged practices. On October 7, 2016, Plaintiffs Jolene Flanagan, Travis Pietrykowski, Michelle Wilkins, and Denise Wood filed the first putative nationwide collective action under the FLSA in the Eastern District of Michigan naming Sundance, Inc. as the Defendant. *See* Exhibit A.[1] As in this case, the named Plaintiffs in the Wood Action brought their action on behalf of themselves and "all other Crew Members, Team Leaders, Shift Managers, and other hourly employees who have worked for Sundance at any time between three years before the commencement of [the] action and the date of final judgment in this matter." Exhibit B, ¶¶ 34-35.

The plaintiffs in the Wood Action also claim that Defendant had a "common plan" to violate the overtime provisions of the FLSA by failing to pay employees for all hours they worked and/or failing to pay employees the required overtime rate for all hours worked over forty in a week by allegedly: (1) requiring employees to perform off-the-clock work, (2) shifting employees' hours worked from week to week to avoid paying the overtime rate on such hours, and (3) capping employees' hours at 40 hours per week regardless of the number of hours actually worked. Exhibit B, ¶¶ 22-33, 35.

In the Wood Action, by stipulated order, a class has been conditionally certified as to current and former hourly crew members and shift leaders employed by Defendant at its Taco Bell

---

[1] The Complaint in the Wood Action initially included claims for the alleged misclassification of overtime exempt employees in addition to claims for failure to pay overtime wages. On October 5, 2017, the plaintiffs in the Wood Action filed an Amended Collective Action Complaint withdrawing the misclassification claims and modifying the named plaintiffs. *See* Exhibit B.

branded restaurants in Michigan. *See* Exhibit C, *June 21, 2017, Stipulated Order*. However, the Wood Plaintiffs reserved their right to expand the conditional class to a nationwide class depending on information obtained during discovery. Indeed, after entry of the June 21, 2017, Order, the Wood Plaintiffs filed their Amended Collective Action Complaint on October 5, 2017, re-affirming their intention to seek a nationwide class. *See* Exhibit B, ¶¶ 34, 35. Additionally, an opt-in notice and consent form were sent to the putative class members in the Wood Action, consisting of more than 8,600 individuals employed by Defendant in Michigan during the three-year class lookback period. At the closure of the opt-in period, 509 employees returned consent forms opting in to the conditionally certified class. Discovery has commenced as to those opt-in plaintiffs.

## Argument

### I.    Plaintiff's Lawsuit Should Be Dismissed.

#### A.    The First-Filed Rule Applies.

The Eighth Circuit has stated that, "[t]o conserve judicial resources and avoid conflicting rulings, the first-filed rule gives priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction." *Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1006 (8th Cir.1993) (emphasis added). "In the absence of compelling circumstances, the court initially seized of a controversy should be the one to decide the case." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982) (*citing Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403 (5th Cir. 1971)) (affirming dismissal of second-filed action).

Comity is the primary underpinning of the first-filed rule. *Id.* at 1173-74; *see also Covell v. Heyman*, 111 U.S. 176, 182 (1884). Courts have similarly stated that "[t]he primary purpose of the rule is to conserve judicial resources and avoid conflicting rulings." *Allstate Ins. Co. v.*

4

*Clohessy*, 9 F. Supp. 2d 1314, 1316 (M.D. Fla. 1998) (*citing Nw. Airlines, Inc.*, 989 F.2d at 1006).

"The concern [of the first-filed rule] manifestly is to avoid the waste of duplication, to avoid rulings

which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues

that call for a uniform result." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir.

1997) (ordering transfer of subsequent action under first-filed rule); *see also Colo. River Water

Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976) ("[A]s between federal district

courts . . . the general principle is to avoid duplicative litigation.").

"When two actions involving overlapping issues and parties are pending in two federal

courts, there is a strong presumption across the federal circuits that favors the forum of the first-

filed suit under the first-filed rule." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir.

