# Appendix – Case Law

2010 WL 2332101

KeyCite Yellow Flag - Negative Treatment

Called into Doubt by Mould v. NJG Food Service Inc., D.Md., June 17, 2014

2010 WL 2332101
Only the Westlaw citation is currently available.
United States District Court, D. Maryland.

James FISHER, Plaintiff,
v.
RITE AID CORPORATION and Eckerd
Corporation d/b/a Rite Aid, Defendants.

Civil Action No. RDB–09–1909.
|
June 8, 2010.

**Attorneys and Law Firms**

Gary E. Mason, Nicholas A. Migliaccio, Mason LLP, Washington, DC, Fran L. Rudich, Klafter Olsen and Lesser LLP, Rye Brook, NY, Michael A. Josephson, Fibich Hampton and Leebron LLP, Houston, TX, for Plaintiff.

Michael J. Carlson, Law Office of Michael J. Carlson, Severna Park, MD, Clara H. Rho, John M. O'Connor, Patrick G. Brady, Suzanne K. Brown, Epstein Becker and Green PC, Newark, NJ, James A. Rothschild, Anderson Coe and King LLP, Baltimore, MD, for Defendants.

### *MEMORANDUM OPINION*

RICHARD D. BENNETT, District Judge.

**\*1** Plaintiff James Fisher ("Plaintiff" or "Fisher") has filed this putative class action under Federal Rule of Civil Procedure 23 for alleged violations of the Maryland Wage Payment and Collection Law ("MWPCL") and the Maryland Wage and Hour Law ("MWHL"). Defendants Rite Aid Corporation and Eckerd Corporation ("Defendants") have moved this Court to dismiss the present action on several grounds and they argue that it is duplicative of an earlier filed action brought under the Fair Labor Standards Act ("FLSA") currently pending in the United States District Court for the Middle District of Pennsylvania, where Fisher is also a plaintiff. The parties' submissions have been fully briefed and no hearing is necessary. *See* Local Rule 105.6

(D.Md.2009). For the reasons stated below, Defendants' motion is GRANTED.

### BACKGROUND

On December 29, 2008, Defendants Rite Aid Corporation ("Rite Aid") and Eckerd Corporation ("Eckerd") (together, "Defendants") were named as defendants in a class action lawsuit brought under the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. §§ 201 *et seq.,* in the United States District Court for the Middle District of Pennsylvania. *Craig v. Rite Aid Corporation, et al.,* Case No. 4:08–cv–02317–JEJ (M.D.Pa.) (hereinafter *"Craig"* ). Defendants were alleged to have misclassified salaried assistant mangers as "exempt" from entitlement to overtime compensation in violation of 29 U.S.C. § 207. On June 26, 2009, Plaintiff James Fisher ("Plaintiff" or "Fisher") joined the *Craig* lawsuit and on December 9, 2009, the federal court in Pennsylvania granted conditional certification, permitting notice of opt-in opportunity to a nationwide collective class, defined to include "all individuals classified as exempt from the FLSA's overtime pay provisions and employed as salaried Assistant Managers...." Ex. C to Defs.' Mot. to Dismiss.

Soon after joining the *Craig* suit, on July 21, 2009, Fisher filed the instant lawsuit pursuant to the Maryland Wage Payment and Collection Law ("MWPCL") and the Maryland Wage and Hour Law ("MWHL"). Fisher has fashioned the present case as a class action under Federal Rule of Civil Procedure 23, asserted on his own behalf and on behalf of all persons "who were employed by Defendants as assistant managers and/or other comparable positions with different titles, who were non-exempt employees within the meaning of the MWHL and MWPCL and who have not been paid for all wages owed to them, including overtime wages, in violation of the MWHL and MWPCL (the 'Class')." [1] Am. Compl. ¶ 12. On December 2, 2009, the Judicial Panel on Multidistrict Litigation denied an application to transfer several cases, including this case and the *Craig* case, for purposes of multi-district litigation. *See* Order Denying Transfer (Paper No. 23).

[1]    Fisher filed an amended complaint on July 27, 2009, which retained all of the allegations set forth in the

original complaint, but deleted a reference to the FLSA in the "Prayer for Relief" section.

On February 16, 2010, Defendants filed the pending Motion to Dismiss (Paper No. 30) challenging Fisher's lawsuit on several independent grounds. Specifically, Defendants argue that (1) Fisher has failed to state a claim; (2) the MWPCL does not does not govern claims for overtime pay; (3) Fisher's state law claims are preempted by the FLSA; (4) Fisher's Rule 23 claims are incompatible with the *Craig* action brought under FLSA Section 216(b); (5) Fisher's state law claims violate the Rules Enabling Act; (6) Fisher's Rule 23 action is not superior to other methods of adjudication; (7) the instant lawsuit should be dismissed or stayed pursuant to the first-to-file rule. Having reviewed the parties' respective arguments, as set forth in their briefs, this Court hereby GRANTS Defendants' Motion to Dismiss (Paper No. 30). Count Two of Fisher's Amended Complaint, brought under the MWPCL, is dismissed with prejudice. Count One of the Amended Complaint, which asserts a claim under the MWHL, is dismissed without prejudice pursuant to the first-to-file rule.

**DISCUSSION**

**I. The Maryland Wage Payment and Collection Law Does Not Govern Claims for Overtime Pay**

 **\*2**  It is well established that the MWPCL "does not concern the amount of wages payable but rather the duty to pay whatever wages are due on a regular basis and to pay all that is due following termination of the employment." *Friolo v. Frankel,* 373 Md. 501, 513, 819 A.2d 354 (2003); *see also McLaughlin v. Murphy,* 372 F.Supp.2d 465, 474 (D.Md.2004) (noting that the MWPCL "does not regulate minimum wage and overtime payments," but only the timing of payment and the payment upon termination); *Tucker v. Sys. Specialist Furniture Installations, Inc.,* No. JFM–07–1357, 2007 U.S. Dist. LEXIS 71434, at \*1–3, 2007 WL 2815985 (D.Md. Sept.26, 2007) (same). This Court has recently noted that "the Maryland Wage and Hour Law, not the MWPCL, is the state's equivalent of the FLSA, and shares its purpose to provide a minimum wage and maximum hours for employees." *Reed v. Code 3 Sec. & Prot. Servs.,* No. AW–09–1162, 2009 U.S. Dist. LEXIS 118637, at \* 16, 2009 WL 5177283 (D.Md. Dec.18, 2009) (quotation marks and citation omitted). Because Fisher's allegations concern entitlement to overtime wages, the claim asserted under

the MWPCL in Count Two of his Amended Complaint must be dismissed with prejudice. [2]

[2]  In his Opposition to Defendants' Motion to Dismiss (Paper No. 38), Fisher conceded that he could not assert a claim for overtime wages under the MWPCL and he accordingly stipulated that his claim in Count Two should be dismissed.

**II. The First–to–File Rule Warrants the Dismissal of Fisher's Lawsuit**

The first-to-file rule "requires substantially overlapping cases filed in separate fora to be resolved in the forum where the initial case is filed unless a balance of convenience favors the second action." *Smart Technologies, Inc. v. Polyvision Corp.,* 3:04–cv–545, 2004 U.S. Dist. LEXIS 29483, at \*5–6 (E.D.Va. Oct. 20, 2004) (citing *Ellicott Mach. Corp. v. Modern Welding Co., Inc.,* 502 F.2d 178, 180 (4th Cir.1974)). Due to its importance in ensuring judicial efficiency, consistency, and comity, courts have noted that the rule "should not be disregarded lightly." *Neuralstem, Inc. v. Stemcells, Inc.,* 573 F.Supp.2d 888, 900 (D.Md.2008) (internal quotation marks omitted); *see also Rite Way Crack Repair, LLC v. Guardian Crack Repair, LLC,* WMN–09–1207, 2009 U.S. Dist. LEXIS 82574, at \*11, 2009 WL 2923085 (D.Md. Sept. 10, 2009) (noting that the underlying principles of the first-to-file rule include the conservation of judicial resources and the parties' time and money, and to prevent the possibility of reaching conflicting results).

This Court finds that the first-to-file rule properly applies because the parties and issues in the instant matter and the *Craig* action are substantially similar. *See New Beckley Mining Corp. v. International Union, UMWA,* 946 F.2d 1072, 1073 (4th Cir.1991) (noting that cases are parallel when "substantially the same parties litigate substantially the same issues in different forums"). Fisher, the named plaintiff in the instant case, is a party-plaintiff in the *Craig* action, and the same Defendants are named in both actions. Although the classes in the two cases may eventually include different individuals, each class is similarly defined to include current and former assistant managers of Rite Aid. *See Fuller v. Abercrombie & Fitch Stores, Inc.,* 370 F.Supp.2d 686, 689 (E.D.Tenn.2005) (finding that the parties in two separate cases substantially overlapped because they both defined the putative classes similarly). In addition, the underlying legal and factual issues in the cases are the same. Both involve whether

2010 WL 2332101

Defendants improperly failed to compensate assistant mangers for overtime work performed. In order for this issue to be resolved, a determination must be made as to whether Rite Aid misclassified assistant managers as exempt from overtime compensation under the standard set forth in the FLSA. Nevertheless, Fisher notes that the cases are not exactly duplicative, and he emphasizes some of the differences between the state statutory wage claim and the FLSA action. However, for the first-to-file rule to apply, courts need not find a precise overlap. A showing of substantial similarity, as was made here, will suffice. *See, e.g., Nutrition & Fitness, Inc. v. Blue Stuff, Inc.,* 264 F.Supp.2d 357, 360 (W.D.N.C.2003); *Fuller,* 370 F.Supp.2d at 690.

**\*3** The circumstances in this case are remarkably akin to those before the court in *Walker v. Progressive Cas. Ins. Co.,* No. C03–656R, 2003 U.S. Dist. LEXIS 7871, 2003 WL 21056704 (W.D.Wash. May 9, 2003). *Walker* involved a state wage and hour claim originally filed in Washington state court that had been removed to federal court on diversity grounds. The plaintiffs asserting the state wage claim were opt-in members in a previously-filed nationwide FLSA action pending in the Eastern District of Louisiana. Despite the fact that the pertinent state and federal laws employed different standards, the U.S. District Court for the Western District of Washington dismissed the state wage and hour law claim, noting:

> Given that the first-to-file rule requires only a substantial similarity between the claims, this slight difference between federal and state law does not prevent application of the rule. In any event, plaintiffs have failed to demonstrate how any broader standard under the MWA would affect adjudication of their claims.

*Walker,* 2003 U.S. Dist. LEXIS 7871, at *3, 2003 WL 21056704. This reasoning is especially applicable in the instant matter, because the MWHL incorporates by reference the FLSA's "white collar exemptions" from overtime wage requirements.[3] *See Turner v. Human Genome Sciences, Inc.,* 292 F.Supp.2d 738, 744 (D.Md.2003) (noting that the overtime requirements under the MWHL are identical to those under the FLSA, meaning that plaintiffs' overtime "claim under the MWHL stands or falls on the success of their claim under

the FLSA"). As a result, the interpretation of the FLSA exemption issue in the *Craig* action will be determinative of the central issue raised in Fisher's state law action. *See Smith v. S.E.C.,* 129 F.3d 356, 361 (6th Cir.2007) (lawsuits are duplicative where "a determination in one action leaves little or nothing to be determined in the other").

