# EXHIBIT C

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENISE WOOD,
ANDRE MURRAY, and
REVELATION RUSSAW,

     Plaintiffs,

-vs-

SUNDANCE, INC.,

     Defendant.

Case No. 16-cv-13598

Hon. George Caram Steeh
Mag. Judge R. Steven Whalen

| | |
|---|---|
| Jennifer Lossia McManus P65976<br>FAGAN MCMANUS, P.C.<br>Attorneys for Plaintiffs<br>25892 Woodward Ave<br>Royal Oak, MI 48067<br>(248) 542-6300<br>jmcmanus@faganlawpc.com | Scott C. Fanning<br>Joel W. Rice<br>FISHER & PHILLIPS LLP<br>Attorneys for Defendant<br>10 S. Wacker Dr., Ste. 3450<br>Chicago, IL 60606<br>(312) 346-8061<br>sfanning@fisherphillips.com<br>jrice@fisherphillips.com |
| Megan A. Bonanni P52079<br>PITT MCGEHEE PALMER & RIVERS, P.C.<br>Attorneys for Plaintiffs<br>117 W. Fourth Street, Suite 200<br>Royal Oak, MI 48067<br>(248) 398-9800<br>mbonanni@pittlawpc.com | |

## PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER

     Plaintiffs file their Response to Defendant's Motion for Protective Oder and

state:

For the reasons stated in the attached brief, Defendant's Motion should be denied.

Dated: October 19, 2018        By: /s/ *Jennifer L. McManus*
           Jennifer L. McManus (P65976)
           FAGAN MCMANUS, P.C.
           25892 Woodward Avenue
           Royal Oak, MI 48067-0910
           (248) 542-6300
           jmcmanus@faganlawpc.com

           Megan A. Bonanni (P52079)
           PITT MCGEHEE PALMER & RIVERS, P.C.
           117 W. Fourth Street, Suite 200
           Royal Oak, MI 48067
           (248) 398-9800
           mbonanni@pittlawpc.com

           **ATTORNEYS FOR PLAINTIFFS**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENISE WOOD,
ANDRE MURRAY, and
REVELATION RUSSAW,

      Plaintiffs,

-vs-

SUNDANCE, INC.,

      Defendant.

Case No. 16-cv-13598

Hon. George Caram Steeh
Mag. Judge R. Steven Whalen

| | |
|---|---|
| Jennifer Lossia McManus P65976<br>FAGAN MCMANUS, P.C.<br>Attorneys for Plaintiffs<br>25892 Woodward Ave<br>Royal Oak, MI 48067<br>(248) 542-6300<br>jmcmanus@faganlawpc.com | Scott C. Fanning<br>Joel W. Rice<br>FISHER & PHILLIPS LLP<br>Attorneys for Defendant<br>10 S. Wacker Dr., Ste. 3450<br>Chicago, IL 60606<br>(312) 346-8061<br>sfanning@fisherphillips.com<br>jrice@fisherphillips.com |
| Megan A. Bonanni P52079<br>PITT MCGEHEE PALMER & RIVERS, P.C.<br>Attorneys for Plaintiffs<br>117 W. Fourth Street, Suite 200<br>Royal Oak, MI 48067<br>(248) 398-9800<br>mbonanni@pittlawpc.com | |

## PLAINTIFFS' BRIEF IN SUPPORT OF RESPONSE TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER

# **TABLE OF CONTENTS**

INDEX OF AUTHORITIES.............................................................................................. ii

COUNTER-STATEMENT OF QUESTIONS PRESENTED................................................. iii

I. INTRODUCTION .............................................................................1

II. UPDATE AS OF OCTOBER 18, 2018........................................................2

III. STANDARD OF REVIEW ...................................................................3

IV. ANALYSIS ...................................................................................3

  A. PLAINTIFFS' PROPOSAL COMPLIES WITH
   JUDGE STEEH'S STANDING ORDER ON ESI DISCOVERY ....................3

  B. DEFENDANT CANNOT ESTABLISH GOOD CAUSE
   OR UNDUE BURDEN OR EXPENSE ......................................................4

  C. DEFENDANT'S CASES ARE DISTINGUISHABLE ................................8

V. CONCLUSION .................................................................................10

# INDEX OF AUTHORITIES

CASES:                                                                              PAGE

Chauvin v. State Farm Mutual Automobile Insurance Company,
 2011 WL 2490870 * 1 (E.D.Mich. June 22, 2011) .................................................4

Compuware Corporation v. Moody's Investors Services, Inc.,
 222 F.R.D 124 (E.D.Mich. 2004) .................................................................8, 9

Federal Deposit Insurance Corporation v. Cuttle,
 2013 WL 1010692 *2 (E.D.Mich. 2013)...........................................................4

Heartland Surgical Specialty Hospital, LLC v. Midwest Division, Inc.,
 2017 WL 3171768*4  (D.Kan. Oct. 29, 2001) ........................................................6

Hennigan v. General Electric Co.,
 2012 WL 13005370 (E.D.Mich. April 2, 2012) ........................................................5

Knoll v. American Tel & Tel. Co.,
 176 F.3d 359 (6th Cir. 1999)......................................................................9

