IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| ROBYN MORGAN, on behalf of herself and all similarly situated individuals,<br><br>    Plaintiff,<br><br>vs.<br><br>SUNDANCE, INC.,<br><br>    Defendant. | Case No.:  4:18-cv-00316-JAJ-HCA |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL INDIVIDUAL ARBITRATION AND DISMISS PLAINTIFF'S COMPLAINT**

Defendant Sundance, Inc. ("Defendant" or "Sundance"), by and through its attorneys, Joel W. Rice and Scott C. Fanning of FISHER & PHILLIPS LLP, respectfully moves this Court pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3,4, for an order compelling individual arbitration for all claims in Plaintiff Robyn Morgan's ("Plaintiff") Complaint ("Complaint") and dismissing Plaintiff's Complaint; or, in the alternative, staying the underlying proceedings pending the outcome of the arbitration.

**Introduction**

Plaintiff is a former Sundance employee.  She is also a party to an Arbitration Agreement (the "Agreement") with Sundance in which she agreed to arbitrate any and all disputes against Sundance arising out of her employment with Sundance. Plaintiff nonetheless filed this lawsuit against Sundance alleging causes of action under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") for alleged minimum wage and overtime violations, all of which fall directly within the scope of the Agreement. Moreover, Plaintiff's lawsuit purports to be a collective action

seeking relief on behalf of all similarly situated Sundance employees across six different states.

However, the Agreement does not authorize Plaintiff to pursue a collective action in arbitration.

As such, Plaintiff's lawsuit breaches the Agreement, Plaintiff must be compelled to submit her

claims to individualized arbitration, and her Complaint must be dismissed or, in the alternative,

stayed pending individual arbitration pursuant to her Agreement and the FAA.

**Statement of Facts**

Plaintiff started her employment at Defendant beginning in August 2015.  *See* Application

for Employment, attached as Exhibit A; Compl., ¶ 3 [D. 1].  On August 20, 2015, Plaintiff signed

an Application for Employment with Defendant which, in pertinent part, states as follows:

> **Agreement to Arbitrate.**  Because of the delay and expense of the court systems, Taco Bell and I agree to use confidential binding arbitration, instead of going to court, for any claims that arise between me and Taco Bell, its related companies, and/or their current or former employees.  Without limitation, such claims including any concerning compensation, employment (including, but not limited to, any claims concerning sexual harassment or discrimination), or termination of employment.  Before arbitration, I agree: (i) first to present any such claims in full written detail to Taco Bell; (ii) next, to complete any Taco Bell internal review process; and (iii) finally, to complete any external administrative remedy (such as with the Equal Employment Opportunity Commission or National Labor Relations Board).  In any arbitration, the prevailing employment dispute resolution rules of the American Arbitration Association will apply, except that Taco Bell will pay the arbitrator's fees, and Taco Bell will pay that portion of the arbitration filing fee in excess of the similar court filing fee had I gone to court.

Ex. A (emphasis in original), the Agreement.  The Agreement further provided that the terms

"Company" and "Taco Bell" refer to "the entity reviewing [Plaintiff's] application and making

2

any hiring decisions," which was Sundance.  *Id.*; *see also* Declaration of Kenneth Petty, attached as Exhibit B.

Despite the mutual agreement to arbitrate all claims arising between Plaintiff and Defendant, Plaintiff filed her Complaint against Defendant in this Court on September 25, 2018. *See* Complaint ("Complaint"), attached as Exhibit C; *see also* Ex. A (noting that the Agreement was between Plaintiff and the entity deciding to hire Plaintiff, which was Defendant); *see also* Ex. B, ¶¶ 3-10.  In her Complaint, Plaintiff brings a putative nationwide collective action alleging that Defendant engaged in a common plan to violate the overtime provisions of the FLSA, by failing to pay herself and all similarly situated employees for all hours they worked and/or failing to pay employees the required overtime rate for all hours worked over forty in a week.