2002) (citations omitted). Stated another way, "The 'first-filed' rule . . . holds that when parties

have instituted competing or parallel litigation in separate federal courts, the court initially having

jurisdiction should hear the case." *Supreme Int'l Corp. v. Anheuser-Busch, Inc.*, 972 F. Supp. 604,

606 (S.D. Fla. 1997) (*citing Nw. Airlines*, 989 F.2d at 1006) (staying subsequent case under first-

filed rule); *see also Tiber Laboratories, LLC v. Cypress Pharm., Inc.,* 2007 U.S. Dist. LEXIS

54684 (N.D. Ga. May 11, 2007).

The first-filed rule does not require identity of parties or issues. *Save Power*, 121 F.3d at

950. Rather, "[t]he crucial inquiry is one of 'substantial overlap.'" *Id.* (citing *Mann Mfg.*, 439

F.2d at 408). "'Regardless of whether or not the suits here are identical, if they overlap on the

substantive issues, the cases would be required to be consolidated in . . . the jurisdiction first seized

of the issues.'" *Id.* (quoting *Mann Mfg.*, 439 F.2d at 408 n.6).

Also, "the party objecting to jurisdiction in the first-filed forum carr[ies] the burden of

proving 'compelling circumstances' to warrant an exception to the first-filed rule." *Manuel*, 430

FPDOCS 34666365.1

F.3d at 1135. "Compelling circumstances" that could justify departure from the rule, such as when a party, on notice of a potential lawsuit, files a declaratory judgment action in its home forum, are absent here. *Supreme Int'l*, 972 F. Supp. at 606 (citations omitted). But even if "those conditions are present, 'the first-filed action is preferred.'" *Id.* (quoting *Serco Serv. Co. v. Kelley Co.*, 51 F.3d 1037, 1039 (Fed. Cir. 1995)).

The substantial overlap of issues between this case and the Wood Action requires the application of the first-filed rule. Plaintiffs in each case have brought nationwide collective action claims under the FLSA challenging the very same alleged "common plan or practice" of Defendant to not "pay [all hourly workers] for all hours worked and/or failing to pay them proper overtime wages." The first-filed case should proceed.

### B.    Plaintiff's Lawsuit is Duplicative of *Wood.*

The first-filed rule turns on which court "initially seized of [the] controversy." *Merrill Lynch*, 675 F.2d at 1172. Suits form the same controversy for purposes of the first-filed rule if "substantial overlap" exists; that is, whether the suits "overlap on the substantive issues." M*ann Mfg.*, 439 F.2d at 408 & n.6. This standard is satisfied here.

The same collective action claim asserted in this case regarding the payment of overtime wages is asserted in the Wood Action. In fact, the substantive allegations in this case are exact copies of the allegations in the Wood Action. The following chart demonstrates the nearly identical allegations that are contained in both the Complaint in this action and the Amended Collective Action Complaint in the Wood Action:

| Morgan Complaint [Dkt. No. 1] | Wood Amended Complaint (Exhibit B) |
|---|---|
| This is an overtime and wage theft case ... Plaintiff is an adult residing and  working within this judicial district and – during the relevant time – worked as an hourly employee for Defendant Sundance, Inc. ("Sundance"), a | This is an overtime and wage theft case. Plaintiffs are all adults residing and working within this judicial district and – during the relevant time – worked as hourly employees for defendant Sundance, Inc. ("Sundance"), a |