[3]  The FLSA and the MWHL both provide that employers are not required to pay overtime to certain categories of employees, including those who serve in a "bona fide executive, administrative or professional capacity." 29 U.S.C. § 213(a)(1); Md.Code Ann., Lab. & Empl., § 3–403.

Because the instant lawsuit bears substantial similarities with the *Craig* action, the firstto-file rule properly applies in this case, and this Court defers to the first-filed action pending before the U.S. District Court for the Middle District of Pennsylvania.[4]

[4]  Having concluded that dismissal of the instant lawsuit is warranted under the first-to-file rule, this Court refrains from addressing the additional challenges set forth in Defendants' motion to dismiss.

### CONCLUSION

For the aforementioned reasons, this Court hereby GRANTS Defendants' Motion to Dismiss (Paper No. 30). Count One of Fisher's Amended Complaint, which asserts a claim under the Maryland Wage and Hour Law ("MWHL"), is DISMISSED without prejudice pursuant to the first-to-file rule. Count Two the Amended Complaint, brought under the Maryland Wage Payment and Collection Law ("MWPCL"), is DISMISSED with prejudice.

### *ORDER*

For the reasons stated in the foregoing Memorandum Opinion, it is this 8th day of June, 2010, ORDERED that:

1. Defendants' Motion to Dismiss (Paper No. 30) is GRANTED;

**Fisher v. Rite Aid Corp., Not Reported in F.Supp.2d (2010)**

2010 WL 2332101

a. Count One of Fisher's Amended Complaint, which asserts a claim under the Maryland Wage and Hour Law ("MWHL"), is DISMISSED without prejudice;

b. Count Two the Amended Complaint, which asserts a claim under the Maryland Wage Payment and Collection Law ("MWPCL"), is DISMISSED with prejudice;

**\*4** 2. The Clerk of the Court transmit copies of this Order and accompanying Memorandum Opinion to the parties and CLOSE this case.

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 2332101

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

2003 WL 21056704, 8 Wage & Hour Cas.2d (BNA) 1273

KeyCite Yellow Flag - Negative Treatment

Distinguished by Raya v. Amazon.com, LLC, N.D.Cal., July 1, 2015

2003 WL 21056704
United States District Court,
W.D. Washington.

John WALKER and Kevin A. Krieg, individually and
on behalf of all others similarly situated, Plaintiffs,

v.

PROGRESSIVE CASUALTY
INSURANCE COMPANY, a foreign
insurance company, Defendant.

No. C03–656R.
|
Filed March 13, 2003.
|
May 9, 2003.

**Attorneys and Law Firms**

Bradley Jerome Moore, Stritmatter Kessler Whelan,
Withey Caluccio, Seattle, WA, for John Walker, plaintiff.

Bradley Jerome Moore, (See above), for Kevin A Krieg,
individually and on behalf of all others similarly situated,
plaintiff.

Daniel L Thieme, Littler Mendelson PC, Seattle, WA,
for Progressive Casualty Insurance Company, a foreign
insurance company, defendant.

ORDER GRANTING PROGRESSIVE'S MOTION
TO DISMISS IN FAVOR OF PRIOR ACTION

ROTHSTEIN, J.

**\*1** THIS MATTER comes before the court on
defendant Progressive Casualty Insurance Company's
("Progressive") motion to dismiss in favor of a prior
action. The prior action to which Progressive refers is
a class action for overtime pay now pending against
Progressive in the Eastern District of Louisiana. Plaintiffs,
a putative class of former Progressive employees who
allege they are owed overtime wages, oppose the motion,
arguing that the parties and legal claims in the two actions
are dissimilar and thus the first-to-file rule is inapplicable.
Having reviewed the documents filed in support of and

in opposition to this motion, the court finds and rules as
follows:

I. *BACKGROUND*

This is one of two cases seeking relief against Progressive
for its alleged failure to pay overtime to its insurance
adjusters. On August 31, 2001, a class action was initiated
against Progressive in the Eastern District of Louisiana,
alleging that Progressive owed some of its insurance
adjusters unpaid overtime wages under the Fair Labor
Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et. seq.
Camp v. The Progressive Corp. et al.,* Case No. 01–CV–
2680 (E.D.La) (hereinafter *"Camp"* ). In that action,
the plaintiffs allege that defendants misclassified their
claims adjusters as "administrative employees," who are
otherwise exempt from the provisions of the FLSA. The
plaintiffs in this case, John Walker and Kevin Krieg, have
joined that class action along with several other insurance
adjusters from Washington.

In spite of their presence in the *Camp* action, plaintiffs
filed the present case against Progressive. The instant
case, in fact, is the plaintiffs' second action initiated
in Washington. Plaintiffs originally filed suit in federal
court, asserting overtime claims under both the FLSA and
parallel Washington state statutes. *Walker v. Progressive
Casualty Insurance Company,* CV02–0318P ("Walker").
Walker I was assigned to United States District Judge
Marsha J. Pechman. Judge Pechman found that the
earlier-filed *Camp* action involved the same parties and
claims and dismissed the action without prejudice on June
25, 2002.

Following Judge Pechman's dismissal, on August 8, 2002,
plaintiffs filed the present case ("Walker II") in Pierce
County Superior Court. The sole difference between
Walker I and the present case is that plaintiffs have now
omitted their FLSA claims, presumably in an attempt
to elude dismissal in favor of *Camp.* Walker II involves
factual allegations identical to those stated in Walker I but
asserts claims only under the Washington Minimum Wage
Act, RCW 49.46 *et seq.* ("MWA"). Plaintiffs allege that
the work they performed was non-exempt work within
the meaning of the MWA and that Progressive's failure
to compensate them for their overtime work violates the
MWA. Plaintiffs define their putative class as "All persons
who ... have been employed as a claims representative or

claims adjuster (or any other job title whose duties are substantially similar in scope) by Progressive...." Compl. ¶ 18.

**\*2** Progressive removed the case to federal court in Seattle, claiming diversity of citizenship. [1] Progressive has now again moved to dismiss this action in favor of the earlier-filed *Camp* action.

[1]    A number of procedural issues then arose, as a result of which Judge Pechman transferred the case to Tacoma. United States District Judge Franklin Burgess, to whom the case was assigned, remanded the case to state court because the amount in controversy was not yet proven to exceed the jurisdictional minimum. On remand to the state court, Progressive established that the amount in controversy did exceed $75,000, and subsequently removed the case to this court. On April 9, 2003, following Progressive's motion to determine propriety of venue, this court determined that the case is properly in the federal district court, Seattle division.

## II. *DISCUSSION*

The first-to-file rule is a generally recognized doctrine of federal comity that permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district. *Pacesetter Systems, Inc. v. Medtronic, Inc.,* 678 F.2d 93, 94–95 (9th Cir.1982). The rule was developed to "serve[ ] the purpose of promoting efficiency well and should not be disregarded lightly." *Church of Scientology v. United States Dep't of the Army,* 611 F.2d 738, 750 (9th Cir.1979). Exact parallelism between the two actions need not exist; it is enough if the parties and issues in the two actions are "substantially similar." *Nakash v. Marciano,* 882 F.2d 1411, 1416 (9th Cir.1989).

### 1. *Similarity of Parties*

The parties in the two actions need not be identical for purposes of the first-to-file rule, but there must be similarity or substantial overlap. *Dumas v. Major League Baseball Props., Inc.,* 52 F.Supp.2d 1183, 1189 (S.D.Cal.1999), *vacated on other grounds,* 104 F.Supp.2d 1220 (S.D.Cal.2000). Here, there is clearly substantial overlap between the parties in the two actions. Both actions seek recovery from Progressive, and, furthermore,

the two named plaintiffs in the present case, John Walker and Kevin Krieg, are parties in the *Camp* action. In addition, at least thirty-nine other Progressive employees with Washington addresses, who potentially qualify as members of plaintiffs' proposed class, have joined the *Camp* action. [2]

[2]    The *Camp* class represents "all current and former salaried employees of [Progressive] located in the 50 states, who are/were employed as claims adjusters or otherwise performed claims adjusting services," which, of course, includes Washington state claims adjusters.

Despite this similarity of the parties, plaintiffs advance two arguments for why this similarity does not weigh in favor of dismissal. First, plaintiffs argue that they intend to withdraw from the *Camp* action if this case is allowed to proceed and the court certifies a class action. This argument does not carry the day. Whatever plaintiffs' stated intentions, the fact remains that they are currently parties in the *Camp* action, and it is this fact, not plaintiffs' future plans, that the court finds controlling.

Next, plaintiffs point out that the deadline for opting in to the *Camp* action passed on March 10, 2003 and that the *Camp* class only includes those persons who opted in to the class by the cut-off date. There are, plaintiffs aver, several Washington insurance adjusters who did not opt into *Camp* but who could be parties in this action. If the court were to dismiss this action, plaintiffs argue, then those insurance adjusters would have no remedy. According to plaintiffs, the statute of limitations has expired for bringing a separate action, and, as noted above, the deadline for opting into *Camp* has passed. These facts do not change the outcome. The adjusters who elected not to opt in to *Camp* received notice of that action, and, for whatever reason, elected not to opt in. They could have filed a timely independent action but likewise did not do so. Plaintiffs here cannot use other adjusters' legal predicament to demonstrate that this case should proceed on their behalf.

### 2. *Similarity of Issues*

**\*3** The issues in the two actions need not be identical for purposes of the first-to-file rule but must only be substantially similar. *Dumas,* 52 F.Supp.2d at 1193; *Ward v. Follett Corp.,* 158 F.R.D. 645, 648–49 (N.D.Cal.1994). Accordingly, slight differences in the claims asserted do

not prevent application of the rule where the underlying complained-of conduct is almost identical. *See Dumas,* 52 F.Supp.2d at 1193.

Both *Camp* and the instant case allege that Progressive failed to compensate its claims adjusters for overtime pay and both seek compensation for that alleged injury. The legal issue in both cases is whether Progressive's claims adjusters are employed in a bona fide administrative capacity and are therefore exempt from overtime pay. *See Palacio v. Progressive Ins. Co.,* 8 Wage & Hour Cas.2d (BNA) 914, 2002 U.S. Dist. LEXIS 17021 (C.D.Cal.2002) (dismissing an FLSA overtime claim against Progressive because the claims adjuster was an exempt administrative employee).

Plaintiffs here argue that, while the claims in the two cases are similar, the FLSA and the MWA are materially different and, thus, they should be allowed to proceed with their state-law based claims. Whatever the minor differences between those two statutes, these differences do not warrant maintaining this action. The FLSA and the MWA contain materially identical definitions of the administrative capacity exemption. *Cf.* 28 C.F.R. § 541.2 (FLSA) *with* WAC 296–128–520(MWA). In addition, both the FLSA and Washington law require that an employee meet both a "duties test" and a "salary basis test" to qualify as an exempt administrative employee. *Webster v. Pub. Sch. Employees of Wash., Inc.,* 148 Wn.2d 383, 386, 60 P.3d 1183 (2003). The only potential difference between the laws is that, while the duties test receives the same treatment under state and federal law, the Washington Supreme Court has held that the state salary basis test is slightly broader than the federal test. *Id.* at 401 (noting that "MWA's test for exemption considers not only the federal 'salary basis' test, but also allows the court to consider policies and practices that do not affect

base pay" (*citing Drinkwitz v. Alliant Techsystems, Inc.,* 140 Wn.2d 291, 996 P.2d 582 (2000)). [3]

[3]  Specifically, the Court has departed from the federal standard in asserting that deductions from accrued leave could destroy exempt status, and refusing to allow employers a window of correction to correct improper practices. *Webster,* 148 Wn.2d at 401; *Drinkwitz,* 140 Wn.2d at 301–05.