Lehnert v. Ferris Faculty Ass'n,
 556 F.Supp. 316, 318 (W.D.Mich. 1983) .................................................................5

Nix v. Sword,
 11 Fed. App'x 498, 500 (6th Cir. 2001) ....................................................4

Surles v. Greyhound Lines, Inc.,
 474 F.3d 288 (6th Cir. 2007)......................................................................9

United States of America v. Renown Health,
 12-00295 (D. Nev. Aug. 25, 2015) ........................................................5

Webasto Thermo & Comfort North America, Inc. v. Bestop, Inc.,
 2018 WL 3198544 (E.D.Mich. June 29, 2018) .......................................................8

OTHER AUTHORITY:

Fed. R. Civ. P. 26(c).................................................................4

ii

## COUNTER-STATEMENT OF QUESTIONS PRESENTED

Whether the Court should deny Defendant's Motion for a Protecive Order where Plaintiffs' modified ESI request is in compliance with Judge Steeh's Standing Order; Defendant has failed to show good cause for the issuance of protective order; Defendant has failed to demonstrate undue burden or expense, instead arguing that the document review will take too much time; and Defendant has taken a nontenable position that is contrary to Fed. R. Civ. P. 26:

Plaintiff answers: YES
Defendant answers: NO

iii

## I.     INTRODUCTION

At issue here is the scope of a document production where Defendant has the exclusive control of the requested documents.  They are not otherwise available to Plaintiffs.  Where, as here, Plaintiffs have a significant burden of proof both to defeat a potential motion for decertification and to meet their burden regarding various elements of their claims[1], the imbalance of access to information cannot be overstated.

The Plaintiffs in this case are comprised of over 500 hourly workers who have lived and worked at numerous Defendant-owned locations throughout Michigan over the past three years.  Accordingly, due to the statewide geography of their residences and work locales, and the three year period that their employment encompasses, they have worked under numerous regional coaches/managers.  These regional managers/coaches have been identified by Defendants, and Defendants have agreed that they and six other individuals are proper ESI custodians in this matter.

With this response, Plaintiffs demonstrate that a) their most recent modified proposal meets Judge Steeh's Standing Order on ESI Discovery; b) Defendant has neither established "good cause" for a protective order nor met its burden of

---

[1] Plaintiffs herein incorporate the factual and legal arguments contained in their Motion to Compel [D.E. 70] that was contemporaneously filed with Defendant's Motion for Protective Order.

1

demonstrating "undue burden or expense"; and c) options that are less restrictive than Defendant's proposal adequately address Defendant's concerns.

## II.     UPDATE AS OF OCTOBER 18, 2018

On October 18, 2018, the parties held a telephonic conference pursuant to E.D.Mich. L.R. 37.1.   During the conference, Plaintiffs' counsel offered two proposals to attempt to resolve the issues in dispute:

1.     Include restrictive search terms in the ESI search to prevent the search from generating documents containing the names of attorneys or law firms that Defendant has employed during the relevant period.   This would serve a dual purpose of both eliminating documents that are clearly attorney-client privileged and reducing the overall document production.

2.     Enter into a protective order that a) allows for the redaction of personally identifying information of non-party employees, with a provision that such identity will be shared if shown to be necessary; and/or b) agree that any filings that include personally identifying information of non-party employees will be filed under seal.

In response, Defendant reiterated its previous objections and did not offer any substantive proposals other than its prior insistence that the four search terms be narrowed further.  **Ex. A**.

2

## III.  STANDARD OF REVIEW

As noted in Defendant's motion, the Court may "**for good cause**," issue an order to protect a party from "**undue burden or expense**," and may limit discovery if it determines that "the discovery sought is **unreasonably cumulative or duplicative**, or can be obtained from **some other source** that is more convenient, less burdensome, or less expensive. . . or the proposed discovery is **outside the scope permitted by Rule 26(b)(1)**." As Defendant further notes, it, as the movant, has the burden of establishing good cause for a protective order.

Defendant has not met its burden. It has failed to demonstrate undue burden or expense; has not averred that the discovery sought is unreasonably cumulative, duplicative or can be obtained from some other source; and has only speculated that the proposed discovery is outside the scope permitted by Rule 26(b)(1).

## IV.  ANALYSIS

### A.  PLAINTIFFS' PROPOSAL COMPLIES WITH JUDGE STEEH'S STANDING ORDER ON ESI DISCOVERY

As Defendant points out, Judge Steeh maintains a Standing Order on ESI Discovery ("Standing Order"). **Ex. B**. Pursuant to the Standing Order, "where the discovery request is potentially burdensome to the responding party, the parties should consider options **such as staging discovery and sampling**, in an attempt to reduce the costs of production." Id. (emphasis added).

3

Unfortunately, Defendant offers the Court a conclusory assertion that Plaintiffs' discovery request violates Judge Steeh's Standing Order without any meaningful analysis.  In fact, Plaintiffs' most recent proposal[2] that Defendant only initially produce approximately half of the requested ESI based on a randomized selection of the relevant market/area coaches so as to obtain a sampling of the potential full-scale production is precisely what the Standing Order suggests. Defendant offers no explanation as to why it believes this proposal is in conflict with the Standing Order, and Plaintiffs request that the Court find that it both complies with the Standing Order and that it should be implemented.