On November 8, 2018, Defendant filed a Motion to Dismiss or, Alternatively, Stay ("Motion to Stay") this action pursuant to Fed. R. Civ. P. 12(b)(3). The Motion to Stay was premised on the first-filed rule and argued that the Court should dismiss and/or stay Plaintiff's Complaint because it substantially overlapped in terms of parties and issues with a case filed two years earlier and pending in the Eastern District of Michigan. [D. 9-1]. This Honorable Court denied Defendant's Motion to Stay on March 5, 2019, and Defendant filed its Answer and Affirmative Defenses to Plaintiff's Complaint on March 19, 2019. [D. 16, 17]. No discovery has taken place, the parties have not submitted a proposed scheduling order or plan to the Court, and the Court has not entered a discovery schedule. The initial Scheduling Conference is currently set for May 8, 2019. [D. 20].

Additionally, shortly after Sundance filed its Answer and Affirmative Defenses, the parties participated in a private mediation on April 15, 2019. The parties were not successful in reaching a settlement at the mediation conference. After the parties' unsuccessful mediation, on April 24,

FPDOCS 35341486.1

2019, the Supreme Court issued a decision in *Lamps Plus, Inc. v. Varela*, providing significant clarification as to the availability of class arbitration when an arbitration agreement is silent or ambiguous on the issue. No. 17-988, 587 U.S. ___, slip op. (Apr. 24, 2019). Specifically, the Supreme Court held that class arbitration is not permissible when an arbitration agreement is silent or ambiguous as to the availability of class arbitration. *Id.*, slip op. at 1. The *Lamps Plus* decision has a significant bearing on this litigation as Defendant's arbitration agreement with Plaintiff is silent on the issue of class arbitration. Under the prior state of the law, Defendant risked being compelled to arbitrate this matter as a collective action, which would "have fundamentally change[d] the nature of the 'traditional individualized arbitration' envisioned by the FAA" and Defendant. *Id.*

## Legal Standard

The FAA governs questions of arbitrability in both federal and state courts. *Torres v. Simpatico, Inc.,* 781 F. 3d 963, 968 (8th Cir. 2015). The FAA reflects a "liberal federal policy favoring arbitration," *AT&T Mobility LLC v. Conception*, 563 U.S. 333, 131 S. Ct. 1740 (2011) (*quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 214 (1983)). Indeed, there is a strong national policy in favor of arbitration (*see Dobbins v. Hawk's Ent.*, 198 F.3d 715, 717 (8th Cir. 1999)) and doubts about whether an arbitration clause should be construed to cover a particular dispute are generally resolved in favor of arbitration. *Telectronics Pacing Sys., Inc. v. Guidant Corp.*, 143 F.3d 428, 430 (8th Cir. 1998).

Section 2 of the FAA provides that an arbitration clause in "a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[S]tate contract law governs the threshold question of whether an enforceable arbitration agreement exists

4

between the litigants; if an enforceable agreement exists, the federal substantive law of arbitrability governs whether the litigants' dispute falls within the scope of the arbitration agreement." *Donaldson Co. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 731 (8th Cir. 2009). *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (court must determine if the plaintiff's claims are subject to the arbitration provision).

Courts should uphold and enforce arbitration agreements according to their terms unless they are invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). When reviewing an arbitration agreement, courts consider: "(1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement." *Robinson v. EOR-ARK, LLC*, 841 F.3d 781, 783-84 (8th Cir. 2016) (*quoting Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004)). "A court must grant a motion to compel arbitration if a valid arbitration clause exists which encompasses the dispute between the parties." *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1198 (8th Cir. 2008) (*citing* 9 U.S.C. § 4; *MedCam, Inc. v. MCNC*, 414 F.3d 972, 974 (8th Cir. 2005)).

Arbitration agreements in the employment context are broadly enforceable under the FAA. *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105 (2001). To that end, courts that have interpreted the FAA have routinely enforced arbitration provisions, including with respect to matters arising out of an individual's employment. *See Owen v. Bristol Care, Inc.*, 702 F.3d 1050 (8th Cir. 2013) (enforcing agreement to arbitrate FLSA claims individually); *Fuller v. A.G. Edwards & Sons, Inc.,* No. 3:06-CV-072, 2006 WL 8436694, at *2 (S.D. Iowa Nov. 22, 2006) (holding that the plaintiff was bound to arbitrate claims pursuant to an arbitration agreement contained within an application for employment); *De Dios v. Brand Energy & Infrastructure Servs.*, No. C 18-4011-MWB, 2018

5

WL 2976104, at *9 (N.D. Iowa June 13, 2018) (same); *Brondyke v. Bridgepoint Educ., Inc.*, 985 F. Supp. 2d 1079 (S.D. Iowa 2013) (holding that employee was bound to arbitrate his claims pursuant to a provision in an employee handbook published months after his hire); *Thompson v. Air Transp. Int'l L.L.C.*, 664 F.3d 723 (8th Cir. 2011) (dismissing plaintiff's FMLA claims, which were subject to an arbitration agreement).