6

| | |
|---|---|
| company that owns well over 150 Taco Bell franchises throughout the United States. (¶1) | company that owns well over 150 Taco Bell franchises throughout the United States. (¶1) |
| At various points within the past three years, Plaintiff has experienced the following: a) Sundance's failure to pay her for all hours worked; and b) Sundance's failure to pay overtime wages for all hours worked over 40, when legally required to do so. (¶15) | At least one Plaintiff, at various points within the past three years has experienced the following: 1) Sundance's failure to pay the Plaintiff for all hours worked; and/or 2) Sundance's failure to pay overtime wages for all hours worked over 40, when legally required to do so. (¶20) |
| Sundance knew or should have known the business model it developed and implemented was unlawful under applicable laws. Nonetheless, Sundance continued to willfully engage in the violations described herein. (¶16) | Sundance knew or should have known the business model it developed and implemented was unlawful under applicable laws. Nonetheless, Sundance continued to willfully engage in the violations described herein. (¶21) |
| Sundance's hourly employees, including but not limited to Crew Members, are not paid for all hours worked. In fact, Sundance engages in a practice in which it "shifts" hours that an employee works during one week over to the following week, so that an employee's time records do not demonstrate that the employee worked over 40 hours in a given work week. Sundance maintains a white board in its office on which it keeps track of its employees' "shifted hours" from week to week. (¶17) | Sundance's hourly employees, including but not limited to Crew Members, Team Leaders and Shift Managers, are not paid for all hours worked. In fact, Sundance engages in a practice in which it "shifts" hours that an employee works during one week over to the following week, so that an employee's time records do not demonstrate that the employee worked over 40 hours in a given work week. Sundance maintains a white board in its office on which it keeps track of its employees' "shifted hours" from week to week. (¶22) |
| By shifting its employees' hours, Sundance a) does not pay its employees for all hours worked in a given work week; and b) does not pay overtime wages for hours worked over 40 in a given work week. (¶18) | By shifting its employees' houses, Sundance a) does not pay its employees for all hours worked in a given work week; and b) does not pay overtime wages for hours worked over 40 in a given work week. (¶23) |
| In addition, some employees simply were not paid at all for their "shifted over" hours. (¶19) | In addition, some employees simply were not paid at all for their "shifted over" hours. (¶24) |
| With regard to hourly employees that regularly work over 40 hours each work week, Sundance does not engage in the "shifting" exercise; it simply does not pay such employees for all hours worked and caps their paychecks at 80 hours per two week pay period. Again, by doing so, Sundance a) does not pay its employees for all hours worked in a given work week; and b) does not pay overtime wages for hours worked over 40 in a given work week. (¶20). | With regard to hourly employees that regularly work over 40 hours each work week, Sundance does not engage in the "shifting" exercise; it simply does not pay such employees for all hours worked, and caps their paychecks at 80 hours per two week pay period. Again, by doing so, Sundance a) does not pay its employees for all hours worked in a given work week; and b) does not pay overtime wages for hours worked over 40 in a given work week. (¶25) |

7

| | |
|---|---|
| In addition, hourly workers were regularly instructed to clock out and continue working off the clock, in order for each store to maintain its Sundance-imposed labor metrics. (¶20) | In addition, hourly workers were regularly instructed to clock out, and continue working after doing so, in order for each store to maintain its Sundance- imposed labor metrics. (¶26) |
| Throughout the course of her employment, Plaintiff was directed by Sundance and its agents to perform work, was allowed to work, and did work one or more weeks in excess of forty (40) hours. (¶22) | Throughout the course of their employment, Plaintiffs were directed by Sundance and its agents to perform work, were allowed to work, and did work every week in excess of forty (40) hours per week. (¶27) |
| Contrary to the above statutory enactment, Sundance adopted a policy and practice of failing to pay Plaintiff and all similarly situated individuals an overtime wage at a rate of one and one-half times their regular rate for hours worked in excess of forty (40) hours during a workweek. It further adopted a policy and practice of, by clocking out Plaintiff yet requiring her to continue to work, and failing to pay Plaintiff and all similarly situated individuals their regular hourly rate for hours worked under 40 in a workweek. (24¶) | Contrary to the above statutory enactment, Sundance adopted a policy and practice of failing to pay Plaintiffs and all similarly situated individuals an overtime wage at a rate of one and one-half times their regular rate for hours worked in excess of forty (40) hours during a workweek. It further adopted a policy and practice of, by clocking out Plaintiffs yet requiring them to continue to work, failing to pay Plaintiffs and all similarly situated individuals their regular hourly rate for hours worked under 40 in a workweek. (¶32) |
| Sundance willfully violated the FLSA by knowingly failing to compensate Plaintiff for overtime wages for the hours she worked in excess of forty (40) hours per week, and failing to compensate Plaintiff her regular hourly rate for all hours worked under 40. (25) | Sundance willfully violated the FLSA by knowingly failing to compensate Plaintiffs overtime wages for the hours they worked in excess of forty (40) hours per week, and failing to compensation Plaintiffs their regular hourly rate for all hours worked under 40… U.S.C. § 201, et seq. (¶ 33) |
| Plaintiff brings this case on behalf of herself and all other Crew Members and other hourly employees who have worked for Sundance at any time between three years before the commencement of this action and the date of final judgment in this matter. (¶26) | Plaintiffs bring this case on behalf of themselves and all other Crew Members, Team Leaders, Shift Managers and other hourly employees who have worked for Sundance at any time between three years before the commencement of this action and the date of final judgment in this matter. (¶34) |
| Plaintiff brings this complaint under 29 U.S.C. § 216(b) of the FLSA. Plaintiff, her fellow Crew Members, and other hourly employees are similarly situated in that they are all subject to Sundance's common plan or practice failing to pay them for all hours worked and/or of failing to pay them proper overtime wages. (¶27) | Plaintiffs bring this complaint under 29 U.S.C. § 216(b) of the FLSA. Plaintiffs and the Crew Members, Team Leaders, Shift Managers and other hourly employees are similarly situated in that they are all subject to Sundance's common plan or practice failing to pay them for all hours worked and/or of failing to pay them proper overtime wages. (¶35) |