The continued validity of *Drinkwitz* and *Webster* is questionable in light of recent amendments to the MWA. On January 21, 2003, shortly after *Webster*'s publication, the Washington Department of Labor and Industries (DLI) amended the MWA "to clarify and develop requirements associated with paying exempt employees on a salary." The changes were "a result of [*Drinkwitz* ]," and were effectuated, among other reasons, to "issue similar provisions that exist in federal regulations."

Given that the first-to-file rule requires only a substantial similarity between the claims, this slight difference between federal and state law does not prevent application of the rule. In any event, plaintiffs have failed to demonstrate how any broader standard under the MWA would affect adjudication of their claims.

### III. *CONCLUSION*

For the foregoing reasons, the court hereby GRANTS defendant's motion to dismiss based on prior action [doc. no. 5–1], on the grounds that the earlier filed Camp action involves substantially similar parties and claims.

**All Citations**

Not Reported in F.Supp.2d, 2003 WL 21056704, 8 Wage & Hour Cas.2d (BNA) 1273

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

2011 WL 13229682
Only the Westlaw citation is currently available.
United States District Court, N.D.
Alabama, Southern Division.

Karen LOTT, on her own behalf and
all others similarly situated, Plaintiff,
v.
ADVANTAGE SALES &
MARKETING LLC, Defendant.

2:10-cv-00980-JEO
|
Signed 01/26/2011

**Attorneys and Law Firms**

Rocco Calamusa, Jr., Alexander N. Gerogiannis, Wiggins Childs Quinn & Pantazis LLC, David R. Donaldson, Dawn Stith Evans, Donaldson & Guin LLC, Birmingham, AL, John R. Wylie, Donaldson Guin LLC, Chicago, IL, for Plaintiff.

David M. Smith, Janell M. Ahnert, Maynard Cooper & Gale PC, Birmingham, AL, Thomas P. Gies, Crowell & Moring LLP, Washington, DC, for Defendant.

## MEMORANDUM OPINION

John E. Ott, United States Magistrate Judge

 **\*1** This case, which arises under the Fair Labor Standards Act (hereinafter "FLSA"), is before the court on the "Motion to Dismiss or in the Alternative to Stay Plaintiff's Action" filed by defendant Advantage Sales and Marketing LLC (hereinafter "the defendant" or "Advantage"). (Doc. 25). As basis for its motion, the defendant asserts that a nationwide FLSA collective action that is virtually identical to this case was filed five months before this action in the Southern District of Indiana, and that pursuant to the "first to file rule," the court should dismiss or stay this action. (Doc. 26 at 3). The motion is opposed by Plaintiff Karen Lott and the other opt-in plaintiffs (hereinafter "Lott" or "the plaintiffs"). They argue that neither a stay nor a dismissal is proper. (Doc. 32).

For the reasons set out herein, the court finds the defendant's motion is due to be granted in part and denied in part, as follows: (1) the "first to file" rule is applicable in this case, (2) a transfer of this matter is not the appropriate course of action, (3) a dismissal of the individual claims without prejudice to refile individual claims in this court or other courts of competent jurisdiction or to opt in to the pending *Campbell* litigation is appropriate, and (4) Plaintiff Lott should be afforded an opportunity to join the *Campbell* litigation or file an amended complaint in this action alleging only her individual claims.

## BACKGROUND

Lott filed this case, on behalf of herself and all others similarly situated, on April 14, 2010. (Doc. 1). In her complaint, she defined the "collective class" as:

> persons who were or are currently employed by Advantage as "Retail Sales Merchandisers," "Merchandising Representatives," "Merchandising Sales Representatives," or some similar title, and assigned to perform their work at Wal-Mart stores, or who were required to work more than forty hours per week but were not paid overtime pay.

(Doc. 1 at ¶ 1). Since Lott filed her complaint, at least twenty-two additional plaintiffs have executed consents to join the action.

On November 2, 2010, the defendant filed its "motion to dismiss or in the alternative to stay plaintiff's action" (doc. 25), asserting that the collective class defined in the plaintiff's complaint is subsumed in the collective class already conditionally certified in *Campbell v. Advantage Sales & Marketing LLC*, in the Southern District of Indiana, Indianapolis Division,1:09-cv-01430-LJM-DML, filed on November 17, 2009. [1] The conditionally certified collective class in that case is defined as:

> All present and former Retail Sales Merchandisers who are or have been employed by Advantage Sales & Marketing for any period of time from August 24, 2007 through the

2011 WL 13229682

present, who reported their time worked through the E-Labor time reporting system, and who have not been paid wages or otherwise compensated for all time spent working beyond 40 hours per week, or who were wrongfully denied overtime compensation.

(*Campbell* "Notice of Collective Action Lawsuit"). [2]

1    The Campbell court issued an order permitting the case to proceed, conditionally, as a collective action on August 24, 2010. On October 28, 2010, the court issued an order clarifying the definition of the class, and ordering that notice be sent to the affected individuals within ten (10) business days. *See* Doc. 26-2.

2    The *Campbell* "Notice" is located at Doc. 32-2 at 2-6 of 9 in the court's electronic record of the case.

**\*2**  The Lott plaintiffs and the Campbell plaintiffs allege that they were wrongfully denied overtime and seek back pay; compensatory, liquidated, and punitive damages; pre-and post-judgment attorney's fees; litigation expenses and costs; and, other legal and equitable relief as may be deemed appropriate. [3]  Advantage argues that the two actions are substantially similar and, therefore, should be heard by the United States District Court for the Southern District of Indiana, where the first complaint was filed.

3    In paragraph 32 of Lott's complaint, she asserts:
By failing to accurately record, report, and/or preserve records of hours worked by Plaintiff and the Collective Class Members, Defendant Advantage failed to make, keep, and preserve records with respect to each of its employees sufficient to determine their wages, hours, and other conditions of employment, in violation of the FLSA.
In paragraph 32 of the Campbell complaint, the plaintiffs assert:
By failing to accurately record, report, and/or preserve records of hours worked by Plaintiffs and the Collective Class, Advantage has failed to make, keep, and preserve records with respect to each of its employees sufficient to determine their wages, hours, and other conditions and practice of employment, in violation of the FLSA, 29 U.S.C. § 201, *et seq.*

## ANALYSIS

### The "First to File" Rule Generally

"When parties have instituted competing or parallel litigation in separate courts, the court initially having jurisdiction should hear the case." *Barnett v. State of Alabama*, 171 F. Supp. 2d 1292, 1296 (S.D. Ala. 2001). The rule is designed to avoid concurrent litigation of the same issues, between the same parties, in more than one federal court." *Alvarez v. Gold Belt, LLC*, 2009 WL 1473933, at \*2 (D.N.J. May 26, 2009). *See also, Manuel v. Converges Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005) ("[w]here two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed rule").

The first to file rule is discretionary. *See, e.g., Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) ("the complex problems that can arise from multiple federal filings do not lend themselves to a rigid test, but require instead that the district court consider the equities of the situation when exercising its discretion"); *Adams v. Ca. Dept. of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007) (district court has "broad discretion" to "dismiss a duplicative later-filed action").

The purpose of the rule is "to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 729 (5th Cir. 1985). Moreover, it simply promotes judicial efficiency. That said, "the first-filed rule should not be applied too rigidly or mechanically and a District Court may in its discretion decline to follow the first-filed rule if following it would frustrate rather than further these purposes." *United States v. 22.58 Acres of Land*, 2010 WL 4311254 (M.D. Ala. 2010) (citing *Alltrade, Inc. v. Uniweld Prods, Inc.*, 946 F.2d 622, 628 (9th Cir. 1991)).

Duplicative lawsuits are those in which the issues "have such an identity that a determination in one action leaves little or nothing to be determined in the other." *Fuller v. Abercrombie & Fitch Stores, Inc.*, 370 F. Supp. 2d 686, 688 (E.D. Tenn. 2005) (quoting *Smith*

*v. S.E.C.*, 129 F.3d 356, 361 (6th Cir. 1997)). To determine whether actions are duplicative and the first-to-file rule applies, courts consider three factors: (1) the chronology of the actions; (2) the similarity of the parties involved; and (3) the similarity of the issues at stake. *Id.* (citations omitted). It is important to note that the parties and issues need not be identical, but rather the parties and issues should substantially overlap. *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950-51 (5th Cir. 1997); *Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, —— F. Supp. 2d ——, ——, 2010 WL 126171 (D. Kan. 2010); *Fuller*, 370 F. Supp. 2d at 688; *22.58 Acres of Land*, 2010 WL 431254 at *5*; *SPEC Intern, Inc. v. Patent Rights Protections Group, LLC*, 2009 WL 736826, *3 (W.D. Mich. 2009).

**\*3** *Goldsby v. Ash*, 2010 WL 1658703, *2 (M. D. Ala. April 22, 2010). For the reasons set out herein, the court finds that consideration of the factors set out in *Fuller, supra*, warrants transfer of this action based on the first to file rule.

#### Application to *Campbell* and *Lott*

That *Campbell* was filed first is undisputed. What is in dispute, however, is whether the parties to *Campbell* and *Lott* are substantially similar. The plaintiffs argue that the first to file rule is inapplicable because the instant plaintiffs are not parties to *Campbell*, are not obligated to join *Campbell*, and don't want to join *Campbell*. (Doc. 32 at 7 of 22). The plaintiffs argue, specifically, that "[i]dentical parties in concurrently pending actions is the *sina qua non* of the first to file rule." (Doc. 32 at 8 of 22). However, even a cursory glance at applicable case law reveals that "substantially similar" does not mean "identical."

The plaintiffs cite *Alvarez v. Gold Belt, LLC, supra*, in support of their argument, but the plaintiffs misplace the court's emphasis in so doing. Specifically, the plaintiffs argue that

> the [*Alvarez*] [c]ourt refused to grant a motion to dismiss a later filed FLSA putative collective action in favor of a previously filed action by different plaintiffs against the same defendant "because the first-filed rule is designed to avoid concurrent litigation of the same issues, between the *same parties*, in more than one federal court....

(Doc. 32 at 9 of 22) (emphasis added by plaintiffs). While the plaintiffs are correct that the *Alvarez* court declined to transfer the case based upon the first-filed rule, it did so not because the parties were not identical, but because both the first filed and later filed cases were filed in the *same court*, but assigned to different judges. In fact, the *Alvarez* court indicated that it *would* have dismissed the later filed case had it been filed elsewhere. Specifically, the court noted:

> Thus, because the first-filed rule is designed to avoid concurrent litigation of the same issues, between the same parties, in more than one federal court, it does not technically apply to the case here. The principles behind first-filed rule, however, are implicated....
>
> ... Here, this case and the *Manning* case are fundamentally identical. The plaintiffs in both matters (1) are all COB role players, (2) seek to certify a class of plaintiffs who are just like them, and (3) claim that the FLSA was violated in the same manner. Defendants in both matters are the same employers of all the plaintiffs. The only difference between the cases are the actual names of the plaintiffs and the attorneys prosecuting the actions.
>
> Moreover, the fact that both actions seek to proceed as a collective action causes plaintiff here to be a potential plaintiff in the *Manning* case, and the plaintiffs in *Manning* to be potential plaintiffs in this case. Thus, in practical effect, the plaintiffs in both cases are overlapping.
>
> Considering that the plaintiffs are essentially the same, the defendants are the same, and the claims are the same, ... this case presents the potential for waste of judicial resources and the duplication of two court's efforts.