**B.      DEFENDANT CANNOT ESTABLISH GOOD CAUSE
             OR UNDUE BURDEN OR EXPENSE**

Pursuant to Fed. R. Civ. P. 26(c), "the court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c).  As explained in this district, "good cause is established with 'specific facts showing clearly defined serious injury resulting from the discovery sought and [the moving party] cannot rely on mere conclusory statements.'" <u>Federal Deposit Insurance Corporation v. Cuttle</u>, 2013 WL 1010692 *2 (E.D.Mich. 2013) *quoting* <u>Nix v. Sword</u>, 11 Fed. App'x 498, 500 (6th Cir. 2001); *see also* <u>Chauvin v. State Farm Mutual Automobile Insurance Company</u>,

---

[2] Discussed in greater detail in Plaintiffs' Motion to Compel [D.E. 70].

2011 WL 2490870 * 1 (E.D.Mich. June 22, 2011). "In contrast**, good cause 'is not established merely by showing that discovery may involve inconvenience and expense.**" Id. *quoting* Lehnert v. Ferris Faculty Ass'n, 556 F.Supp. 316, 318 (W.D.Mich. 1983) (emphasis added).

Defendant essentially appears to argue that Plaintiffs' ESI request imposes on it the "undue burden or expense" of attorney review time to assess privilege. Setting aside Plaintiffs' proposal that the ESI search include restrictive terms to exclude documents that reference attorneys or law firms, such argument is not dispositive. This Court has held that legal fees that are related to the responding party's efforts to protect its own interests by independently reviewing documents to determine claims of privilege, such legal fees do not constitute an undue burden. Hennigan v. General Electric Co., 2012 WL 13005370 (E.D.Mich. April 2, 2012)(finding legal fees incurred by a subpoenaed third party in conducting a privilege review attendant to document production was not an "undue burden" because the privilege review benefited the responding party rather than the requesting party). *See also* United States of America v. Renown Health, 12-00295 (D. Nev. Aug. 25, 2015) which held, "the court rejects [defendant's] argument that 'cost' under Rule 26(b)(2)(B) includes document review and storage. [Defendant] cites no authority for the proposition that review costs- ordinarily borne by the producing party – fall into cost under Rule 26(b)(2)(B)," and ruled that the "cost" of attorney review did not factor into the

5

"undue burden and cost" analysis; <u>Heartland Surgical Specialty Hospital, LLC v. Midwest Division, Inc.</u>, 2017 WL 3171768*4 (D.Kan. Oct. 29, 2001)("the fact that it will require time and expense by [responding party] to respond to the propounded discovery requests is not dispositive (estimating 226 attorney hours would be required to respond to the requests for admission)."

Further, Defendant's argument about the amount of time it will take to review responsive documents is misleading. First, there is no discernible reason why it needs to "filter out communications and documents involving other jurisdictions where Defendant operates." While Plaintiffs agree that documents regarding Canadian operations may be irrelevant, it's unlikely that the search term FLSA will turn up Canadian documents, since FLSA is an acronym for an American statute. As to documents regarding other states, the parties have never discussed filtering out such documents, and Plaintiffs specifically object to such filtering. While there may be relevance issues as to the appropriate use of such documents at trial, Defendant does not get to arbitrarily decide what documents to produce based on relevance. Further, the content of such documents could presumably go to the heart of the willfulness standard for which Plaintiffs bear the burden of proof (as discussed in their Motion to Compel [D.E. 70]).

In addition, in "calculating" the amount of time required to review the document production, Defendant fails to take into account Plaintiffs' suggestion that

6

it reduce the market/area coaches by half in order to first obtain a sampling of documents. Tellingly, the chart inserted at page 9 of their brief demonstrates the number of hits for all 26 market/area coaches rather than the reduced sampling that Plaintiffs proposed. In making their projections based on 26 market/area coaches, assuming all other assumptions correct for the sake of argument, Defendant doubles the projected review time; it should actually be half of its projected time. Indeed, such time can be cut even further with simple adjustments to the ESI search. For example, in doing the ESI search Defendant can use a modifier to specifically exclude the names of all law firms or counsel that it works with or to exclude signature blocks with Canadian addresses.

Finally, Defendant's concerns regarding personnel files is a red herring. Plaintiffs have not requested personnel files and cases regarding the release of personnel files are not relevant to this analysis. First, Defendant's cherrypicked documents should not be dispositive on this issue of Plaintiffs' access to discovery. However, to the extent that some documents produced may include employee names, as proposed by Plaintiffs, the parties can enter into a protective order that would include the redaction of non-party employee names with a provision for release of such information only upon demonstrated necessity.[3]

---

[3] Plaintiffs request that the Court disregard Defendant's Exhibit E, F and G because the cherrypicked documents are so heavily redacted that Plaintiffs- and presumably

## C.    DEFENDANT'S CASES ARE DISTINGUISHABLE

Defendant identifies four case as its "Controlling or Most Appropriate Authority," each of which is distinguishable from the instant matter. They are as follows:

- *Webasto Thermo & Comfort North America, Inc. v. Bestop, Inc.*, 2018 WL 3198544 (E.D.Mich. June 29, 2018), which Defendant relies upon heavily, is a two-plaintiff case regarding ESI that included twelve search terms and just a subset of the ESI requested would have generated over well over 600,000 documents. In comparison, the instant case has over 500 Plaintiffs, and Defendant is objecting to the production of approximately 48,000 (assuming a sampling of 13 market/area coaches rather than all 26). Further, in *Webasto*, the movant "offered hard numbers as to the staggering amount of ESI returned based on [the non-movant's] search request," and the movant's attorney provided a declaration that he substantively reviewed the first 100 records in its pre-production database and found that none of the records were relevant. No such declaration has been provided here; rather, only conclusory speculation.