**<u>Argument</u>**

This Court should compel Plaintiff to arbitrate her claims against Defendant on an individualized basis.  Upon being presented with a motion to compel arbitration and stay judicial proceedings, this Court must make three determinations.  First, the Court must determine whether there is a valid agreement to arbitrate in place.  *Robinson v,* 841 F.3d at 783-84.  Second, the Court must determine whether the dispute falls within the scope of the arbitration agreement.  *Id.*  Third, the Court must determine if the parties have agreed to arbitrate the plaintiff's claims on an individualized or class-wide basis. *See Catamaran Corp. v. Towncrest Pharmacy*, 864 F.3d 966 (2017) (held that a court must determine whether an arbitration agreement authorizes class arbitration "because of the fundamental differences between bilateral and class arbitration."). In this case, compelling individual bilateral arbitration is appropriate because there is a valid arbitration agreement, Plaintiff's Complaint falls within the scope of the Agreement, and the Agreement does not authorize class arbitration.

### I.    The Agreement is Valid and Binding

There is no dispute that the Agreement is a valid and enforceable contract.  In considering the enforceability of an arbitration agreement, courts must first determine whether the dispute is subject to arbitration pursuant to a valid arbitration agreement.  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002).  Courts rely upon state contract law when determining whether

6

there is a valid agreement to arbitrate. *Quam Const. Co. v. City of Redfield,* 770 F.3d 706, 708 (8th Cir. 2014).

Under Iowa law, a valid contract consists of an offer, an acceptance, and consideration. *Taggart v. Drake University*, 549 N.W.2d 796, 800 (Iowa 1996). Plaintiff cannot dispute any of these elements. Plaintiff applied for employment at Defendant, Defendant considered her application and subsequently hired her, and Defendant compensated Plaintiff for her work. *See* Ex. A; Ex. C at ¶ 3; *see also Fuller,* 2006 WL 8436694, at *2.

### A.   Defendant Offered Plaintiff the Option to Agree To Mandatory Arbitration.

By virtue of Plaintiff being provided notice of the Agreement, Defendant "offered" the Agreement for purposes of creating a valid and enforceable contract. Agreements contained in employment applications are found to be valid offers. *Fuller*, 2006 WL 8436694, at *2; *De Dios*, 2018 WL 2976104, at *9. The provision of arbitration materials to an employee, even without further training on said materials, is sufficient to create an "offer" of an arbitration agreement. *See Brondyke v. Bridgepoint Educ., Inc.*, 985 F. Supp. 2d 1079, 1094 (S.D. Iowa 2013) (arbitration agreement contained in employee handbook found to be an offer.) Here, Plaintiff cannot dispute that she received a copy of the Agreement and had an opportunity to review it. Ex. A; Ex. B, ¶¶ 3-10. Clearly, Plaintiff was "offered" the Agreement as a consequence of Defendant's provision of notice through Perfect Tacos.

### B.   Plaintiff Agreed to be Bound by Defendant's Dispute Resolution Agreement.

Plaintiff's acceptance of the Agreement also contributes to the Agreement qualifying as a valid and enforceable contract. Plaintiff accepted the terms of the Agreement in two respects: (1)

by completing her electronic signature after logging into Perfect Tacos with her unique password; and (2) by agreeing to employment with Defendant after being offered the terms of the Agreement.

As to the first method, Plaintiff's completion of her electronic signature after logging into Perfect Tacos with her unique password constitutes a binding acceptance. *Faber,* 367 F.3d at 1053 ("There is assent, clear notice, and no unfair surprise here because Faber signed the agreement, which we presume that he read before signing."). The facts favoring acceptance are stronger here than in *Faber*, as Plaintiff electronically signed the Agreement after inputting her own unique password into Perfect Tacos. Ex. B, ¶¶ 3-10. Plaintiff cannot deny that she accepted and assented to the Agreement.