8

| | |
|---|---|
| At all times relevant to this action, Sundance "suffered or permitted" Plaintiff and those similarly situated to work and thus "employed" them within the meaning of the FLSA, 29 U.S.C. § 203(g). (¶31) | At all times relevant to this action, Sundance "suffered or permitted" Plaintiffs to work and thus "employed" them within the meaning of the FLSA, 29 U.S.C. § 203(g). (¶39) |
| At all times relevant to this action, Sundance failed to pay Plaintiff and those similarly situated the federally mandated wages and overtime compensation for all services performed. Specifically, Sundance failed to pay Plaintiff and those similarly situated regular wages for all hours worked under 40 in a work week and failed to pay them overtime wages – or any wages at all – for all hours worked in excess of forty (40) hours per week. (¶32) | At all times relevant to this action, Sundance failed to pay Plaintiffs the federally mandated wages and overtime compensation for all services performed. Specifically, Sundance failed to pay Plaintiffs regular wages for all hours worked under 40 in a work week, and failed to pay Plaintiffs overtime wages – or any wages at all - for all hours worked in excess of forty (40) hours per week. (¶40) |
| Sundance violated the FLSA by failing to pay Plaintiff and those similarly situated the federally mandated overtime premium for all hours worked in excess of forty (40) hours per workweek. (¶35) | Sundance violated the FLSA by failing to pay Plaintiffs the federally mandated overtime premium for all hours worked in excess of forty (40) hours per workweek. (¶42) |
| Sundance also violated the FLSA by failing to pay Plaintiff and those similarly situated all minimum wages due to them. (¶36) | Sundance also violated the FLSA by failing to pay Plaintiffs all minimum wages due to Plaintiffs. (¶44) |
| Sundance's violations of the FLSA were knowing and willful. (¶37) | Sundance's violations of the FLSA were knowing and willful. (¶45) |
| By failing to compensate Plaintiff and those similarly situated at a rate not less than one and one-half times their regular rate of pay for work performed in excess of forty hours in a workweek, Sundance has violated the FLSA, 29 U.S.C. § 201, et seq., including 29 U.S.C. §§ 207(a)(1) and 215(a). (¶38) | By failing to compensate Plaintiffs at a rate not less than one and one-half times their regular rate of pay for work performed in excess of forty hours in a workweek, Sundance has violated the FLSA, 29 U.S.C. § 201, et seq., including 29 U.S.C. §§ 207(a)(1) and 215(a). (¶46) |
| Plaintiff and those similarly situated seek damages in the amount of their respective unpaid wages, overtime wages, liquidated damages as provided by 29 U.S.C. §216(b), interest, attorneys' fees, and such other legal and equitable relief as the Court deems proper. (¶40) | Plaintiffs seek damages in the amount of their respective unpaid wages, overtime wages, liquidated damages as provided by 29 U.S.C. §216(b), interest, attorneys' fees, and such other legal and equitable relief as the Court deems proper. (¶48) |
| Plaintiff and all other similarly situated hourly employees, as described above, who opt into this litigation are entitled to compensation for all regular hours worked, overtime hours worked, liquidated damages, attorneys' fees and court costs. (¶41) | Plaintiffs and all other similarly situated hourly employees, as described above, who opt into this litigation are entitled to compensation for all regular hours worked, overtime hours worked, liquidated damages, attorneys' fees and court costs. (¶49) |