**\*4** Of additional and greater concern is the potential for inconsistency in the determination of the legal issues. Both Judge Irenas in *Manning* and this Court here will be tasked with determining whether the matters should be certified as collective actions and whether the plaintiffs' claims are viable under the FLSA and NJWHL. Inconsistency in such determinations would cause turmoil for the parties and for the state of the law.[4]

*Alvarez*, 2009 WL 1473933 at *3. Based upon the court's analysis of the *Alvarez* case, this court finds the plaintiffs' assertion that "the Alvarez court took the opposite action to that which Defendant proposes here," to be in error. (*See* Doc. 32 at 10 of 22).

4    Although the *Alvarez* court did not dismiss the case, it did deny the plaintiff's motion for class certification pending collective action certification in the first filed case, and noted that if the earlier-filed case were to be certified as a collective action, Alvarez could either opt in to it, or proceed on his own as an individual plaintiff. Further, the court noted that if the first-filed action was not certified, Alvarez could continue on his own but not as a class, absent a reason otherwise. 2009 WL 1473933 at *4. Thus, the *Alvarez* court employed the first-filed principles, even though the particular circumstances of the case did not fit squarely within the parameters of the first-filed rule, in an effort to "prevent[ ] the duplication of efforts, waste of judicial resources, and inconsistent results on the same legal issues presented to two separate courts." *Id.*

The plaintiffs next argue that they are not represented in the *Campbell* action. (Doc. 32 at 11 of 22). While the court agrees that the plaintiffs, at this juncture, are not literally represented in *Campbell*, the court finds that their interests are. The collective class already conditionally certified in *Campbell* encompasses the collective class that the plaintiffs seek to certify here. The *Campbell* class is broader, as it covers Advantage's Retail Sales Managers, regardless of the team on which they work, but the plaintiffs' Wal-Mart team clearly falls within that coverage.

While the plaintiffs are correct that they cannot be forced to opt-in to the *Campbell* collective action, the court finds that their alternative is to bring individual claims against ASM, not institute a new, additional collective action on the same grounds as one already filed. Allowing the plaintiffs to do that would cause the exact result that the first-filed rule was designed to avoid. Although neither party offered, and the court could not find, any controlling Eleventh Circuit case law directly on point, the court finds *Alvarez*, discussed herein, *supra*, and *Fuller v. Abercrombie & Fitch Stores, Inc.*, particularly instructive. [5]

5    *See also, Abushalieh v. American Eagle Exp.*, Civ. No. 10-211 (JBS/AMD), 2010 WL 2301150, at * 4 (D.N.J. June 7, 2010) (finding first filed rule applied to later

filed collective action because both raised virtually identical issues and sought virtually identical relief on behalf of identical group of proposed plaintiffs against identical defendant).

In *Fuller*, the plaintiff filed an FLSA action in the Eastern District of Tennessee, alleging that while he was a manager-in-training and Assistant Manager, the defendant failed to pay him and other similarly situated employees the appropriate amount of overtime, and that they were required to work off the clock without compensation. 370 F. Supp. 2d 686 (E.D. Tenn. 2005). The defendant moved to stay the lawsuit pursuant to the "first to file" rule. Specifically, the defendant asserted that Fuller's lawsuit was "duplicative" of another lawsuit filed in the Southern District of Ohio.

**\*5** Fuller argued, much like the plaintiffs do here, that the representative plaintiffs were different; that the collective classes would be different; and that he alleged an additional claim that was not asserted in the first-filed action. *Fuller*, 370 F. Supp. 2d at 689. That court, however, still found the two actions substantially similar enough. It reasoned:

The Court finds that the parties in the two actions substantially overlap. Though the named plaintiffs are different individuals, all are former Abercrombie employees who worked as managers-in-training and assistant managers. And importantly, the claims in both actions are based on the plaintiffs' employment positions with Abercrombie. Consequently, the named plaintiffs are effectively identical. Further, both actions seek certification of the same collective class, defining the class as all current or former Abercrombie employees who worked as managers-in-training or assistant managers and were not properly compensated for overtime work. And Abercrombie is undoubtedly the defendant in both actions.

The Court notes that Fuller's contentions—that the named plaintiffs are different individuals and that, due to the opt-in feature of the collective action under 29 U.S.C. § 216(b), the collective classes in each action will be different—are correct. Nonetheless, the Court finds that neither warrants the conclusion that the parties are not substantially similar. Importantly, for the actions to be duplicative, the parties need not be identical; they need only substantially overlap. *Save Power*, 121 F.3d at 950-51; *Thomas & Betts*, 222 F. Supp. 2d at 996; *Plating Res.*, 47 F. Supp. 2d at

2011 WL 13229682

903-04. Here, the named plaintiffs and the collective classes substantially overlap. As previously noted, the named plaintiffs are all former Abercrombie employees who worked as managers-in-training and assistant managers, and their claims are based on this common characteristic. Consequently, the plaintiffs in the two actions are substantially similar. Further, both actions seek to certify the same collective classes. That the collective classes in each action will ultimately contain different individuals if both actions proceed is of little significance. For if both actions proceed, the same individuals could receive two opt-in notices for the same claim but in different courts. That such a confusing result could occur evidences that the collective classes are substantially similar.

The Court also finds that the issues and claims in the two actions substantially overlap. Both actions allege the same claim: that Abercrombie violated the FLSA by working the plaintiffs and class members more than forty hours per work and not providing appropriate overtime compensation. Recognizing that both actions raise this identical claim, Fuller contends that the issues in the two actions do not substantially overlap because he alleges an additional claim. Specifically, unlike the Mitchell action, Fuller alleges that Abercrombie required Fuller, and others, to work off-the-clock without pay.

Fuller rightly recognizes that he alleges an additional claim not included in the Mitchell action. However, the issues in the two actions need not be identical; they need only substantially overlap. And the Court finds that, despite this additional claim, the issues in the two actions still substantially overlap. Both of Fuller's claims question whether Abercrombie's compensation policies violate the FLSA. Mitchell's action, though only alleging one claim under the FLSA, also contests the same issue. Consequently, the existence of an additional claim in the Fuller action does not undermine the appropriateness of applying the first-to-file rule.

**\*6** In short, the Court concludes that a resolution in the Mitchell action leaves little to be decided in Fuller's lawsuit. Fuller's arguments—that the plaintiffs are not identical, that the collective classes will include different individuals, and that he alleges a claim not included in the Mitchell action—are correct. However, the Court finds that these differences are not sufficient to overcome the substantial similarities between the

actions. The crucial issue in both cases is whether Abercrombie's policy not to compensate its managers-in-training and assistant managers at the time-and-a-half rate for overtime hours violates the FLSA. Permitting both actions to proceed to judgment risks the possibility of inconsistent results. In an effort to avoid such an outcome and having found that the two lawsuits are duplicative and that the Mitchell action is the first-filed, the Court concludes that the first-to-file rule applies in this case.

In applying that rule, the Court concludes that the appropriate course is to transfer the Fuller action to the court handling the Mitchell action, the United States District Court for the Southern District of Ohio, Eastern Division. It is important to clarify that Fuller's action is not being transferred under 28 U.S.C. § 1404(a). Rather, this case is being transferred pursuant to the Court's inherent authority under the first-to-file rule. *See Cadle*, 174 F.3d at 606; *Save Power*, 121 F.3d at 952; *Alltrade*, 946 F.2d at 628-29; *Smithers-Oasis*, 194 F. Supp. 2d at 688; *Plating Res.*, 47 F. Supp. 2d at 903-06. Because Fuller's action will be transferred under the first-to-file rule, the Court does not address, and expresses no opinion on whether a transfer pursuant to § 1404(a) would be proper.

*Fuller*, 370 F. Supp. 2d at 689-691 (internal citations omitted).

Application of the same principles to the instant case warrants dismissal of the collective action allegations in this case. As stated previously, the *Lott* plaintiffs are covered by the conditionally certified collective class in *Campbell.* For potential plaintiffs to receive duplicative opt-in notices regarding the same claims against the same defendant in different federal courts would be confusing and wasteful.

### CONCLUSION

Premised on the foregoing, the court finds that the defendant's motion to dismiss the plaintiffs' collective action (doc. 25) is due to be granted in part and denied in part. The court specifically finds (1) the "first to file" rule is applicable in this case, (2) a transfer of this action is not the appropriate course of action, (3) a dismissal of the individual claims without prejudice to refile individual claims in this court or other courts

2011 WL 13229682

of competent jurisdiction or to opt in to the pending *Campbell* litigation is appropriate, and (4) Plaintiff Lott should be afforded an opportunity to join the *Campbell* litigation or file an amended complaint in this action alleging only her individual claims.

**DONE**, this the 26th day of January, 2011.

**All Citations**

Slip Copy, 2011 WL 13229682

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

National Inventor Fraud Center, Inc. v. Invention..., Not Reported in...

RICO Bus.Disp.Guide 9857

2000 WL 33768017
United States District Court, D.
South Dakota, Southern Division.

NATIONAL INVENTOR
FRAUD CENTER, INC., et al.
v.
INVENTION SUBMISSION CORP., et al.

No. Civ. 99–4087.
|
Feb. 17, 2000.

MEMORANDUM OPINION AND ORDER

PIERSOL, J.

 **\*1**  Plaintiffs filed an Amended Complaint on September 23, 1999. Defendants Friedman and Friedman and Edward B. Friedman move to dismiss the Amended Complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). The Friedman defendants also join all other defendants in moving to dismiss counts brought under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1962(a) & 1962(d), and for abuse of process for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), and to dismiss declaratory judgment counts under the principle of comity and the first-filed rule. For the reasons stated below, the Court grants the motions in part and denies them in part.

Plaintiff Michael S. Neustel is a patent attorney in Fargo, North Dakota, who is licensed in North Dakota and before the United States Patent & Trademark Office. He is the owner of plaintiffs Neustel Law Offices and National Inventor Fraud Center, which is a North Dakota corporation with its principal place of business in Fargo. National Inventor Fraud Center owns and operates an internet website that provides passive information for inventors about invention promotion companies. Plaintiff Shannon Neustel is the spouse of Michael Neustel and is employed at Neustel Law Offices. Before moving to Fargo, Michael Neustel was associated from March 1996 through April 1997 as a patent attorney with defendants Ivar M. Kaardal and Kaardal & Associates, P.C., a professional corporation with its principal place

of business in Sioux Falls, South Dakota. The Court will refer to all of the plaintiffs as Neustel or plaintiffs.