- *Compuware Corporation v. Moody's Investors Services, Inc.* 222 F.R.D 124 (E.D.Mich. 2004), where the plaintiff sought the complete personnel files of four

---

the Court- cannot even determine if the redactions are necessary to protect employee privacy.

employees. This case is distinguishable from the matter at hand because Plaintiffs here do not seek personnel files. The fact that some documents produced may be contained within the personnel files of some employees does not per se mean that Plaintiffs are seeking personnel files. However, regardless, even the *Compuware* court noted that "the Sixth Circuit has recognized a privacy interest in personnel files, but has not always protected them from disclosure in discovery." Id. at 134.

- *Knoll v. American Tel & Tel. Co.*, 176 F.3d 359 (6th Cir. 1999), where personnel files were produced but the plaintiffs disputed whether a protective order governing the use of personnel files was appropriate. Here, as explained above, a) Plaintiffs are not seeking personnel files; and b) Plaintiffs would not object to an appropriate protective order to address concerns regarding non-party privacy. As the *Knoll* court explained, "such protective orders are commonly granted, . . . as a means of protective the privacy interests of nonparties while yet serving the needs of litigation." Id. at 135 (including a summary list of other similar protective orders.)

- *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288 (6th Cir. 2007), where the Sixth Circuit upheld the District Court's limitations on discovery. In upholding the District Court, the Sixth Circuit noted that an employee of the producing party provided an affidavit detailing why requested discovery would be unduly burdensome and would require production of an overly broad body of documents. Further, "Defendant made a clear showing that compliance would prove unduly

burdensome," including "retrieval of physical files from an off-site storage facility" for documents dating back 14 years from the date of the order and an estimate that document review would require 2,181 hours of manpower. No such affidavit or similar burden is present here; simply conjecture and speculation.

## V.  CONCLUSION

Accordingly, for the reasons stated herein, Plaintiffs' respectfully request that the Court deny Defendant's Motion for a Protective Order.

Dated:  October 19, 2018

By: /s/  *Jennifer L. McManus*

Jennifer L. McManus (P65976)
FAGAN MCMANUS, P.C.
25892 Woodward Avenue
Royal Oak, MI  48067-0910
(248) 542-6300
jmcmanus@faganlawpc.com

Megan A. Bonanni (P52079)
PITT MCGEHEE PALMER & RIVERS, P.C.
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800
mbonanni@pittlawpc.com

**ATTORNEYS FOR PLAINTIFFS**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENISE WOOD,
ANDRE MURRAY, and
REVELATION RUSSAW,

    Plaintiffs,                        Case No. 16-cv-13598

-vs-

                                     Hon. George Caram Steeh

SUNDANCE, INC.,                   Mag. Judge R. Steven Whalen

    Defendant.

---

Jennifer Lossia McManus P65976
FAGAN MCMANUS, P.C.
Attorneys for Plaintiffs
25892 Woodward Ave
Royal Oak, MI 48067
(248) 542-6300
jmcmanus@faganlawpc.com

Megan A. Bonanni P52079
PITT MCGEHEE PALMER & RIVERS, P.C.
Attorneys for Plaintiffs
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800
mbonanni@pittlawpc.com

Scott C. Fanning
Joel W. Rice
FISHER & PHILLIPS LLP
Attorneys for Defendant
10 S. Wacker Dr., Ste. 3450
Chicago, IL 60606
(312) 346-8061
sfanning@fisherphillips.com
jrice@fisherphillips.com

---

**PROOF OF SERVICE**

I hereby certify that on October 19, 2018, I electronically filed:

**PLAINTIFFS' RESPONSE TO DEFENDANT'S
MOTION FOR PROTECTIVE ORDER**

**PLAINTIFFS' BRIEF IN SUPPORT OF RESPONSE TO DEFENDANT'S
MOTION FOR PROTECTIVE ORDER**

with the Clerk of the Court using the ECF system which will send notification of

such filing to the following:

- Joel W. Rice    jrice@fisherphillips.com, jpierson@fisherphillips.com, jsmith@fisherphillips.com, kvandivier@fisherphillips.com

- Megan Bonanni    mbonanni@pittlawpc.com, rbell@pittlawpc.com

- Scott C. Fanning    sfanning@fisherphillips.com, jpierson@fisherphillips.com, kvandivier@fisherphillips.com

and I hereby certify that I have mailed by United States Postal Service the papers

to the following non-ECF participants:

___(none)___.

Respectfully submitted,

FAGAN MCMANUS, P.C.