Regarding Plaintiff's second method of acceptance of the Agreement, Plaintiff's becoming employed with Defendant after being notified of the Agreement is demonstrative of her acceptance of the agreement. *See Brondyke*, 985 F. Supp. 2d at 1096 (continuing to work for employer after receiving handbook containing arbitration agreement constituted assent to the terms of the updated handbook.). It is undisputed that Plaintiff continued to work for Defendant after her receipt of the Agreement. Ex. C at ¶ 3. Plaintiff accepted the Agreement as a result of her continued employment after receiving notice of it. *See Brondyke*, 985 F. Supp. 2d at 1096.

Further, Plaintiff cannot avoid arbitration by asserting that she never read the materials. To the extent Plaintiff claims that she did not read the employment application's arbitration agreement, a "party cannot avoid the terms of [a] contract simply because [of]… the failure to read the contract." *Advance Elevator Co., Inc. v. Four State Supply Co.*, 572 N.W.2d 186, 188 (Iowa Ct.App.1997). "Generally, an agreement in writing speaks for itself and absent fraud or mistake, ignorance of the contents will not serve to negate or avoid its contents." *Id.* (*citing Morgan v. Am. Family Mut. Ins. Co*., 534 N.W.2d 92, 99 (Iowa 1995), r*ev'd on other grounds* by 612 N.W.2d 775

8

(Iowa 2000)). "Further, a party is charged with notice of the terms and conditions of a contract if the party is able or has had the opportunity to read the agreement." *Id.* (*citing Morgan*, 534 N.W.2d at 99). "A party is also bound by a document the party signs even though the party has not expressly accepted all of the contract provisions and is not aware of them." *Id.* (*citing Joseph L. Wilmotte & Co. v. Rosenman Bros.*, 258 N.W.2d 317, 323 (Iowa 1977)). Thus, even if Plaintiff somehow denies that she reviewed the Agreement, Defendant's documentary evidence demonstrating the contrary meets the first and second elements of a valid and enforceable contract.

### C.    Sufficient Consideration Exists to Render the Dispute Resolution Agreement Valid and Enforceable.

In support of the Agreement, the parties each proffered sufficient consideration.  For a contract to be enforceable under Iowa law, there must be consideration.  *See Van Arkel v. Warren Cnty.*, 365 F.Supp.2d 979, 987 (S.D.Iowa 2005). "[C]ontinued employment and the mutual promise to resolve disputes according to the terms of the plan" constitutes consideration that supports a contract to arbitrate under Iowa law. *Owen v. MBPXL Corp.*, 173 F.Supp.2d 905, 914 (N.D. Iowa 2001); *see also Fogel v. Trustees of Iowa Coll.*, 446 N.W.2d 451, 456 (Iowa 1989) (noting that an employee continuing to work constitutes consideration). In *Fuller*, the District Court held that an arbitration agreement contained on an employment application was supported by adequate consideration because the employer agreed to consider the employee's application in exchange for his agreement to arbitrate. 2006 WL 8436694, at *2; *see also De Dios* (same). Here, like *Fuller*, Plaintiff's agreement to submit to arbitration any claims she may have against Defendant was supported by the consideration of Defendant agreeing to review her application for employment and subsequently employing her.

Additionally, the parties' mutual promise to resolve their disputes in binding arbitration constitutes consideration under Iowa law. *Brondyke*, 985 F. Supp. 2d at 1096. In this case, the

9

arbitration provision in the Agreement states that "[b]ecause of the delay and expense of the court systems, **Taco Bell and I** agree to use confidential binding arbitration, instead of going to court[.]" *See* Ex. A (emphasis added).[1]  Each party was mutually bound to the arbitration process.  Because there was a mutual waiver of the right to bring a civil action, there is adequate mutual consideration in the underlying arbitration agreement.  *Brondyke*, 985 F. Supp. 2d at 1096.  Thus, the Agreement is valid and binding as to its arbitration provisions.

## II.      Plaintiff's Claims are within the Scope of the Agreement.

Each claim alleged in Plaintiff's Complaint is within the scope of the Agreement.  The Agreement expressly provides that "Taco Bell and [Plaintiff] agree to use confidential binding arbitration, instead of going to court, for **any** claims that arise between [Plaintiff] and Taco Bell, its related companies, and/or their current or former employees" and "such claims would include any concerning **compensation** [or] employment…".  *See* Ex. A (emphasis added).