9

This alleged "common plan" not to pay overtime wages is the factual and legal centerpiece to each case.  Further, Plaintiffs in each case are seeking to represent a nationwide class of all Crew Members and other hourly employees of Defendant nationwide (Defendant operates stores in six states across the Midwest), and because those classes are nearly identical, they will necessarily involve the same analysis for potential certification under 29 U.S.C. § 216(b). Indeed, plaintiffs in the Wood Action are purported collective action members in this action.  *Compare* Compl. ¶ 26, Exhibit B, ¶¶ 12-17.   Considering that each case is a putative nationwide collective action, these classes are destined to encompass many of the same individuals.

Moreover, each case involves the same alleged conduct of Sundance. For instance, the collective action allegations in both cases are based on a "common plan" by Sundance to intentionally fail to pay its employees for all overtime wages they worked.  *Compare* Compl. ¶ 27, 37, Exhibit B, ¶¶ 35, 45. Specifically, each case presents identical questions, including whether Sundance engaged in such a "common plan" to (1) require employees to perform off-the-clock work, (2) shift employees' hours worked from week to week to avoid paying the overtime rate on such hours, and (3) cap employees' hours at 40 hours per week regardless of the number of hours actually worked; and whether Sundance's violations of the FLSA were knowing and willful.  This overlap in claims, substantive issues, purported collective action members, and defendants will necessarily result in a substantial, if not complete, overlap of facts and issues.

This duplication is precisely what the first-filed rule seeks to avoid.  *Save Power*, 121 F.3d at 950.   Two actions with overlapping collective action "classes" and issues proceeding simultaneously in two different districts would invariably and unnecessarily waste judicial and party resources, result in piecemeal and potentially contradictory litigation, and be inefficient. A plethora of cases have recognized this dilemma and yielded to the first-filed action.  *See, e.g., Save*

*Power*, 121 F.3d at 950 (ordering transfer of second-filed action); *Fisher v. Rite Aid Corp.*, No. RDB-09-1909, 2010 WL 2332101 (D. MD Jun. 8, 2010) (dismissing state law wage and hour class claims that were duplicative of previously filed FLSA collective action claims pending in another federal district court.); *Walker v. Progressive Cas. Ins. Co.*, No. C03–656R, 2003 WL 21056704 at *3 (W.D. Wash. May 9, 2003) (same); *Merrill Lynch*, 675 F.2d at 1174 (affirming dismissal of second-filed action); *Tiber Laboratories*, 2007 U.S. Dist. LEXIS 54684 (transferring second-filed action); *Marietta Drapery & Wind Coverings v. North River*, 486 F. Supp. 2d 1366 (N.D. Ga. 2007) (same); *Supreme Int'l*, 972 F. Supp. at 606 (same).

Furthermore, the fact that a conditional nationwide class has not been certified in the Wood Action does not affect the calculus for this motion because identical parties and identical issues are not required under the first-filed rule and the plaintiffs in the Wood Action may move to certify a broader class at any time. All that is required is a substantial overlap in parties and issues, not identical parties and issues. *See New Beckley Mining Corp. v. International Union*, UMWA, 946 F.2d 1072, 1073 (4th Cir.1991) (noting that cases are parallel when "substantially the same parties litigate substantially the same issues in different forums"); *Fuller v. Abercrombie & Fitch Stores, Inc.*, 370 F. Supp. 2d 686, 690 (E.D. Tenn. 2005) (transferring second-filed FLSA collective action under the first-filed rule even though second-filed action contained additional "off-the-clock" claim because claims in both actions "substantially overlap[ped]"). Moreover, even if the plaintiffs in the Wood Action do not move to certify a nationwide class, judicial determinations in the Wood Action related to the propriety of a Michigan collective action and whether Defendant engaged in a willful "common plan" not to pay overtime wages will substantially overlap with judicial determinations regarding the propriety of collective treatment in this case. This is especially true

11

considering that the Plaintiff's proposed class includes Defendant's Michigan employees. As such, the parties in each action remain virtually identical.