Neustel alleges in the lengthy Amended Complaint that defendant Invention Submission Corporation (ISC) is a Pennsylvania corporation with a principal place of business in Pittsburgh that engages in the sale of invention promotion services to individual inventors throughout the United States and abroad. Likewise, Neustel alleges that defendant Western Invention Submission Corporation (WISC) is a Tennessee corporation with a principal place of business in Pittsburgh that also engages in the sale of invention promotion services to individual inventors throughout the United States and abroad. Neustel alleges that defendant Intromark Incorporated (Intromark) is a Pennsylvania corporation with a principal place of business in Pittsburgh that engages in the attempted marketing of inventions, products, or ideas of inventors located throughout the United States and abroad. Neustel alleges that defendant Technosystems Consolidated Corporation (Technosystems), a Delaware corporation with a principal place of business in Pittsburgh, is the parent company of ISC, WISC, and Intromark. Defendant Martin S. Berger is identified in the Amended Complaint as the President, Secretary and Treasurer of ISC, WISC, Intromark and Technosystems. Berger is alleged to be the sole stockholder of Technosystems, which owns all of the stock of ISC, WISC, and Intromark. Berger is also alleged to be the owner, secretary and treasurer of Universal Finance Company, Inc., which finances a majority of the defendants' clients.

 **\*2**  Neustel alleges that his former law firm, defendant Kaardal & Associates, P.C. (Kaardal & Associates) works with Minnesota clients of ISC and WISC regarding patent searches and patent applications. He alleges that defendant Ivar M. Kaardal is an attorney licensed in South Dakota and before the United States Patent & Trademark Office who signs between 200 and 400 patentability search opinions per week for ISC and WISC clients. Neustel alleges that, at times, Diane Kaardal, who is the spouse of Ivar Kaardal and who is not a lawyer, signs Ivar Kaardal's name to the patentability opinions. Neustel further alleges that defendant Edward B. Friedman is an attorney licensed in Pennsylvania who is the owner of the law firm of Friedman and Friedman, a Pennsylvania professional corporation with a principal place of business in Pittsburgh. Neustel alleges that Friedman and his law firm serve as principal attorneys for ISC, WISC,

Intromark, Technosystems, Universal Finance Company, and Berger. Additionally, Neustel alleges that Friedman is actively involved in the operations of the defendants and directs the activities of defendants beyond the ordinary attorney-client relationship. He alleges that employees and agents of the defendants are fired if they express displeasure or concerns about the business practices of the defendants. Neustel alleges that Ivar Kaardal has expressed ethical concerns on numerous occasions to Edward B. Friedman and Martin S. Berger about the drafting of the patentability opinions and the handling of client trust account monies, but Friedman retaliated by ending collaboration with Kaardal for three weeks in 1996, and Kaardal was extremely concerned about losing ISC as a client, one he referred to as the "golden goose." Neustel alleges that Friedman has threatened a substantial number of lawsuits against individuals and entities that express concerns about defendants' activities.

Neustel alleges that defendant Washington Patent Services, Inc., doing business as EcoSearch Corporation or Intellectual Property Group (Washington Patent Services) is a Florida corporation with a principal place of business in South Pasadena, Florida. Defendant Donald Ferrell is identified in the Amended Complaint as a Florida resident who is the President of Washington Patent Services and an individual who voluntarily resigned his license to practice before the United States Patent & Trademark Office following an investigation by that office into possible ethical violations he committed. Neustel alleges that Donald Ferrell conducts all of the patent searches for clients of ISC and WISC, and drafts all of the patentability opinions for clients of ISC and WISC on Kaardal & Associates letterhead and in Ivar Kaardal's personal name.

Neustel alleges that defendant Above Board Drafting, Inc., (Above Board Drafting) is a Florida corporation with a principal place of business in South Pasadena, Florida. Defendant Barbara Ferrell is identified in the Amended Complaint as a Florida resident who is the former President of Washington Patent Services and is the President of Above Board Drafting. Neustel alleges that Above Board Drafting often modifies inventions in order to make them patentable and that Above Board Drafting drafts all of the patent drawings for clients of defendants. ISC, Ivar Kaardal and Kaardal & Associates.

**\*3** To summarize the Amended Complaint, Neustel alleges that the defendants work in concert to utilize a three-stage process to sell research, marketing, licensing, patent searches, patent applications and other invention promotion services to individual inventors who wish to commercialize their ideas or products for financial gain. Neustel alleges that, in the course of providing services, however, the defendants make numerous material misrepresentations to the inventors as to the amount of time and research the defendants invest, defendants' success rate in assisting inventors, defendants' status as market leaders, the services that will be provided to inventors, and compliance with Federal Trade Commission regulations. Neustel further alleges that defendants lead clients to believe that the patentability opinion is drafted by an objective and independent registered patent attorney whose opinion is not influenced by any third parties, when in fact the patentability search is done by Ferrell using a limited database and the opinion is drafted by Ferrell with boilerplate language in a process that takes less than fifteen minutes to complete. Neustel claims the opinions are then sent to South Dakota and signed by Kaardal or his wife without review. Neustel further alleges that defendants' misleading advertising in marketing brochures, in Yellow Page and television ads, and on an internet website influence inventors to hold high opinions of the defendants' work and professional status when, in fact, defendants Martin Berger and the predecessor corporation of ISC have been sued by the Pennsylvania Attorney General under that state's Unfair Trade Practices and Consumer Protection Act, and the Federal Trade Commission previously sued defendants ISC, WISC, Intromark, Technosystems, and Berger in federal district court in Pennsylvania for misrepresenting the nature, quality and success rate of the invention promotion services it sells to inventors. Additionally, Neustel alleges that the Licensing Executives Society, a respected trade association in the invention industry, previously found that the business practices of Martin Berger and the predecessor corporation to ISC did not comport with its Rules of Conduct for Members.

Neustel utilizes National Inventor Fraud Center and its internet website to post unfavorable information about the defendants. Neustel alleges that numerous other websites post similar unfavorable information about the defendants and numerous complaints have been filed against the defendants with state attorneys general and with the Federal Trade Commission. Neustel alleges that

WESTLAW    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

the plaintiffs have received numerous complaints about the conduct of the defendants.

Neustel claims that defendants ISC, WISC, Intromark, and Technosystems learned about the possibility of a class action lawsuit against them and filed a preemptory lawsuit against the plaintiffs in state court in Pennsylvania on March 8, 1999. Neustel removed that case to federal district court in Pennsylvania and moved to dismiss for lack of personal jurisdiction and improper venue, but the court has not yet ruled on the motion. Neustel claims that the Pennsylvania litigation against it has caused damage to plaintiffs' business reputation and loss of business income.

**\*4** Neustel filed the original Complaint in this action on May 6, 1999, asserting a claim against all defendants for deceptive advertising and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125, a substantive claim and a conspiracy claim against all defendants under RICO, 18 U.S.C. §§ 1962(a) & 1962(d), a state-law breach of contract claim against Kaardal & Associates, and a state-law abuse of process claim against defendants ISC, WISC, Technosystems, Intromark, Berger, Friedman & Friedman, Kaardal & Associates and Ivar Kaardal. Neustel also brought a declaratory judgment action in the original Complaint against defendants ISC, WISC, Intromark, and Technosystems, seeking a declaration of non-liability for the claims brought against Neustel in Pennsylvania court and asserting affirmative defenses to those claims.

After Neustel filed the original Complaint in this Court, Ivar Kaardal and Kaardal & Associates filed a declaratory judgment action against Neustel in Pennsylvania. That action is now pending in Pennsylvania federal district court on a motion to dismiss for lack of personal jurisdiction and improper venue. Following the filing of that action, Neustel filed the present Amended Complaint in this action, adding a count for declaratory judgment against Ivar Kaardal and Kaardal & Associates seeking a declaration of non-liability for the claims brought against Neustel by Kaardal in Pennsylvania and asserting affirmative defenses to those claims.

Defendants Edward B. Friedman and Friedman and Friedman move to dismiss for lack of personal jurisdiction under Rule 12(b)(2). The determination of whether the Court has personal jurisdiction over a defendant is normally a two-step analysis. *Northrup King Co.*

*v. Compania Productora Semillas Algodoneras Selectas, S.A.,* 51 F.3d 1383, 1387 (8th Cir.1995). First, the applicable state long-arm statute, SDCL § 15–7–2, must be satisfied and second, the Court's exercise of jurisdiction must comport with due process. *Id.* In South Dakota, the analysis collapses into one step: the due process analysis. *See Bell Paper Box, Inc. v. Trans Western Polymers, Inc.,* 53 F.3d 920, 921 (8th Cir.1995) ("South Dakota applies its long-arm statute to the fullest extent permissible under due process"). Due process allows a Court to exercise personal jurisdiction over a non-resident defendant only if doing so is consistent with traditional notions of fair play and substantial justice and if the defendant has sufficient "minimum contacts" with the forum state. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980); *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The contacts are sufficient if the defendant "should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp.,* 444 U.S. at 297, 100 S.Ct. at 567, because he has performed "some act by which the defendant purposefully avails [himself] of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz,* 471 U .S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985) (*quoting Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)). The inquiry is whether the Friedman defendants have directed their activities toward residents of the forum and whether the litigation arises out of those activities. *Burger King,* 471 U.S. at 472, 105 S.Ct. at 2182; *Northrup King Co.,* 51 F.3d at 1387.

**\*5** To evaluate personal jurisdiction under the due process clause, the Court must consider five factors: (1) the nature and quality of the Friedman defendants' contacts with South Dakota; (2) the quantity of their contacts with this state; (3) the relation of the cause of action to the contacts; (4) the interest of South Dakota in providing a forum for its residents; and (5) the convenience of the parties. *Burlington Indus., Inc. v. Maples Indus., Inc,* 97 F.3d 1100, 1102 (8th Cir.1996); *Northrup King Co.,* 51 F.2d at 1387–88; *Land–O–Nod Co. v. Bassett Furniture Indus., Inc.,* 708 F .2d 1338, 1340 (8th Cir.1983). The latter two issues are secondary and of less importance than the first three factors. *Id.* Because the first three factors are closely interrelated, the Court may consider them together. *Id.* The Court should consider the Friedman defendants' contacts with the forum in the aggregate; the

Case 4:18-cv-00316-SHL-HCA    Document 9-5    Filed 11/08/18    Page 18 of 27

National Inventor Fraud Center, Inc. V. Invention..., Not Reported in...

RICO Bus.Disp.Guide 9857

Court should look at the totality of the circumstances. *Id.* The third factor (the relationship of the cause of action to the contacts) draws a distinction as to whether the jurisdiction is specific or general. *EFCO Corp. v. Aluma Sys., USA, Inc.,* 983 F.Supp. 816, 820 (S.D.Iowa 1997). " 'Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state.' while 'general jurisdiction ... refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose." ' *Bell Paper Box, Inc. v. U.S. Kids, Inc.,* 22 F.3d 816, 819 (8th Cir.1994) (*quoting Sondergard v. Miles, Inc.,* 985 F.2d 1389, 1392 (8th Cir.), *cert. denied,* 510 U.S. 814, 114 S.Ct. 63, 126 L.Ed.2d 32 (1993)). *See also Burlington Indus., Inc.,* 97 F.3d at 1102–03. Where the Court considers whether it has specific jurisdiction over nonresident defendants, due process is satisfied if the defendants purposefully directed their activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities. *Wessels, Arnold & Henderson v. National Med. Waste, Inc.,* 65 F.3d 1427, 1432 (8th Cir.1995).