By: /s/ *Jennifer L. McManus*
    Jennifer Lossia McManus P65976
    Attorney for Plaintiff
    25892 Woodward Avenue
    Royal Oak, MI  48067-0910
    (248) 542-6300
    jmcmanus@faganlawpc.com

Dated:  October 19, 2018

## **INDEX OF EXHIBITS**

**EXHIBIT A** -          10/18/18 email
**EXHIBIT B** -          Judge Steeh's Standing Order on Discovery of ESI

# EXHIBIT A

## Jennifer McManus

| | |
|---|---|
| **From:** | Fanning, Scott <sfanning@fisherphillips.com> |
| **Sent:** | Thursday, October 18, 2018 2:40 PM |
| **To:** | Jennifer McManus; Megan Bonanni |
| **Cc:** | Rice, Joel |
| **Subject:** | Sundance v. Wood - Discovery Motions |
| **Attachments:** | Discovery Motions - Issues for Review.DOCX |

Jennifer,

I write in follow up to the proposals that you made during our further telephonic meet and confer today regarding Plaintiff's proposed ESI searches. Specifically, you proposed: (1) using search tools to exclude any e-mails containing an e-mail address related to our firm or any other law firm utilized by Defendant; and (2) allowing the redaction of any personnel records related to class members who have not opted-in to the lawsuit, and entering into a protective order with confidentiality provisions.

While we appreciate the proposals, and although they may partially alleviate some aspects of Defendant's burden, the proposals do not address the threshold issue regarding the overbreadth of the requests and the fact that the searches will yield a substantial amount of irrelevant information. Additionally, with respect to the privilege issue and exclusion of attorney e-mail addresses, Defense counsel will still be required to review every document carefully to make sure that attorney client advice is not being discussed between members of Sundance's control group/senior management. Similarly, the personnel file redactions referenced in your proposal may actually increase the amount of time necessary to prepare the production. Moreover, while we are open to the idea of a confidentiality order being entered, that does not resolve the privacy concerns of third-party employees as their personal information is still potentially subject to disclosure not only to the attorneys, but also to all of the party Plaintiffs.

We are open to further discussion, but it must include some narrowing of the proposed searches, such as in the manner we proposed in our October 3 correspondence. We view this as a fundamental legal issue that, absent agreement between the parties, the Magistrate will need to decide.

As for the pending motions, I have attached a draft list of unresolved issues to submit the Court, in accordance with the Court's requirements. All that is required would be for Plaintiffs to include their positions. If you have any questions, please let me know.

Very truly yours,

**Scott C. Fanning**
Attorney at Law

Fisher & Phillips LLP
10 South Wacker Drive | Suite 3450 | Chicago, IL 60606
sfanning@fisherphillips.com | O: (312) 580-7800

vCard | Bio | Website    *On the Front Lines of Workplace Law*ˢᴹ

*This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error, then immediately delete this message.*

1

# EXHIBIT B

# UNITED STATES DISTRICT COURT

### FOR THE EASTERN DISTRICT OF MICHIGAN

### 505 THEODORE LEVIN UNITED STATES COURTHOUSE

231 W. LAFAYETTE BOULEVARD

**DAVID J. WEAVER**

COURT ADMINISTRATOR

313-234-5051

Fax 313-234-5399

DETROIT, MICHIGAN  48226

www.mied.uscourts.gov

DIVISIONAL OFFICES

ANN ARBOR

BAY CITY

FLINT

PORT HURON

September 20, 2013

Re:   Model Order Relating to the Discovery of Electronically Stored Information (ESI)
Checklist for Rule 26(f) Meet and Confer Regarding ESI

The Judges of the United States District Court for the Eastern District of Michigan
have approved, on a pilot period basis, the use of the attached model ESI discovery order
and Rule 26(f) checklist in appropriate cases.  It is within the judicial officer's discretion
whether these materials may be used.  At a future date, the Bench may consider whether
to adopt these materials as a uniform practice for the Court.

# MODEL ORDER RELATING TO THE
# DISCOVERY OF ELECTRONICALLY STORED INFORMATION

### *General Principles*

### Principle 1.01 (Purpose)

The purpose of these Principles is to assist courts in the administration of Federal Rule of Civil Procedure 1, to secure the just, speedy, and inexpensive determination of every civil case, and to promote, whenever possible, the early resolution of disputes regarding the discovery of electronically stored information ("ESI") without Court intervention. Understanding of the feasibility, reasonableness, costs, and benefits of various aspects of electronic discovery will inevitably evolve as judges, attorneys, and parties to litigation gain more experience with ESI and as technology advances.

### Principle 1.02 (Cooperation)

An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

### Principle 1.03 (Discovery Proportionality)

The proportionality standard set forth in Fed. R. Civ. P. 26(b)(2)(C) should be

1

applied in each case when formulating a discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as practicable. Where the discovery request is potentially burdensome to the responding party, the parties should consider options such as staging discovery and sampling, in an attempt to reduce the costs of production. If the discovery request seeks marginally relevant information, the requesting party should expect some cost shifting to be imposed by the Court in the absence of an agreement between the parties.