All of Plaintiff's alleged claims arise between her and Defendant and concern her compensation and employment.  *See generally* Ex. C; *see also* Ex. A.  Although "any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration," there are no such doubts here.  *Moses H. Cone*, 460 U.S. at 24-25; *see* Ex. A-C.  Plaintiff's claims fall within the scope of the arbitration provisions of the Agreement.

## III.     The Court Should Compel Individualized, Bi-Lateral Arbitration.

This Court should compel arbitration of Plaintiff's claims on an individualized basis. While Plaintiff has filed this action as a putative collective action under the FLSA on behalf of all of Defendant's hourly employees, Defendant never consented to proceeding with Plaintiff's claims on a class basis in arbitration. A party must expressly consent to class arbitration. *Stolt-Nielsen*

---

[1] The Agreement defined "Taco Bell" as the entity reviewing Plaintiff's application and making the decision to hire Plaintiff. *See* Ex. A.  In both instances, that was Sundance. *See* Ex. C at ¶ 3.

FPDOCS 35341486.1

*A.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010). The issue as to whether an arbitration agreement authorizes arbitration to proceed on a class or collective action basis must be decided by the District Court. *Catamaran Corp. v. Towncrest Pharmacy*, 864 F.3d 966 (8th Cir. 2017). The Supreme Court has recently held that if an arbitration agreement is silent or ambiguous as to the availability of class arbitration, an employee subject to such an agreement can only proceed to arbitration on an individual basis. *Lamps Plus, Inc. v. Varela*, No. 17-988, 587 U.S. ___, slip op. at 9 (Apr. 24, 2019). Here, the Agreement is silent on the issue of class arbitration. As such, according to *Lamps Plus, Inc.*, this Court must refer this matter to arbitration on an individualized basis.

### IV.     Dismissal of the Complaint is Appropriate.

A district court has discretion to dismiss an action after compelling arbitration if it is clear that the arbitration will resolve the entire controversy between the parties. *See, e.g., Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 770 (8th Cir. 2011); *McLeod v. Gen. Mills, Inc.*, 856 F.3d 1160, 1168 (8th Cir. 2017); *Unison Co. v. Juhl Energy Dev., Inc.*, 789 F.3d 816, 821 (8th Cir. 2015). Here, a dismissal is warranted as the entirety of Plaintiff's claims against Defendant are covered by the Agreement and the arbitration will resolve the entire controversy between the parties. Therefore, the Court should exercise its discretion and dismiss Plaintiff's Complaint. Alternatively, the Court should stay the proceedings. *See Madol v. Dan Nelson Automotive Group*, 372 F.3d 997, 998 (8th Cir. 2004).

### V.     The Agreement is Not Unconscionable.

To the extent that Plaintiff may argue that the Agreement is unconscionable, Defendant respectfully submits that Plaintiff will be unable to sustain such an argument.[2]   Agreements to

---

[2] Defendant anticipates that Plaintiff may argue that the Agreement is unconscionable and, therefore, briefly addresses Plaintiff's anticipated arguments herein.  Defendant, however, reserves its rights to supplement

11

arbitrate may be invalidated only on grounds "generally applicable [to] contract defenses such as fraud, duress, or unconscionability." *Doctor's Assocs., Inc.*, 517 U.S. at 687. Because the Agreement is neither procedurally nor substantively unconscionable, the Agreement must be enforced, Plaintiff must be compelled to arbitrate this dispute, and this action must be dismissed.

A contract is unconscionable "where no person in his or her right senses would make it on the one hand, and no honest and fair person would accept it on the other hand." *Bartlett Grain Co. v. Sheeder*, 829 N.W.2d 18, 27 (Iowa 2013) (*quoting C&J Vantage Leasing Co. v. Wolfe*, 795 N.W.2d 65, 80 (Iowa 2011)). "[W]hether an agreement is unconscionable must be determined at the time it was entered." *C&J*, 795 N.W.2d at 81. Courts generally analyze the following factors in determining unconscionability: (1) assent; (2) unfair surprise; (3) notice; (4) disparity of bargaining power; and (5) substantive unfairness. *See Bartlett Grain*, 829 N.W.2d at 27. "Under Iowa law, the burden of proof that a particular provision or contract is unconscionable rests on the party claiming it is unconscionable." *Faber*, 367 F.3d at 1053 (*citing In re Estate of Ascherl*, 445 N.W.2d 391, 392 (Iowa Ct. App. 1989)).