### C.       The Pursuit of Collective Action Claims Further Compels Dismissal.

In addition to the substantial overlap of the Wood Action and this case, the unique notice requirements of the FLSA compel a dismissal. The FLSA provides an "opt-in" procedure for collective action claimants. 29 U.S.C. § 216(a). Unlike class actions under Rule 23 of the Federal Rules of Civil Procedure, which establishes that individual class members remain in the class unless they take affirmative steps to exclude themselves from the class, the FLSA requires that "in any action to recover the liabilities prescribed in the statute," every plaintiff must affirmatively "opt-in" to the group. *Id.*

This opt-in procedure surely renders *two* parallel actions perilous, inefficient, and inappropriate. If the Wood Action and this case were both certified for collective action treatment on a nationwide basis, two notices would issue to the same employees to opt-in to the competing collective actions, and confusion would reign. Even if a nationwide class is never conditionally certified in the Wood Action, the requested conditional certification in this action will result in duplicate notices being sent to the same Michigan employees who have already been sent notices in the Wood Action. Any one of these scenarios would create substantial inefficiencies and great confusion for not only these individuals but also for the parties and the courts. In *Fuller*, for example, the court exercised its inherent authority to transfer an FLSA collective action under the first-filed rule, noting that "if both actions proceed, the same individuals could receive two opt-in notices for the same claim but in different courts." 370 F. Supp. 2d at 690.

Even worse, any one of these circumstances would create a risk of conflicting precedents and inconsistent results, should some individuals opt-in to one or both of the actions. Similarly, if

12

Plaintiff in this action was allowed to proceed with a collective action after the court in the Wood Action refused to certify a collective action, this Court would effectively overrule that court's decision, in violation of the principle of comity as well as the principle of collateral estoppel. *See Allen v. McCurry*, 449 U.S. 90, 94 (1980) ("Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." (citations omitted)); *Covell*, 111 U.S. at 182 ("The forbearance which courts of co-ordinate jurisdiction, administered under a single system, exercise towards each other, whereby conflicts are avoided, by avoiding interference with the process of each other, is a principle of comity . . . ."); *Save Power*, 121 F.3d at 950 ("The concern [of the first-filed rule] manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result."); *Allstate*, 9 F. Supp. 2d at 1316 ("The primary purpose of the rule is to conserve judicial resources and avoid conflicting rulings." (*citing Nw. Airlines*, 989 F.2d at 1006)).

### D.       This Lawsuit Should be Dismissed.

The most appropriate remedy under the first-filed rule is to dismiss the later action. *See, e.g., Merrill Lynch*, 675 F.2d at 1174 (stating that comity compelled dismissal of later action). Defendant is not seeking to dismiss Plaintiff's individual substantive FLSA claims with prejudice; in fact, Plaintiff has several options with regard to them. For example, Plaintiff may refile her claim on an individual basis before this Court or attempt to opt-in to or otherwise join the Wood Action.  29 U.S.C. §§ 216(b), 256*; See Lott v. Advantage Sales & Mktg. LLC,* No. 2:10-CV-00980-JEO, 2011 WL 13229682, at *1 (N.D. Ala. Jan. 26, 2011) (dismissed complaint applying first-filed rule and held that "a dismissal of the individual claims without prejudice to refile individual

13

claims in this court or other courts of competent jurisdiction or to opt in to the pending Campbell litigation is appropriate.") *see also Partlow v. Jewish Orphans' Home, Inc.*, 645 F.2d 757, 759 (9th Cir. 1981) (stating that an FLSA class member who does not opt-in to collective action is not barred from bringing individual claim), *abrogated on other grounds*, 493 U.S. 165 (1989). Plaintiff has no substantive right to bring her own duplicative collective action claim in this Court. *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 298 (5th Cir. 2004) (stating that plaintiffs' "inability to proceed collectively" does not deprive them of any substantive right under the FLSA). The collective action procedure under the FLSA is simply that—a procedure designed to promote judicial efficiency.  There is, however, no judicial efficiency gained by adjudicating a duplicative claim while risking the possibility of inconsistent results.