The Court has considered the affidavit of Edward B. Friedman. He attests that he and his law firm do not maintain offices in South Dakota, they do not keep any books, records, or files here, and they do not have any employees or agents here. He further attests that they do not advertise or solicit business in South Dakota, or conduct or transact business in South Dakota. He states that he was in South Dakota on one occasion when he accompanied Martin Berger to see the law offices of Ivar M. Kaardal and Kaardal & Associates. He attests that he and his firm do not derive income from South Dakota except that Ivar Kaardal and Kaardal & Associates retained him to represent them in their case against the plaintiffs in the federal district court in Pennsylvania. He states that he does not recall having made telephone calls to Mr. Kaardal over the past several years, but if he did, the conversations would have been "rare or infrequent," related to representation of the ISC defendants and not related to the causes of action pleaded by the plaintiffs in the Amended Complaint. He states the calls did not involve "directing and guiding" the operation of Kaardal & Associates. (Doc. 42, Friedman Aff. at P 13.)

**\*6** The Court has also considered the affidavit of Michael Neustel, who attests that Edward Friedman visited Sioux Falls at least once on business with Ivar Kaardal

related to this law-suit and that Mr. Friedman engaged in continuous correspondence and made and received numerous telephone calls to and from Ivar Kaardal in Sioux Falls to promote the enterprise described in the Amended Complaint. The Court has also considered the Supplemental Affidavit of Edward Friedman in which he refutes the Neustel affidavit.

While the plaintiffs ultimately bear the burden of proof on the issue, personal jurisdiction need not be proved by a preponderance of the evidence until trial or evidentiary hearing. *See Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1387 (8th Cir.1991). To survive the motion to dismiss, the plaintiffs must make a prima facie showing of personal jurisdiction. *See id.* Where the Court does not hold an evidentiary hearing, but instead relies upon the pleadings and affidavits filed by the parties, as the Court does here, the Court must view the facts in the light most favorable to the plaintiffs, the nonmoving parties. *See id.*

Applying this standard, the Court finds that plaintiffs have made a prima facie showing of personal jurisdiction over Edward Friedman and Friedman and Friedman. Taking the facts as Neustel states them as true, which the Court must do when considering a motion to dismiss for lack of jurisdiction, the Court determines that the quality and quantity of contacts between the Friedman defendants and Ivar Kaardal and Kaardal & Associates in Sioux Falls, South Dakota, are more numerous than the Friedman defendants portray them. Moreover, the contacts are directly linked to the matters forming the basis of this suit.

This case is not controlled by *Austad Co. v. Pennie & Edmonds,* 823 F.2d 223 (8th Cir.1987), as the Friedman defendants argue. In that case, Pennie & Edmonds, a New York law firm representing Austad's in patent litigation, had sent an associate and a law clerk to South Dakota for one two-day trip to review and copy Austad documents and gather information needed to answer interrogatories. Otherwise, Pennie and Edmonds had no contacts with South Dakota other than those pertaining solely to representation of Austad's in litigation in Maryland. *Id.* at 226. To the contrary, in this case. Neustel has produced prima facie evidence that Edward Friedman and his law firm had numerous and ongoing contacts with Ivar Kaardal and Kaardal & Associates in South Dakota pertaining to ISC invention promotion services.

These substantial contacts with South Dakota arose from the alleged shared business interests of the defendants, and did not solely arise from the Friedman defendants' representation of Ivar Kaardal and Kaardal & Associates in their Pennsylvania lawsuit against Neustel.

As to the fourth factor, the plaintiffs, who are North Dakota residents, seek personal jurisdiction over Pennsylvania residents in a South Dakota federal court. The Friedman defendants argue, *citing Ventling v. Kraft,* 83 S.D. 465, 161 N.W.2d 29, 34 (S.D.1968), that the South Dakota Legislature passed the long-arm statute to benefit South Dakota citizens, and the statute does not protect plaintiffs, who are North Dakota citizens. The record before the Court shows that Michael Neustel is a former South Dakota citizen who was associated with Kaardal & Associates in Sioux Falls. The Amended Complaint alleges extensive involvement of Ivar Kaardal and Kaardal & Associates, located in Sioux Falls, South Dakota, in the matters forming the basis of this suit. Venue in this action asserting federal claims is proper in this Court under 28 U.S.C. § 1391(b) because plaintiffs allege that a substantial part of the events or omissions giving rise to the federal claims occurred in this state. Therefore, the Court concludes that, even though plaintiffs are North Dakota citizens, the plaintiffs have a substantial connection to South Dakota. Sough Dakota's policy with regard to the reach of its long-arm statute is equally applicable in this case where a substantial portion of the actions are alleged to have occurred in South Dakota. The fourth factor is less important than the prior three factors, but the Court finds that the factor weighs in favor of exercising personal jurisdiction over the Friedman defendants. The fifth factor, the convenience of the parties, is neutral, as the parties are already embroiled in litigation in Pennsylvania, and the plaintiffs are not now South Dakota residents.

 **\*7** Having carefully considered the relevant factors and the record presented, the Court determines that Edward B. Friedman and Friedman and Friedman had sufficient contacts with South Dakota for this Court to exercise personal jurisdiction over the Friedman defendants. The Court concludes that due process will not be offended if the Court exercises personal jurisdiction over Edward B. Friedman and Friedman and Friedman. The motion of those defendants to dismiss for lack of personal jurisdiction is denied.

*[RICO]*

All defendants move to dismiss the RICO claims for failure to state a claim under Rule 12(b)(6). For purposes of the motions to dismiss, the Court must take the allegations of the Amended Complaint as true, *McDonough v. National Home Ins. Co.,* 108 F.3d 174, 176 (8th Cir.1997), and the Court may grant the motions to dismiss under Rule 12(b)(6) only if there is an insuperable bar to relief. *Bowman v. Western Auto Supply Co.,* 985 F.2d 383, 384 (8th Cir.1993). The Court must deny the motions to dismiss if relief could be granted under any set of facts that could be proved by the plaintiffs consistent with the allegations. *National Org. For Women v. Scheidler,* 510 U.S. 249, 256, 114 S.Ct. 798, 803, 127 L.Ed.2d 99 (1994).

*[Standing]*

Defendants first argue that the plaintiffs do not have standing to assert civil RICO claims under § 1962(a) and § 1962(d). The parties agree as to the applicable law, but disagree as to whether the Amended Complaint can and does contain sufficient factual allegations to establish that plaintiffs have standing to proceed.

RICO standing is conferred by 18 U.S.C. § 1964(c), which reads: "any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." The Eighth Circuit has said that "this provision confers standing on any individual who has experienced injury to his or her business or property that occurred 'by reason of' a RICO violation." *Bowman,* 985 F.2d at 384. The injury alleged must be a result of a violation of § 1962, *id.* at 385 (*citing Sedima S.P.R.L. v. ImRex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)), and plaintiffs must allege and prove that the defendants' violation of § 1962 was the proximate cause of the plaintiffs' injury. *Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258, 268–69,112 S.Ct. 1311, 1318, 117 L.Ed.2d 532 (1992); *Fogie v. THORN Americas, Inc.,* 190 F.3d 889, 894 (8th Cir.1999) (holding that, to recover under RICO, civil plaintiff must prove (1) defendant violated § 1962, (2) plaintiff suffered

injury to business or property, and (3) plaintiff's injury was proximately caused by defendant's RICO violation).

Plaintiffs bring a claim that the defendants violated § 1962(a), which prohibits the use or investment of income derived from a pattern of racketeering activity in any enterprise engaged in interstate or foreign commerce. *See Hamm v. Rhone–Poulenc Rorer Pharmaceuticals, Inc.,* 187 F.3d 941, 951 n. 4 (8th Cir.1999), *cert. denied* 2000 WL 29412, 68 U.S.L.W. 3337 (U.S. Jan. 18, 2000) (No. 99–803). The Eighth Circuit has joined seven of the other circuits in holding that § 1962(a) and § 1964(c) limit standing to plaintiffs who have been injured by a completed violation of § 1962(a)–that is, injury from the use or investment of the racketeering income. *Fogie,* 190 F.3d at 894–95. Allegations that defendants reinvested the income obtained from the racketeering activity in the ongoing enterprise do not suffice to give the plaintiffs standing under §§ 1962(a) and 1964(c). *Id.* at 896. "Rather, to bring a claim under § 1962(a), a plaintiff must allege an injury from the use or investment of the racketeering income that is separate and distinct from injuries allegedly caused by the defendant's engaging in the predicate acts." *Id.*

 **\*8** In *Fogie,* the Eighth Circuit held that the district court properly dismissed a claim brought under § 1962(a) for lack of standing under Rule 12(b)(6) because "plaintiffs have not and apparently cannot allege an injury from a use or investment distinct or separate from the predicate acts they allege." *Id.* at 896. Defendants contend that the Neustel plaintiffs have not alleged any facts in the Amended Complaint to show that they sustained an injury arising out of the defendants' use or investment of racketeering income. Moreover, defendants argue, the plaintiffs cannot show they suffered an injury that was proximately caused by the defendants' alleged violation of § 1962(a). The defendants argue that the intended targets of the scheme alleged in the Amended Complaint were the individual inventors, not the plaintiffs. Defendants also contend that, if plaintiffs cannot establish standing to bring the substantive claim under § 1962(a), then plaintiffs also cannot establish standing to bring the conspiracy claim under § 1962(d), citing *Hamm,* 187 F.3d at 951 n. 4 ("Section § 1962(d) makes it unlawful to conspire to violate § 1962(a), (b), or (c)."); *Bowman,* 985 F.2d at 388 (applying the more restrictive proximate causation requirement to narrow the focus of RICO conspiracy suits

to the specific racketeering activity that lies at the heart of the RICO statute).

In response to these arguments. Neustel *quotes National Org. for Women,* 510 U.S. 249 at 256, 114 S.Ct. 798 at 803, 127 L.Ed.2d 99 (*quoting Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 2137, 119 L.Ed.2d 351 (1992)) for the proposition that "at the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." Neustel points to paragraphs 167, 168, 169, and 175 of the Amended Complaint to argue that plaintiffs have alleged injury to confer standing to proceed. Paragraph 167 of the Amended Complaint states: "Such investment of racketeering income in furtherance of Defendants' enterprise has directly injured and damaged Plaintiffs' business." Paragraph 168 states: "Such damages and injury to Plaintiffs' business has been proximately caused by the Defendants (sic) illegal conduct and pattern of racketeering activity." Paragraph 169 states: "The injury and damage suffered by Plaintiffs arises from the use and investment of the racketeering income and is separate and distinct from the injuries suffered by the inventors who are existing or prior clients of Defendants." Paragraph 175 states: "Inventors that were defrauded or deceived into doing business with Defendants' enterprise were existing or potential clients of the Plaintiffs'. (Exhibit I.)" Plaintiffs also refer to Exhibit I in paragraph 134 of the Amended Complaint which reads: "Such litigation has caused Plaintiffs Michael Neustel and Neustel Law Offices damage to their business reputation and loss [of] business income. (*See* Exhibit I)" Exhibit I is an e-mail message Neustel received from c.mckissick, which states verbatim:

 **\*9**  To whom it made concern.

I send you a package on 8/27/99 certified mail. This package contain an idea that I have created and want you to give me some legal advise. After finding out that your agency is in a lawsuit with (ISC) Invention Submission Corporation. I would like to with-drawn my request for legal advise. Therefore I am requesting that you send me my package back that I send you on August 24, 1999. The person that signed for the package is Sue Wylketra, (if the spelling of the name is right) on 8/27/99. I have all certified mail receipt on hand.