*Early Case Assessment Principles*

**Principle 2.01 (Duty to Meet and Confer on Discovery and to Identify Disputes for Early Resolution)**

> (a) Prior to the initial status conference with the Court, counsel shall meet and discuss the application of the discovery process set forth in the Federal Rules of Civil Procedure and these Principles to their specific case. Among the issues to be discussed are:
>
> (1) the identification of relevant and discoverable ESI and documents, including methods for identifying an initial subset of sources of ESI and documents that are most likely to contain the relevant and discoverable information as well as methodologies

2

for culling the relevant and discoverable ESI and documents from that initial subset (see Principle 2.05);

(2)    the scope of discoverable ESI and documents to be preserved by the parties;

(3)    the formats for preservation and production of ESI and documents;

(4)    the potential for conducting discovery in phases or stages as a method for reducing costs and burden; and

(5)    the potential need for a protective order and any procedures to which the parties might agree for handling inadvertent production of privileged information and other privilege waiver issues pursuant to Rule 502(d) or (e) of the Federal Rules of Evidence.

(b)    Disputes regarding ESI that counsel for the parties are unable to resolve shall be presented to the Court at the initial status conference, Fed. R. Civ. P. 16(b) Scheduling Conference, or as soon as possible thereafter.

(c)    The attorneys for each party shall review and understand how their respective client's data is stored and retrieved before the meet and confer discussions in order to determine what issues must be addressed during the meet and confer discussions.

3

(d)     If the Court determines that any counsel or party in a case has failed to cooperate and participate in good faith in the meet and confer process or is impeding the purpose of these Principles, the Court may require additional discussions prior to the commencement of discovery, and may impose sanctions, if appropriate.

**Principle 2.02 (E-Discovery Liaison(s))**

In most cases, the meet and confer process will be aided by participation of an e-discovery liaison(s) as defined in this Principle.  In the event of a dispute concerning the preservation or production of ESI, each party shall designate an individual(s) to act as e-discovery liaison(s) for purposes of meeting, conferring, and attending court hearings on the subject.  Regardless of whether the e-discovery liaison(s) is an attorney (in-house or outside counsel), a third party consultant, or an employee of the party, the e-discovery liaison(s) must:

(a)     be prepared to participate in e-discovery dispute resolution;

(b)     be knowledgeable about the party's e-discovery efforts;

(c)     be, or have reasonable access to those who are, familiar with the party's electronic information storage systems and capabilities in order to explain those systems and capabilities and answer relevant questions; and

(d)     be, or have reasonable access to those who are, knowledgeable about the technical aspects of e-discovery, including electronic document storage, organization,

and format issues, and relevant information retrieval technology, including search methodology.

**Principle 2.03 (Preservation Requests and Orders)**

(a) Appropriate preservation requests and preservation orders further the goals of these Principles. Vague and overly broad preservation requests do not further the goals of these Principles and are therefore disfavored. Vague and overly broad preservation orders should not be sought or entered. The information sought to be preserved through the use of a preservation letter request or order should be reasonable in scope and mindful of the factors set forth in Rule 26(b)(2)(C).

(b) To the extent counsel or a party requests preservation of ESI through the use of a preservation letter, such requests should attempt to ensure the preservation of relevant and discoverable information and to facilitate cooperation between requesting and receiving counsel and parties by transmitting specific and useful information. Examples of such specific and useful information include, but are not limited to:

    (1) names of the parties;

    (2) factual background of the potential legal claim(s) and identification of potential cause(s) of action;

    (3) names of potential witnesses and other people reasonably

Case 4:18-cv-00316-SHL-HCA   Document 11-3   Filed 11/28/18   Page 30 of 40

anticipated to have relevant evidence;

    (4)    relevant time period; and

    (5)    other information that may assist the responding party in assessing what information to preserve.

(c)    If the recipient of a preservation request chooses to respond, that response should provide the requesting counsel or party with useful and specific information regarding the preservation efforts undertaken by the responding party. Examples of such useful and specific information include, but are not limited to, information that:

    (1)    identifies what information the responding party is willing to preserve and the steps being taken in response to the preservation letter;

    (2)    identifies any disagreement(s) with the request to preserve; and

    (3)    identifies any further preservation issues that were not raised.

(d)    Nothing in these Principles shall be construed as requiring the sending of a preservation request or requiring the sending of a response to such a request.

**Principle 2.04 (Scope of Preservation)**

(a)    Every party to litigation and its counsel are responsible for taking reasonable and proportionate steps to preserve relevant and discoverable ESI within

6

its possession, custody, or control. Determining which steps are reasonable and proportionate in particular litigation is a fact specific inquiry that will vary from case to case. The parties and counsel should address preservation issues at the outset of a case, and should continue to address them as the case progresses and their understanding of the issues and the facts improves.

(b)  Discovery concerning the preservation and collection efforts of another party may be appropriate but, if used unadvisedly, can also contribute to the unnecessary expense and delay and may inappropriately implicate work product and attorney-client privileged matter. Accordingly, prior to initiating such discovery a party shall confer with the party from whom the information is sought concerning: (i) the specific need for such discovery, including its relevance to issues likely to arise in the litigation; and (ii) the suitability of alternative means for obtaining the information. Nothing herein exempts deponents on merits issues from answering questions concerning the preservation and collection of their documents, ESI, and tangible things.