Nothing in this case suggests that the agreement was procedurally unconscionable or that Plaintiff did not assent to the agreement, should be surprised by the agreement, or was deprived of time to review the Agreement before signing it. Here, Plaintiff decided to apply and sign the Agreement after being provided with sufficient time and opportunity to review the terms of the Agreement before she agreed to such terms. *See Faber,* 367 F.3d at 1053 ("There is assent, clear notice, and no unfair surprise here because Faber signed the agreement, which we presume that he read before signing."). Moreover, unequal bargaining power alone is insufficient to render an arbitration agreement an adhesion contract. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S.

---

or add to its position regarding unconscionability so as to further address any additional arguments that Plaintiff may make in opposition to this Motion.

FPDOCS 35341486.1

20, 33, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) ("Mere inequality in bargaining power . . . is not a sufficient reason to hold that arbitration agreements [are unenforceable]."). Because there are no facts to support the argument that the Agreement was procedurally unconscionable, the Agreement should be enforced and Plaintiff should be compelled to arbitrate this dispute.

Similarly, the Agreement is not substantively unconscionable. In *Fields v. NCR Corp.*, the District Court found that there was nothing unconscionable about an arbitration agreement that contained rules limiting the amount of discovery available to plaintiff in an employment claim and requiring the plaintiff to pay a portion of the arbitration fee. 683 F. Supp. 2d 980, 989-990 (S.D. Iowa 2010). Likewise, in *Gergeni v. Evangelical Lutheran Good Samaritan*, the District Court found that a mandatory arbitration agreement contained in an employee handbook applying to all claims related to an employee's employment was not unconscionable even though the employer had superior bargaining power and the employer could modify or revoke the agreement at any time. No. 17-CV-4037-LRR, 2018 WL 1175228, at *6 (N.D. Iowa Mar. 6, 2018). The Agreement at issue in this case is significantly less substantively onerous than the arbitration agreements at issue in *Fields* and *Gergeni,* as it is mutual, incorporates the American Arbitration Association's rules, and does not require Plaintiff to pay any arbitrator fees in excess of what she would have paid as a filing fee to a court. Moreover, courts routinely enforce arbitration agreements contained in employment agreements in similar matters.   *See Owen*, 702 F.3d 1050 (FLSA claims); *Brondyke,* 985 F. Supp. 2d at 1096; *Fuller,* 2006 WL 8436694, at *2; *De Dios*, 2018 WL 2976104, at *9.

Additionally, none of the factors indicative of substantive unconscionability are present here.  The Agreement does not limit any of Plaintiff's remedies by compelling arbitration.  The Agreement does not impose any unreasonable fees or payments on Plaintiff by compelling

arbitration.  There is no issue of unequal access to courts in that both Plaintiff and Defendant are equally bound in their obligations to arbitrate employment-related disputes.  Ex. A.  The terms of the Agreement are not unreasonably or grossly favorable to one side or the other.  Therefore, the Agreement also is not procedurally or substantively unconscionable and should be enforced.

### VI. Defendant Did Not Waive Its Right To Compel Arbitration.

To the extent that Plaintiff may assert that Defendant waived its right to compel arbitration, Plaintiff will be unable to demonstrate that Defendant waived any such rights. A party waives its right to arbitration if it "(1) knew of an existing right to arbitration; (2) acted inconsistently with that right; **and** (3) prejudiced the other party by these inconsistent acts." *Lewallen v. Green Tree Servicing, LLC*, 487 F.3d 1085, 1090 (8th Cir. 2007) (emphasis added). The test is conjunctive, so Plaintiff must demonstrate all three elements to establish waiver. *Id.* "A party acts inconsistently with its right to arbitrate if the party 'substantially invokes the litigation machinery before asserting its arbitration right.'" *Lewallen*, 487 F.3d at 1090.  "A party substantially invokes the litigation machinery when, for example, it files a lawsuit on arbitrable claims, engages in extensive discovery, or fails to move to compel arbitration and stay litigation in a timely manner." *Id.* "To safeguard its right to arbitration, a party must do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration." *Erdman Co. v. Phx. Land & Acquisition, LLC*, 650 F.3d 1115, 1118 (8th Cir. 2011). But, because of the strong federal policy in favor of arbitration, "any doubts concerning waiver of arbitrability should be resolved in favor of arbitration." *Id.*