Because Plaintiff remains free to pursue her FLSA claim, and because parallel collective actions would be unworkable, this Court should dismiss Plaintiff's lawsuit.  *See Merrill Lynch*, 675 F.2d 1169 (affirming dismissal of second-filed action); *James v. AT & T Corp.*, 334 F. Supp. 2d 410 (S.D.N.Y. 2004) (dismissing second putative class action where the putative classes were composed of the same members and organized to vindicate the same rights); *Fisher*, 2010 WL 2332101 (dismissing state law wage and hour class claims that were duplicative of previously filed duplicative FLSA collective action claims pending in another federal district court.); *Walker*, 2003 WL 21056704 (same).  And to the extent necessary to preserve Plaintiff's off-the-clock claim, this Court can stay this case or grant Plaintiff leave to re-file her individual claims on an individual basis.  *See infra*, sec. II; *see also Lott*, 2011 WL 13229682 at *1; *Nat'l Inv. Fraud Cntr., Inc. v. Invention Submission Corp.*, 2000 U.S. Dist. LEXIS 2621, at *35 (D.S.D. Feb. 17, 2000) (dismissing some claims under the first-filed rule while retaining others).

FPDOCS 34666365.1

**II.     Alternatively, This Court Should Transfer or Stay This Action.**

While the most appropriate remedy for this duplicative litigation is to dismiss, the Court, under the first-filed rule, should at the very least stay the action pending final resolution of Wood. Rather than dismiss the subsequent proceedings, several courts have stayed a subsequently filed action under the first-filed rule. *See, e.g., Homeowners Loan*, 2007 U.S. Dist. LEXIS 10261; *Supreme Int'l*, 972 F. Supp. at 606. Those courts have reasoned that a disposition of the action in the first forum is superior to a competing disposition in the subsequent forum, citing the overarching concerns of judicial economy and consistency in the law. *See, e.g., Supreme Int'l*, 972 F. Supp. at 606. Just as in those cases, disposition of this action by the first-filed forum, the Eastern District of Michigan, would conserve judicial resources and ensure a clear, consistent result. The Wood Action has been pending since October 2016; the parties are actively involved in complex discovery, the entry of an order partially certifying the class, and notice to putative class members in Michigan. The Wood Action includes the same classification claim involving the same nationwide class of hourly employees as this case. Given that the Eastern District of Michigan has already seized this controversy and the parties have engaged in significant litigation in that forum, an effective disposition of this classification dispute requires that the case be decided in the Eastern District of Michigan. *See Supreme Int'l*, 972 F. Supp. at 606 ("'The first-filed action is preferred . . . unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise.'" (citation omitted)).

Here, concerns of economy require that the first-filed forum decide the case. Moreover, because disposition of the Wood Action may have preclusive effect on the question of whether the Defendant engaged in a "common plan" to not pay its hourly employees overtime pay, *see Allen*,

FPDOCS 34666365.1

449 U.S. at 94, the equities weigh in favor of allowing the *Wood* court to decide the case. Thus, this Court should alternatively stay the instant case.

## Conclusion

Defendant respectfully requests that the Court dismiss Plaintiff's claims. Alternatively, Defendant respectfully requests that the Court stay the case and grant all other appropriate relief.

Dated:  November 8, 2018                          Respectfully submitted:

/s/ Joel W. Rice
Joel W. Rice (pro hac vice)
Scott C. Fanning (pro hac vice)
Fisher & Phillips, LLP
10 S. Wacker Dr., Ste. 3450
Chicago, IL 60606
(312) 346-8061

Kevin J. Driscoll
Finley Law Firm, P.C.
699 Walnut Street, Suite 1700
Des Moines, IA  50309
Telephone: (515) 288-0145
E-Mail: kdriscoll@finleylaw.com

*Attorneys for Sundance, Inc.*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 8, 2018, I electronically filed the foregoing document with the Clerk of the Court using the ECF system and also served the foregoing upon to all counsel of record via electronic mail.

Dated: November 8, 2018

Respectfully submitted,

<u>/s/ Joel W. Rice</u>
Joel W. Rice
Scott C. Fanning
Fisher & Phillips, LLP
10 S. Wacker Dr., Ste. 3450
Chicago, IL 60606
(312) 346-8061
*Attorneys for Sundance, Inc.*

FPDOCS 34666365.1