Thank you for your cooperation in this matter ...

While Exhibit I provides specific facts in support of the general factual allegation that Neustel lost a potential client, the reason the client gave for withdrawing the request for legal advice was that the client learned Neustel was involved in litigation with ISC. The e-mail is dated September 5, 1999, months after this lawsuit and the Pennsylvania lawsuits began. It is not possible to tell whether the potential client withdrew his request for legal advice because the defendants sued the plaintiffs in Pennsylvania or because the plaintiffs sued the defendants in South Dakota. The e-mail is helpful to plaintiffs in establishing standing only if the e-mail shows that the defendants used or invested alleged racketeering income to fund litigation against critics like the plaintiffs, and that such litigation prevented potential clients from entering into business and legal relationships with the plaintiffs, proximately causing injury to plaintiffs' business and property.

In paragraph 127 of the Amended Complaint, plaintiffs allege:

> In furtherance of the enterprise, Edward B. Friedman and representatives of ISC have threatened a substantial number of lawsuits against individuals and entities that express their concerns regarding Defendants' fraudulent activities. Many of the threatened lawsuits and actual lawsuits have been settled on significantly favorable terms for Defendants, often times requiring the individual to not publicly divulge information about the Defendants' business practices.

This paragraph bolsters the plaintiffs' general allegation that the defendants use or reinvest the income from their alleged racketeering to injure those who would criticize them, including the plaintiffs. Reading the Amended Complaint as a whole, and taking as true all factual allegations as the Court must on a motion to dismiss for failure to state a claim, the Court is unable to say that the plaintiffs cannot prove any set of facts showing they are entitled to relief under RICO. Although the question is a close one, the Court will not dismiss the RICO claims under Rule 12(b)(6) for lack of standing at this time.

Whether the plaintiffs can survive a summary judgment motion on the RICO claims brought at the completion of discovery is a question for another day.

*[Enterprise]*

The defendants next argue that dismissal under Rule 12(b)(6) is appropriate because the plaintiffs have failed to plead all of the elements of the claims under § 1962(a) and § 1962(d). To prevail on a RICO claim, the plaintiffs must prove both the existence of an enterprise and a pattern of racketeering activity within the enterprise. *Atlas Pile Driving Co. v. DiCon Fin. Co., 886 F.2d 986, 993–96 (8th Cir.1989)*. "An enterprise, as contemplated by RICO, has three essential characteristics: A common or shared purpose, some continuity of structure and personnel, and an ascertainable structure distinct from that inherent in a pattern of racketeering." *McDonough, 108 F.3d at 177*. The distinct structure requires that the common activities of the enterprise must extend beyond the minimal association necessary to sustain the pattern of racketeering; the group as a whole must have a common link other than the racketeering activity. *Id.* Citing McDonough, the defendants argue the plaintiffs have not and cannot allege an ascertainable structure distinct from that inherent in the alleged pattern of racketeering.

**\*10** In response, plaintiffs observe that they carefully set out in paragraphs 22–26 and Section II of the Amended Complaint the distinct and separate structure through which ISC and WISC conduct their invention promotion and patent services business. Specifically, plaintiffs point to paragraph 161 (emphasis added) which states:

> The enterprise possesses a distinct structure apart from the racketeering activity as ISC remains the "hub of the wheel" with regard to each of the various Defendants who work with ISC to one degree or another. The business relationship among the Defendants does not always produce illegal activity and the Defendants' array of "inventor services" is not composed of only actions that violate RICO.

The Court determines that paragraph 161, when read in conjunction with all allegations in the Amended Complaint, is sufficient to allege, for purposes of a motion to dismiss under Rule 12(b)(6), that the defendants have a common or shared purpose, some continuity of structure and personnel, and an ascertainable structure distinct from that inherent in a pattern of racketeering. The Court will not dismiss the RICO claims on this basis.

*[Association with Enterprise]*

The Friedman defendants assert an additional reason why their Rule 12(b)(6) motion should be granted. They argue that they provided legal representation to the other defendants, and "furnishing a client with ordinary professional assistance, even when the client happens to be a RICO enterprise, will not normally rise to the level of participation sufficient to satisfy the Supreme Court's pronouncements in *Reves* [*v. Ernst & Young,* 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993) ]." *Handeen v. Lemaire,* 112 F.3d 1339, 1348 (8th Cir.1997). "[A] growing number of courts, including [the Eighth Circuit] have held that an attorney or other professional does not conduct an enterprise's affairs through run-of-the-mill provision of professional services." *Id.*

The Court is satisfied that plaintiffs have included sufficient allegations in the Amended Complaint at P 126–32 as to Edward B. Friedman's role in directing the enterprise to withstand the motion to dismiss for failure to state a claim. Of course, plaintiffs ultimately will have to prove their allegations that Edward Friedman and his firm have done more than simply provide the other defendants with legal advice. But for purposes of the Rule 12(b)(6) motion, taking the allegations of the Amended Complaint as true, the Court concludes plaintiffs state RICO claims against the Friedman defendants under Handeen.

The defendants next argue that the two declaratory judgment counts of the Amended Complaint should be dismissed on principles of comity and the first-filed rule, since litigation is pending between the parties in Pennsylvania federal district court. The plaintiffs acknowledge that defendants ISC, WISC, Technosystems, and Intromark filed suit against plaintiffs first in Pennsylvania, and that plaintiffs' motion to dismiss in that case was pending at the time plaintiffs filed this lawsuit

in South Dakota. Plaintiffs ask the Court to stay their declaratory judgment count against the above-named defendants while waiting for the Pennsylvania federal district court to rule. Plaintiffs state: "In the event the Pennsylvania Court retains jurisdiction of the litigation and denies the Motion to Dismiss made ... in that action, the Plaintiffs in this action will stipulate to a permanent stay of the declaratory judgment action for the duration of the Pennsylvania action." (Doc. 48. Brief at 16.)

**\*11** As to defendants Ivar Kaardal and Kaardal & Associates, however, the plaintiffs assert that their claims were first-filed in this Court on May 6, 1999, because it was not until June 14, 1999, that the Kaardal defendants sued Neustel in Pennsylvania. Plaintiffs observe that the Kaardal defendants are in the awkward position of seeking litigation of all claims in a remote Pennsylvania forum rather than in this South Dakota forum where Ivar Kaardal and his law firm conduct business.

The law on this subject is as stated in *Keymer v. Management Recruiters Int'l, Inc.,* 169 F.3d 501, 503 n. 2 (8th Cir.1999) ("In cases of concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case as a matter of federal comity."); *Anheuser–Busch, Inc. v. Supreme Int'l Corp.,* 167 F.3d 417, 419 (8th Cir.1999) (upholding district court's decision to dismiss where both "red flags" were present: Anheuser–Busch was on notice Supreme was going to file suit and raced to the courthouse, and Anheuser's action was one for declaratory judgment); *Boatmen's First Nat'l Bank of Kansas City v. Kansas Public Employees Retirement Sys.,* 57 F.3d 638, 641 (8th Cir.1995) (observing district court should consider whether suit was anticipatory or filed in bad faith or in a race to the courthouse); *Northwest Airlines, Inc. v. American Airlines, Inc.,* 989 F.2d 1002, 1006 (8th Cir.1993) ("To conserve judicial resources and avoid conflicting rulings, the first-filed rule gives priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction.") While the Pennsylvania action may have been brought by ISC, WISC, Technosystems, and Intromark as an anticipatory strike against a class-action lawsuit contemplated by Neustel (and whether that is so is not entirely clear), the second "red flag" is not present because ISC and the other plaintiffs did not sue for declaratory judgment, but rather for defamation, commercial disparagement, false and deceptive advertising/unfair competition,

Case 4:18-cv-00316-SHL-HCA    Document 9-5    Filed 11/08/18    Page 23 of 27
National Inventor Fraud Center, Inc. v. Invention..., Not Reported in...
RICO Bus.Disp.Guide 9857

interference with contract, trademark infringement/ unfair competition, and trademark dilution. (Amended Complaint, Exhibit C.) Similarly, while the Neustel plaintiffs sued Ivar Kaardal and Kaardal & Associates first in this May 1999 lawsuit, the Pennsylvania lawsuit brought by Kaardal and Kaardal & Associates in June 1999 raises the same claims as the ISC suit, except for the trademark claims. Only after Kaardal brought those claims in Pennsylvania court did Neustel amend the complaint in this suit to add a count for declaratory judgment against Kaardal and Kaardal & Associates seeking a declaration of non-liability and asserting affirmative defenses to the claims.

As a matter of comity and application of the first-filed rule, this Court must defer to the Pennsylvania court as to Sections VI and VII of this Amended Complaint for declaratory Judgment. There are no compelling circumstances to justify this Court moving ahead on those claims when they were first-filed in Pennsylvania. Thus, because the plaintiffs may not proceed on either declaratory judgment count in this forum, the Court will grant the defendants' motions to dismiss the counts for declaratory judgment stated in Sections VI and VII of the Amended Complaint. Those claims and any defenses to them should be litigated in the Pennsylvania federal district court, where the claims were first filed.

 **\*12**  Next, the defendants request dismissal of the claim for Abuse of Process, stated in Section IX of the Amended Complaint. The Neustel plaintiffs claim in Section IX that the March 1999 lawsuit filed against them by ISC, WISC, Technosystems, and Intromark in Pennsylvania is a spurious lawsuit, with a complaint over 65 pages in length. Plaintiffs assert that defendants followed the complaint with over 500 written interrogatories. Likewise, plaintiffs complain that the June 1999 lawsuit filed against them by Ivar Kaardal and Kaardal & Associates in Pennsylvania is a spurious lawsuit.

Under South Dakota law and Restatement (Second) of Torts § 682, abuse of process is defined as "using a legal process whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed [.]" *Miessner v. All Dakota Ins. Corp .,* 515 N.W.2d 198, 204 (S.D.1994). If the Pennsylvania court determines it has personal jurisdiction over the defendants in the suits filed there, that court will ultimately consider the merits of the claims and whether they are spurious.

Further, that court controls the discovery process under the Federal Rules of Civil Procedure and can determine whether 500 written interrogatories should be allowed. It is premature for this Court to consider whether those lawsuits, which are not even fully underway in litigation, constitute abuse of process under South Dakota law. Therefore, the Court will dismiss the abuse of process count without prejudice.

Finally, while plaintiffs include in their brief arguments justifying their Lanham Act claim, the defendants did not raise any challenges to that claim in their motions to dismiss. Accordingly,

IT IS ORDERED:

(1) that the Motion Of Defendants Friedman and Friedman and Edward B. Friedman To Dismiss Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b) is granted in part and denied in part. (Doc. 40.)

(2) that the Motion To Dismiss Amended Complaint Pursuant To Federal Rule of Civil Procedure 12(b) is granted in part and denied in part. (Doc. 38.)

(3) that the claims brought by plaintiffs in Section V of the Amended Complaint, pursuant to the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1962(a) & 1962(d), will not be dismissed under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction over defendants Edward B. Friedman or Friedman and Friedman, nor will the claims be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

(4) that the Court dismisses without prejudice, based on the principals of comity, the counts for Declaratory Judgment stated in Sections VI and VII of the Amended Complaint.

(5) that the Court dismisses without prejudice the count for Abuse of Process stated in Section IX of the Amended Complaint.