(c)  The parties and counsel should come to the meet and confer conference prepared to discuss the claims and defenses in the case including specific issues, time frame, potential damages, and targeted discovery that each anticipates requesting. In addition, the parties and counsel should be prepared to discuss reasonably foreseeable

7

preservation issues that relate directly to the information that the other party is seeking. The parties and counsel need not raise every conceivable issue that may arise concerning their preservation efforts; however, the identification of any such preservation issues should be specific.

(d)  The following categories of ESI generally are not discoverable in most cases, and if any party intends to request the preservation or production of these categories, then that intention should be discussed at the meet and confer or as soon thereafter as practicable:

(1)  "deleted," "slack," "fragmented," or "unallocated" data on hard drives;

(2)  random access memory (RAM) or other ephemeral data;

(3)  on-line access data such as temporary internet files, history, cache, cookies, etc;

(4)  data in metadata fields that are frequently updated automatically, such as last-opened dates;

(5)  backup data that is substantially duplicative of data that is more accessible elsewhere; and

(6)  other forms of ESI whose preservation requires extraordinary affirmative measures that are not utilized in the ordinary course

8

of business.

(e)    If there is a dispute concerning the scope of a party's preservation efforts, the parties or their counsel must meet and confer and fully explain their reasons for believing that additional efforts are, or are not, reasonable and proportionate, pursuant to Rule 26(b)(2)(C). If the parties are unable to resolve a preservation issue, then the issue should be raised promptly with the Court.

(f)    Absent an order of the Court upon a showing of good cause or stipulation by the parties, a party from whom ESI has been requested shall not be required to search for responsive ESI:

(1)    from more than ten (10) key custodians;

(2)    that was created more than five (5) years before the filing of the lawsuit;

(3)    from sources that are not reasonably accessible without undue burden or cost; or

(4)    for more than 160 hours, exclusive of time spent reviewing the ESI determined to be responsive for privilege or work product protection, provided that the producing party can demonstrate that the search was effectively designed and efficiently conducted. A party from whom ESI has been requested must maintain detailed

9

time records to demonstrate what was done and the time spent doing it, for review by an adversary and the Court, if requested.

**Principle 2.05 (Identification of Electronically Stored Information)**

(a) At the Rule 26(f) conference or as soon thereafter as possible, counsel or the parties shall discuss potential methodologies for identifying ESI for production.

(b) Topics for discussion may include, but are not limited to, any plans to:

(1) eliminate duplicative ESI and whether such elimination will occur only within each particular custodian's data set or whether it will occur across all custodians;

(2) filter data based on file type, date ranges, sender, receiver, custodian, search terms, or other similar parameters; and

(3) use keyword searching, mathematical, or thesaurus-based topic or concept clustering, or other advanced culling technologies.

**Principle 2.06 (Production Format)**

(a) At the Rule 26(f) conference, counsel and the parties should make a good faith effort to agree on the format(s) for production of ESI (whether native or some other reasonably usable form). If counsel or the parties are unable to resolve a production format issue, then the issue should be raised promptly with the Court.

(b) The parties should confer on whether ESI stored in a database or a

database management system can be produced by querying the database for discoverable information, resulting in a report or a reasonably usable and exportable electronic file for review by the requesting counsel or party.

(c)     ESI and other tangible or hard copy documents that are not text-searchable need not be made text-searchable.

(d)     Generally, the requesting party is responsible for the incremental cost of creating its copy of requested information. Counsel or the parties are encouraged to discuss cost sharing for optical character recognition (OCR) or other upgrades of paper documents or non-text-searchable electronic images that may be contemplated by each party.

***Education Provisions***

**Principle 3.01 (Judicial Expectations of Counsel)**

Because discovery of ESI is being sought more frequently in civil litigation and the production and review of ESI can involve greater expense than discovery of paper documents, it is in the interest of justice that all judges, counsel, and parties to litigation become familiar with the fundamentals of discovery of ESI. It is expected by the judges adopting these Principles that all counsel will have done the following in connection with each litigation matter in which they file an appearance:

(1)     Familiarize themselves with the electronic discovery provisions

11

of Federal Rules of Civil Procedure, including Rules 26, 33, 34, 37, and 45, as well as any applicable State Rules of Procedure;

(2) Familiarize themselves with the Advisory Committee Report on the 2006 Amendments to the Federal Rules of Civil Procedure, available at:

http://www.uscourts.gov/uscourts/RulesAndPolicies/rules/EDis covery_w_Notes.pdf; and

(3) Familiarize themselves with these Principles.

## Principle 3.02 (Duty of Continuing Education)

Judges, attorneys, and parties to litigation should continue to educate themselves on electronic discovery by consulting applicable case law, pertinent statutes, the Federal Rules of Civil Procedure, the Federal Rules of Evidence, The Sedona Conference® publications relating to electronic discovery,[1] additional materials available on web sites of the courts,[2] and of other organizations[3] providing education information regarding the discovery of ESI.[4]

---

[1] www.thesedonaconference.org/

[2] E.g., www.ilnd.uscourts.gov/home/

[3] E.g., www.discoverypilot.com, www.fjc.gov (Under Educational Programs and Materials)

[4] E.g., www.du.edu/legalinstitute

12

Case 4:18-cv-00316-SHL-HCA Document 11-3 Filed 11/28/18 Page 37 of 40

**Principle 3.03 (Non-Waiver of Attorney-Client Privilege or Work Product Protection)**

As part of their duty to cooperate during discovery, the parties are expected to discuss whether the costs and burdens of discovery, especially ESI, may be reduced by entering into a non-waiver agreement pursuant to Fed. R. Evid. 502(e). The parties also should discuss whether to use computer-assisted search methodology to facilitate pre-production review of ESI to identify information that is beyond the scope of discovery because it is attorney-client privileged or work product-protected.