In *Dumont v. Saskatchewan Government Insurance*, the defendant removed the case to federal court, answered a motion for partial summary judgment, and moved to dismiss for lack of personal jurisdiction and forum *non conveniens*. 258 F.3d 880, 833-834 (8th Cir. 2001). *Id.* The

14

Eighth Circuit affirmed the district court's finding that these actions did not amount to waiver of an arbitration agreement. *Id.* at 886-87. In affirming the district court's finding of no waiver, the Eighth Circuit explained that defendant "took no action with respect **to the merits** of the case prior to the district court ordering arbitration. Rather, [defendant] sought early dismissal of the case on jurisdictional and quasi jurisdictional grounds." *Id.* at 886-87 (emphasis added). Similarly, in *ABF Freight Systems, Inc.*, the Eighth Circuit found that a defendant who had filed a motion to dismiss on standing (not the merits of the claim) did not waive its rights to compel arbitration. 728 F.3d 853 (8th Cir. 2013).

Here, like the defendants in *Dumont* and *ABF Freight Systems*, Defendant has not "substantially invoke[d] the litigation machinery." Defendant has not filed a motion to dismiss on the merits, participated in any scheduling conferences with the Court, filed any discovery plan, initiated or responded to any written discovery, or participated in any depositions. Instead, Defendant filed a Motion to Stay pursuant to Fed. R. Civ. P. 12(b)(3) arguing improper venue, filed an Answer and Affirmative Defenses, and participated in a private mediation with Plaintiff. Moreover, less than two months have passed since the Court ruled on Defendant's Motion to Stay, during which time the only activity engaged in by the parties was a private mediation.

Moreover, plaintiff cannot show any prejudice in being required to bring her claim in arbitration. Once again, this litigation is at its incipiency. No discovery has taken place and a discovery schedule has not been proposed or entered. The only activities that have occurred are briefing on Defendant's non-merits based Motion to Stay, Defendant filing its Answer and Affirmative Defenses, and the parties' participation in private mediation. Importantly, the parties will not need to re-litigate the same venue issue contained within its Motion to Stay in an arbitration because arbitration would be on an individual basis and, therefore, not implicate the

15

same concerns of competing collective action lawsuits proceeding simultaneously. Additionally, plaintiff's individual claims are likely to be adjudicated significantly faster in an individual arbitration proceeding rather than on a collective action basis in federal court. Hence, Defendant did not waive its right to compel arbitration and this Court should compel Plaintiff to submit her claim to an individualized arbitration.

### Conclusion

Plaintiff agreed to submit any compensation or employment claims she might have against Defendant to binding arbitration. Plaintiff cannot now be allowed to circumvent her obligation by proceeding with her Complaint in this Court. Consequently, Defendant respectfully requests that this Court grant its motion to compel arbitration on an individualized basis and dismiss the Complaint pursuant to the FAA, 9 U.S.C. §§ 3-4; or, in the alternative, stay the underlying proceedings pending the completion of arbitration.

Dated: May 3, 2019

Respectfully submitted:
/s/ Joel W. Rice
Joel W. Rice (pro hac vice)
Scott C. Fanning (pro hac vice)
Fisher & Phillips, LLP
10 S. Wacker Dr., Ste. 3450
Chicago, IL 60606
(312) 346-8061

Kevin J. Driscoll
Finley Law Firm, P.C.
699 Walnut Street, Suite 1700
Des Moines, IA 50309
Telephone: (515) 288-0145
E-Mail: kdriscoll@finleylaw.com
Attorneys for Sundance, Inc.

FPDOCS 35341486.1

## CERTIFICATE OF SERVICE

I hereby certify that on May 3, 2019, I electronically filed the foregoing document with the Clerk of the Court using the ECF system and also served the foregoing upon to all counsel of record via electronic mail.

Dated: May 3, 2019                                  Respectfully submitted,

                                                    /s/ Joel W. Rice
                                                    Joel W. Rice
                                                    Scott C. Fanning
                                                    Fisher & Phillips, LLP
                                                    10 S. Wacker Dr., Ste. 3450
                                                    Chicago, IL 60606
                                                    (312) 346-8061
                                                    *Attorneys for Sundance, Inc.*

17