(6) that the claims remaining in this suit are those brought under the Lanham Act (Section IV of the Amended Complaint), under RICO (Section V of the Amended Complaint), and for breach of contract (Section VIII of the Amended Complaint).

RICO Bus.Disp.Guide 9857

**All Citations**

Not Reported in F.Supp.2d, 2000 WL 33768017, RICO
Bus.Disp.Guide 9857

---

**End of Document**                                   © 2018 Thomson Reuters. No claim to original U.S. Government Works.

---

Case 4:18-cv-00316-SHL-HCA    Document 9-5    Filed 11/08/18    Page 25 of 27

Tiber Laboratories, LLC v. Cypress Pharmaceuticals, Inc., Not Reported in F.Supp.2d...

2007 WL 3216625
Only the Westlaw citation is currently available.
United States District Court,
N.D. Georgia,
Gainesville Division.

TIBER LABORATORIES, LLC, Plaintiff,

v.

CYPRESS PHARMACEUTICALS, INC.,
and G & S Enterprises, d/b/a/ Great
Southern Laboratories, Defendants.

Civil Action No. 2:07-CV-0014-RWS.
|
May 11, 2007.

**Attorneys and Law Firms**

Joshua Tropper, Robert G. Brazier, Steven G. Hall, Gambrell & Stolz, Atlanta, GA, for Plaintiff.

E. Page Wilkins, Eric J. Marandett, Richard C. Abati, Choate, Hall & Stewart, LLP, Boston, MA, Christopher A. Wiech, Troutman Sanders, LLP, Atlanta, GA, for Defendants.

G & S Enterprises, Inc., pro se.

### *ORDER*

RICHARD W. STORY, United States District Judge.

 **\*1** Now before the Court are Plaintiff's Motion for Temporary Restraining Order [4] and Defendants' Motion to Dismiss, or in the Alternative, to Stay the Action or Transfer Venue to the Northern District of Mississippi [18]. After considering the entire record, the Court enters the following Order.

### Background

Plaintiff Tiber Laboratories, LLC ("Tiber") brought this action on February 21, 2007, against Defendants Cypress Pharmaceuticals, Inc. ("Cypress") and G & S Enterprises d/b/a Great Southern Laboratories ("Great Southern"), alleging patent infringement. Tiber, a Georgia limited liability company based in Forsyth County, alleges

that Cypress and Great Southern infringed Patent No. 6,979,689 (the "#689 Patent") by producing and distributing Hydro-DP, a prescription cold medicine. The #689 Patent is directed to a three-ingredient composition for the treatment of upper respiratory and oral pharyngeal congestion and related symptoms in pediatric patients. Cypress, a Mississippi corporation with its principal place of business in Madison, Mississippi, is a specialty pharmaceutical company that distributes Hydro-DP. Great Southern, a Texas company with its principal place of business in Houston, Texas, manufacturers Hydro-DP at its facility in Texas.

On February 20, 2007, one day prior to the filing of this action, Cypress filed a complaint for Declaratory Judgment in the Northern District of Mississippi seeking a declaration that (1) it has not infringed any valid claims of the #689 Patent; (2) it has not actively induced others to infringe the #689 patent; and (c) the claims of the #689 patent are invalid. *See Cypress Pharmaceutical, Inc. v. Tiber Laboratories, LLC,* C.A. No. 3:07-CV-00108-TSL-JCS ("the Mississippi Action").

Tiber now seeks a temporary restraining Order in this action. Cypress and Great Southern have moved to dismiss or transfer this action to the Mississippi Court under the "first-filed rule." Tiber has also moved in the Mississippi Action to transfer that action to this Court, raising similar arguments that it raises in response to Defendants' motion to dismiss or transfer in this action. The Court now turns to address the parties' motions.

### Discussion

Defendants move to dismiss this case under the "first-filed" rule, arguing that this Court should dismiss or transfer the instant action and allow the parties' respective claims to be adjudicated in the earlier-filed Mississippi Action. Plaintiff, while acknowledging that the Mississippi Action predates this case, nevertheless argues that the Court should disregard the first-filed rule for several reasons. First, Plaintiff argues that the district court in Mississippi does not have personal jurisdiction over Tiber because Cypress failed to adequately allege personal jurisdiction in that action, and, in any event, "no Tiber products are known to have been sold in Mississippi on or before February 20, 2007-the date Cypress filed in Mississippi." (Pl.'s Resp. to Defs. Mot. to

Case 4:18-cv-00316-SHL-HCA Document 9-5 Filed 11/08/18 Page 26 of 27

Tiber Laboratories, LLC v. Cypress Pharmaceuticals, Inc., Not Reported in F.Supp.2d...

Dismiss at 4.) Second, Plaintiff argues that the Georgia Action is convenient. Third, Plaintiff argues that the Court should disregard the first-filed rule because Cypress "raced to the courthouse in anticipation of imminent suit by Tiber." (*Id.* at 7.) Finally, recognizing that "[o]nce the likelihood of a substantial overlap between the two suits ha[s] been demonstrated, it [is] no longer up to the [second filed court] to resolve the question of whether both should be allowed to proceed," *see Homeowners Loan Corp. v. N.A. Communications,* 2007 WL 496746 (N.D.Ga. Feb. 12, 2007) (modifications in original), Plaintiff argues that, in the alternative, this Court should deny Defendants' motion without prejudice rather than dismissing or transferring this action to the Mississippi court. (Pl.'s Resp. to Defs. Mot. to Dismiss at 9-10.) For the reasons that follow, the Court concludes that the Georgia Action should be transferred to the Northern District of Mississippi.

**\*2** "The 'first filed' rule provides that 'when parties have instituted competing or parallel litigation in separate courts, the court initially having jurisdiction should hear the case.' " *Barnett v. Alabama,* 171 F.Supp.2d 1292, 1296 (S.D.Ala.2001) (decision of three judge panel) (quoting *Allstate Ins. Co. v. Clohessy,* 9 F.Supp.2d 1314, 1315-16 (M.D.Fla.1998); *see also Manuel v. Convergys Corp.,* 430 F.3d 1132, 1135 (11th Cir.2005) ("Where two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule."). "The rule rests on principles of comity and sound judicial administration" and serves "to maximize judicial economy and minimize embarrassing inconsistencies by prophylactically refusing to hear a case raising issues that might substantially duplicate those raised by a case pending in another court." *Cadle Co. v. Whataburger of Alice, Inc.,* 174 F.3d 599, 604 (5th Cir.1999). In the Eleventh Circuit, "the party objecting to jurisdiction in the first-filed forum [must] carry the burden of proving 'compelling circumstances' to warrant an exception to the first-filed rule." *Manuel,* 430 F.3d at 1135; *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu,* 675 F.2d 1169, 1174 (11th Cir.1982) ("In [the] absence of compelling circumstances, the court initially seized of a controversy should be the one to decide the case.").

" '[T]he 'first to file rule' not only determines which court may decide the merits of substantially similar issues,

but also establishes which court may decide whether the second suit filed must be dismissed, stayed or transferred and consolidated.' " *Cadle,* 174 F.3d at 606 (quoting *Sutter Corp. v. P & P Indus., Inc.,* 125 F.3d 914, 920 (5th Cir.1997)). Courts applying this rule generally agree "that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed." *Id* . (quotations omitted); *e.g., Perkins v. Am. Nat. Ins. Co.,* 446 F.Supp.2d 1350, 1353 (M.D.Ga.2006) ( "[U]nder the 'first-filed rule,' the court where the subsequently filed action has been filed should defer to the court where the first action was filed to allow that court to decide whether it should exercise jurisdiction over both cases in a consolidated action."); *Street v. Smith,* 456 F.Supp.2d 761, 768 (S.D.Miss.2006) (same); *Kate Aspen, Inc. v. Fashioncraft-Excello, Inc.,* 370 F.Supp.2d 1333, 1338 (N.D.Ga.2005) ("[T]he first-filed rule generally requires the first court to decide whether the first-filed rule should apply, or whether a narrow exception to the rule that only applies in 'compelling circumstances,' favors transfer of the first-filed case to the second court for consolidation." (citations omitted)). Thus, once the Court determines that a likelihood of substantial overlap exists between the two suits, it is no longer up to the second filed court to resolve the question of whether both should be allowed to proceed. *Cadle,* 174 F.3d at 606; *Mann Mfg. v. Hortex, Inc.,* 439 F.2d 403, 408 (5th Cir.1971). Rather, "the proper course of action [is] for the court to transfer the case to the [first-filed] court to determine which case should, in the interests of sound judicial administration and judicial economy, proceed." *Cadle,* 174 F.3d at 606. In this case, it is beyond dispute that there is substantial overlap between the Mississippi and Georgia Actions. Both cases raise the same issues-namely, whether Defendants are infringing Plaintiff's #689 Patent by distributing their Hydro-DP Product and whether the claims of Plaintiff's # 689 Patent are valid. The Court recognizes that personal jurisdiction, convenience, and the equitable concerns in rewarding "anticipatory declaratory actions" are valid arguments against application of the first-filed rule. *Manuel,* 430 F.3d at 1136. But, whatever the merits of these arguments-on which the Court expresses no opinion-the Court is of the view that this determination should be made by the United States District Court for the Northern District of Mississippi.

**\*3** Because, as noted above, it is beyond dispute that the Georgia Action post-dates the Mississippi Action, and it is clear that there is a likelihood of substantial overlap between the two cases, the United States District Court for the Northern District of Mississippi is the appropriate court to decide whether the Georgia action should be allowed to proceed, or whether it should be consolidated with the Mississippi Action, or, as between the two, which court is the more appropriate venue to resolve this dispute. The Mississippi court is also better suited to determine the bounds of its own personal jurisdiction. [1] Given the Court's authority under 28 U.S.C. § 1406(a) to transfer a case to another district or division "in which it could have been brought," Defendants' Motion to Dismiss, or in the Alternative, to Transfer the Action is **GRANTED,** and the Clerk is directed to **TRANSFER** this action to the United States District Court for the Northern District of Mississippi. [2]

### Conclusion

For the reasons stated herein, Defendants' Motion to Dismiss, or in the Alternative, to Stay the Action or Transfer Venue to the Northern District of Mississippi [18], is **GRANTED,** and the Clerk is **DIRECTED** to **TRANSFER** this action to the United States District Court for the Northern District of Mississippi (Jackson Division). Plaintiff's Motion for Temporary Restraining Order [4] is **DENIED as moot.**

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 3216625

Footnotes

1    As Defendants acknowledge, Plaintiff has filed a motion to dismiss in the Mississippi Action, which raises challenges to the Mississippi Court's exercise of personal jurisdiction over Plaintiff. That motion is currently pending before the Mississippi Court, and as such, the Mississippi Court is poised to resolve that threshold issue.

2    Plaintiff argues that, even assuming that the Mississippi court is the appropriate venue to determine whether the first-filed rule should apply to this action, this Court should nonetheless deny Defendants' Motion to Dismiss without prejudice. However, as the Fifth Circuit has stated, after determining that there is substantial overlap in two cases, "the proper course of action [is] for the court to transfer the case to the [first-filed] court to determine which case should, in the interests of sound judicial administration and judicial economy, proceed." *Cadle,* 174 F.3d at 606.

**End of Document** © 2018 Thomson Reuters. No claim to original U.S. Government Works.