**Principle 3.04 (Discovery From Nonparties)**

Parties issuing requests for ESI from nonparties should attempt to informally meet and confer with the nonparty (or counsel, if represented). During this meeting, counsel should discuss the same issues with regard to requests for ESI that they would with opposing counsel as set forth above. If an agreement cannot be reached with the nonparty, the standards outlined above will apply generally to the discovery of ESI sought pursuant to Rule 45.

ENTER:

Dated: _____        _____
                               [Name]
                               United States [District/Bankruptcy/Magistrate Judge]

13

**United States District Court**

**Eastern District of Michigan**

CHECKLIST FOR RULE 26(f) MEET AND CONFER
REGARDING ELECTRONICALLY STORED INFORMATION

In cases where the discovery of electronically stored information ("ESI") is likely to be a significant cost or burden, the Court encourages the parties to engage in on-going meet and confer discussions and use the following Checklist to guide those discussions. These discussions should be framed in the context of the specific claims and defenses involved. The usefulness of particular topics on the checklist, and the timing of discussion about these topics, may depend on the nature and complexity of the matter.

## I.    Preservation

☐  The ranges of creation or receipt dates for any ESI to be preserved.

☐  The description of data from sources that are not reasonably accessible and that will not be reviewed for responsiveness or produced, but that will be preserved pursuant to Federal Rule of Civil Procedure 26(b)(2)(B).

☐  The description of data from sources that (a) the party believes could contain relevant information but (b) has determined, under the proportionality factors, should not be preserved.

☐  Whether or not to continue any interdiction of any document destruction program, such as ongoing erasures of e-mails, voicemails, and other electronically-recorded material.

☐  The names and/or general job titles or descriptions of custodians for whom ESI will be preserved (e.g., "HR head," "scientist," "marketing manager," etc.).

☐  The number of custodians for whom ESI will be preserved.

☐  The list of systems, if any, that contain ESI not associated with individual custodians and that will be preserved, such as enterprise databases.

☐  Any disputes related to scope or manner of preservation.

## II.   Liaison

☐  The identity of each party's e-discovery liaison.

## III.  Informal Discovery About Location and Types of Systems

☐  Identification of systems from which discovery will be prioritized (e.g., email, finance, HR systems).

☐ Description of systems in which potentially discoverable information is stored.

☐ Location of systems in which potentially discoverable information is stored.

☐ How potentially discoverable information is stored.

☐ How discoverable information can be collected from systems and media in which it is stored.

## IV. Proportionality and Costs

☐ The amount and nature of the claims being made by either party.

☐ The nature and scope of burdens associated with the proposed preservation and discovery of ESI.

☐ The likely benefit of the proposed discovery.

☐ Costs that the parties will share to reduce overall discovery expenses, such as the use of a common electronic discovery vendor or a shared document repository, or other cost-saving measures.

☐ Limits on the scope of preservation or other cost-saving measures.

☐ Whether there is potentially discoverable ESI that will not be preserved consistent with this Court's Principle 1.03 (Discovery Proportionality).

## V. Search

☐ The search method(s), including specific words or phrases or other methodology, that will be used to identify discoverable ESI and filter out ESI that is not subject to discovery.

☐ The quality control method(s) the producing party will use to evaluate whether a production is missing relevant ESI or contains substantial amounts of irrelevant ESI.

## VI. Phasing

☐ Whether it is appropriate to conduct discovery of ESI in phases.

☐ Sources of ESI most likely to contain discoverable information and that will be included in the first phases of Fed. R. Civ. P. 34 document discovery.

☐ Sources of ESI less likely to contain discoverable information from which discovery will be postponed or avoided.

☐ Custodians (by name or role) most likely to have discoverable information and whose ESI will

Case 4:18-cv-00316-SHL-HCA Document 11-3 Filed 11/28/18 Page 40 of 40

be included in the first phases of document discovery.

☐ Custodians (by name or role) less likely to have discoverable information and from whom discovery of ESI will be postponed or avoided.

☐ The time period during which discoverable information was most likely to have been created or received.

## VII. Production

☐ The formats in which structured ESI (database, collaboration sites, etc.) will be produced.

☐ The formats in which unstructured ESI (email, presentations, word processing, etc.) will be produced.

☐ The extent, if any, to which metadata will be produced and the fields of metadata to be produced.

☐ The production format(s) that ensure(s) that any inherent searchablility of ESI is not degraded when produced.

## VIII. Privilege

☐ How any production of privileged or work product protected information will be handled.

☐ Whether the parties can agree upon alternative ways to identify documents withheld on the grounds of privilege or work product to reduce the burdens of such identification.

☐ Whether the parties will enter into a Fed. R. Evid. 502(d) Stipulation and Order that addresses inadvertent or agreed production.