IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| ROBYN MORGAN, on behalf of herself and all similarly situated individuals, <br><br> Plaintiff, <br><br> vs. <br><br> SUNDANCE, INC., <br><br> Defendant. | Case No. 4:18-cv-00316-JAJ-HCA |

**PLAINTIFF'S RESPONSE IN OPPOSITION OF DEFENDANT'S
<u>MOTION TO COMPEL ARBITRATION</u>**

## I.    <u>INTRODUCTION</u>

After filing an answer and affirmative defenses, losing an initial motion to stay and change venue, after a class wide damage analysis, after a full day mediation, and after approximately eight months of litigation, Defendant now seeks to invoke an unsigned arbitration agreement and asks this court to dismiss Plaintiff's case.  The Eighth Circuit has held that an eight month delay, during which time a plaintiff was forced to defend against a motion to transfer, constitutes a waiver of an employer's right to compel arbitration.  *Messina*, 821 F.3d 1047, 1051 (8th Cir. 2016); *see also, Johnson Assocs. Corp. v. HL Operating Corp.,* 680 F.3d 713, 718 (6th Cir.2012) (Holding a delay of eight months supported waiver); *Hill v. Ricoh Americas Corp.*, 603 F.3d 766, 773–74 (10th Cir. 2010) (holding a delay of four months supported waiver).

**"To safeguard its right to arbitration, a party must "do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration."** *Messina v. N. Cent. Distrib., Inc.*, 821 F.3d 1047, 1050 (8th Cir.

2016). Put simply, Defendant's motion to compel arbitration should be denied as untimely and the case should proceed on a collective action basis.

## II.    PROCEDURAL HISTORY

This case was filed on September 25, 2018.  Doc. 1.  On November 08, 2018 Defendant filed a Motion to Dismiss or Stay arguing Plaintiff's claims, and the claims of the putative class members, were covered by a previously filed case in the Eastern District of Michigan, which has since settled on a class basis.  Doc. 9.  Notably, in that motion, Defendant actually argued to the Court that Plaintiff "may refile her claim on an individual basis *before this Court* or attempt to opt-in to or otherwise join the Wood Action."  Doc. 9-1, p. 13.  On March 3, 2019 the Court denied Defendant's Motion to Dismiss or Stay "[b]ecause *Wood* is a Michigan-only collective action, while this case brings nationwide claims, the Court holds that they are not duplicative." Doc. 16, p. 7.  The litigation proceeded and Defendant did not to move to compel arbitration.

On March 19, 2019, Defendant filed their Answer and Affirmative Defenses.  Doc. 17. The Answer and Affirmative Defenses make no reference whatsoever to arbitration.  Shortly thereafter, the Court set a scheduling conference, which was adjourned several times by stipulation of the Parties.  During these adjournments the Parties agreed to participate in a class-wide mediation on April 15, 2019 in Chicago, Illinois.

In anticipation of the mediation, Defendant produced payroll data for nearly 12,000 members of the putative collective.  To assist in synthesizing the massive amount of payroll data, Plaintiff retained the services of David A. Macpherson, Ph.D. to provide expert economic services. His services were billed at a rate of $300.00 per hour for research and analysis.  A $3,000.00 retainer was required up front.  A copy of the retainer agreement, signed by Plaintiff's Counsel, is attached hereto as *Exhibit A*.  Defendant also produced thousands of pages of emails from

Defendant's management, which were analyzed by Plaintiff's Counsel in preparation of the mediation. Ultimately, the mediation was successful as to the *Wood* Action pending in Michigan, but not the present matter.

On April 22, 2019, Defense Counsel requested that Plaintiff's Counsel prepare and circulate a proposed litigation schedule and report, prior to the scheduling conference set for May 1, 2019. ***Exhibit B***, E-mail Correspondence. As requested, Plaintiff's counsel prepared the report. However, on April 26, 2019 the scheduling conference was adjourned again to May 8, 2019. Up to this point, there was *never* a single word uttered by Defendant about Plaintiff's claims being subject to an arbitration agreement.

In fact, it was not until May 1, 2019 that Defendant notified Plaintiff's Counsel of an arbitration agreement and their intention to compel arbitration. The agreement was allegedly signed via an electronic signature by Plaintiff. According to Defendant's Motion (ECFs 21 and 21-1), the arbitration agreement was contained in the Plaintiff's employment application, which was completed on the company website. *See*, www.perfecttacos.com (last visited 5/10/19).

### III.     ARGUMENT

#### A. Legal Standard

"[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). A court therefore may only order parties to arbitration when it is "satisfied that the making of the agreement for arbitration … is not in issue." 9 U.S.C. § 4. "To satisfy itself that such agreement exists, the court must resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010).

The Eighth Circuit held in *N & D Fashions, Inc. v. DHJ Industries, Inc.,* that *courts* generally decide whether a party has waived its right to arbitrate by "actively participat[ing] in a lawsuit or tak[ing] other action inconsistent with the right to arbitration." 548 F.2d 722, 728 (8th Cir.1976) (quotations omitted); *Parler v. KFC Corp.*, 529 F. Supp. 2d 1009, 1012 (D. Minn. 2008).

**B. Defendant Waived Its Right to Compel Arbitration Under the *Lewallen* Test**

Defendant has waived its right to compel arbitration by its actions of participating in this lawsuit and its delay in raising the issue of arbitration.  The Parties agree the *Lewallen* waiver test is controlling over the present motion.

First, "[a] party acts inconsistently with its right to arbitrate if the party '[s]ubstantially invoke[s] the litigation machinery before asserting its arbitration right.'" *Lewallen v. Green Tree Servicing, L.L.C.*, 487 F.3d 1085, 1090 (8th Cir. 2007); *(quoting Ritzel Commc'ns, Inc. v. Mid-Am. Cellular Tel. Co.*, 989 F.2d 966, 969 (8th Cir. 1993). The 8th Circuit has held, "we will find waiver where the party claiming the right to arbitrate: (1) knew of an existing right to arbitration; (2) acted inconsistently with that right; and (3) prejudiced the other party by these inconsistent acts. *Ritzel*, 989 F.2d at 969.

**1.  Defendant knew of an existing right to arbitration.**

Defendant must concede that they knew of an existing right to arbitration because the "agreement" to arbitrate was contained in a standardized employment application, found on Defendant's company website.  Therefore, there can be no genuine argument by Defendant that they did not know of their right.  Instead, to Plaintiff's detriment, Defendant knowingly sat on their right.

### 2.   Defendant acted inconsistently with the right to arbitration.

"A party acts inconsistently with its right to arbitrate if it substantially invokes the litigation machinery before asserting its arbitration right, ... when, for example, it files a lawsuit on arbitrable claims, engages in extensive discovery, or fails to move to compel arbitration and stay litigation in a timely manner."   *Messina v. N. Cent. Distrib., Inc.*, 821 F.3d 1047, 1050 (8th Cir. 2016) (internal quotations omitted); *see also*, *Ritzel*, 989 F.2d at 969 (same).  Furthermore, "a party must "do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration."  *Messina*, 821 F.3d 1047, 1050 (8th Cir. 2016). As stated above, the Eight Circuit in *Messina* found an eight month delay to be untimely.

In this case, although formal discovery may not have commenced, the Parties have engaged in informal discovery on a class-wide basis.  Defendant has supplied payroll data for nearly twelve thousand (12,000) employees and thousands of emails for Defendant's managers from across the country have already been produced and reviewed by Plaintiff's counsel.  As a practical matter, class-wide discovery has already commenced.

In *Messina*, the plaintiff sued his former employer for breach of contract and wrongful termination.  Defendant removed the case to federal court, filed an answer, and later moved for a venue transfer.  The venue transfer motion was denied, then eight (8) months later the Defendant moved to compel arbitration. *Messina*, 821 F.3d 1047, 1048–49 (8th Cir. 2016).  In evaluating the three factors discussed above, the *Messina* Court held:

> [Defendant's] conduct satisfies each element of the *Lewallen* waiver test. First, it knew of its existing right to arbitration because it possessed the arbitration agreement. **Second, [Defendant] acted inconsistently with its right to arbitrate by proceeding in court for more than eight months before asserting that right.** *See Lewallen,* 487 F.3d at 1090. The *Lewallen* court concluded that the defendant in that case had waived its right to arbitration after filing discovery, seeking an extension of time to respond to the complaint, filing a joint motion to continue trial, and waiting eleven months to invoke its right until it filed its motion

5

to dismiss. *Id.* at 1091. [Defendant's] eight month delay is of similar length, and it participated in somewhat similar pretrial proceedings. [Defendant] "substantially invoke[d] the litigation machinery," *id.* at 1090, by removing the case to federal court, filing an answer, participating in a pretrial hearing, filing a scheduling report which recommended a trial date and discovery deadlines, and filing a motion to transfer venue.

*Messina v. N. Cent. Distrib., Inc.*, 821 F.3d 1047, 1050 (8th Cir. 2016).

The facts in *Messina* are virtually indistinguishable from the present case. Although a scheduling order wasn't filed in this case, Defense Counsel nonetheless instructed Plaintiff to prepare a proposed scheduling order, then at the eleventh hour decided to change course. ***Exhibit B***. *See also*, *Hooper v. Advance Am., Cash Advance Centers of Missouri, Inc.*, 589 F.3d 917, 922 (8th Cir. 2009) (finding a delay of just four-and-a-half months was inconsistent with the intention to arbitrate and prejudicial to the plaintiff).

### 3.  Plaintiff was prejudiced by the Defendants inconsistent acts.

By failing to timely move for arbitration, Defendant "squandered the economies of arbitration and gave the appearance of having no sincere interest in avoiding litigation of the dispute." *Ritzel Commc'ns, Inc. v. Mid-Am. Cellular Tel. Co.*, 989 F.2d 966, 970 (8th Cir. 1993).

Payroll data for nearly 12,000 employees has already been reviewed and analyzed by Plaintiff's Counsel and their damages expert, who was paid thousands of dollars for his services. ***Exhibit A***, Plaintiff's Expert Retainer Agreement. It wasn't until after the parties went to the mediation, on May 1, 2019 that Defendant informed Plaintiff of their intention to enforce the arbitration agreement. Countless hours were expended preparing a damage model for individuals that Defendant now seeks to exclude from this case. Additionally, Plaintiff's counsel reviewed thousands of emails from Defendant's store managers, area managers, and regional managers in order to argue issues like class certification, liability, and class damages.

Plaintiff was unquestionably prejudiced by Defendant's wait and see, surprise tactic of asserting a right to arbitrate.

In summary, pursuant to the *Lewallen* waiver test, Defendant has most certainly waived their right to assert arbitration because: 1) they knew the arbitration agreement existed when this case was filed; 2) they affirmatively chose not to assert their right to arbitrate as a matter of litigation strategy; and 3) Plaintiff has been prejudiced by Defendant's decision not to enforce the arbitration agreements because they have incurred great expenses in hiring an expert and invested significant time in researching and preparing the claims of the class members.

**C.  The Cases Cited to by Defendant on Waiver are Distinguishable.**

Defendant claims the Supreme Court's decision in *Lamps Plus* stands for a new legal principle, and that only after the decision was issued could Defendant have known to invoke arbitration.  That is Defendant's sole justification for the prejudicial delay, but it is clearly disingenuous.  The law on arbitration agreements which are silent on the issue of class waiver was decided in *Stolt-Nielsen* in 2010 – a case cited by Defendant in support of their motion.  *See* Doc. 21-1 at 10 (citing *Stolt-Nielsen* because "A party must expressly consent to class arbitration.") Accordingly, any argument by Defendant that the recent *Lamps Plus* decision influenced their decision to compel arbitration should be disregarded as patently insufficient.  This arbitration agreement seems to have come out of thin air and the possibility that the agreement is fraudulent cannot be ruled out at this time.

Defendant cites to a number of other cases addressing waiver, which are distinguishable from the present case.

First, Defendant deceptively cites to *Dumont v. Saskatchewan Government Insurance*, 258 F.3d 880 (8th Cir. 2001).  But *Dumont* predates the *Lewallen* waiver test that is followed in this

Circuit.  Factually, the *Dumont* case involved a dispute over uninsured motorist coverage, under a Canadian insurance policy, for a motor vehicle accident that occurred in North Dakota.  *Id*., 880-881. The insurance policy contained an arbitration agreement that required arbitration under the Arbitration Act of Saskatchewan, not the FAA.  *Id*. 882.  The family of the deceased plaintiff filed a lawsuit in state court against the at-fault driver, and requested the uninsured motorist carrier participate in the lawsuit**. However, the defendant *immediately* refused to participate in the state court litigation, claiming the insured's family had breached the terms of the insurance contract by not seeking a judgment against the at-fault driver via arbitration Canada**. *Id*., 883.  Nonetheless, the state court entered a judgment against the at-fault driver. *Id*.  Shortly thereafter, the plaintiff's family filed an action against the uninsured motorist carrier in state court for payment pursuant to the judgment against the at-fault driver. *Id*.  The uninsured carrier removed the case to federal court pursuant to 28 U.S.C. § 1332(a), diversity jurisdiction. However, before the uninsured carrier could even answer the complaint, the plaintiff moved for summary judgment to determine the insurer's liability based on the state court judgment. At the same time the insurer filed its answer, they also moved to dismiss the complaint. *Id*. 884.  The district court denied both motions in part, but ordered the parties to binding arbitration in accordance with the terms of the insurance policy.  *Id*.

Accordingly, Defendant's reliance on *Dumont* is greatly misplaced.  From the very onset of even the underlying state court case against the at-fault driver, the insurer maintained its assertion that the claims must be decided in arbitration, pursuant to the agreement in the insurance policy.  The dismissal motion the insurer responded to was filed before the answer to the complaint was filed – the insurer had no choice, but to prepare a response.  In any case, the insurer sought arbitration from the onset of the underlying negligence case.

Next, Defendant relies on *ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 728 F.3d 853 (8th Cir. 2013), which is also easily distinguishable from the present case. In *ABF Freight* the plaintiff-employer brought suit against another employer and a union alleging a violation of a collective bargaining agreement (CBA). The underlying dispute arose from amendments to the multi-employer CBA, which ABF objected to. The CBA required that all disputes be submitted to the National Grievance Committee (NGC); however, according to ABF, another provision in the CBA disqualified the NGC from hearing the dispute regarding the CBA amendments because some members of the NGC were also parties to the CBA. ABF filed a lawsuit asking the district court to appoint another disinterested tribunal (or alternatively to provide redress). Defendants *immediately* moved to dismiss the case pursuant to Rule 12(b)(6) on the following grounds: 1) ABF lacked standing; 2) ABF should be required to go before the NGC with this dispute. *Id*. at 857. The district court granted the motion on point #1 (standing), but the Eighth Circuit Court of Appeals vacated and remanded the decision finding there were sufficient facts plead to support standing. ABF appealed. On remand, ABF amended its complaint and the defendants again moved to dismiss under Rule 12(b)(6). Once again, the district court granted defendant's motion and ABF, once again, appealed. *Id*. at 853-857.

On the second appeal, ABF argued that the FAA permits courts to appoint arbitrators in certain situations. However, the Circuit Court found that the "the FAA does not apply in this case." *ABF Freight*, 728 F.3d 853, 859 (8th Cir. 2013). Ultimately, the Court held that the terms of the CBA required that the disqualification issue be resolved by the NGC and the operative rules contained in the CBA regarding disqualification. *Id*. at 860. ABF attempted to argue that the exhaustion of grievance was waived by defendants, however, the court held:

> This is not a case where a party actively litigates a case for an extended period only to belatedly assert that the dispute should have been arbitrated, not litigated,

in the first place.  The litigation at issue here was not an alternative to the grievance process; it was to determine whether ABF must use the process.

*ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 728 F.3d 853, 865 (8th Cir. 2013) (internal citations omitted).

Unlike the *ABF Freight* case, the Defendant in this case intentionally sat on asserting their right to arbitrate, as a litigation tactic, and allowed Plaintiff to expend substantial time and money preparing a case for a collective of nearly 12,000 employees.  After an unsuccessful mediation, Defendant decided to change course. Outside of *Dumont* and *ABF Freight*, two clearly distinguishable cases where the right to arbitrate was raised immediately, Defendant cites no law in support of the relief they request in their Motion.[1]

**D. The Supreme Court's Decision in Lamps Plus is Not a Justification to Allow Defendant to Change Direction and Seek Individual Arbitration**

To permit Defendant to enforce the arbitration agreements against Plaintiff and the putative class at this stage would allow Defendant to manipulate the judicial process. An instructive example is *Hooper v. Advance America, Cash Advance Centers of Missouri, Inc.,* 589 F.3d 917, 919 (8th Cir.2009), where the Eighth Circuit said that the defendant "wanted to see how the case was going in federal district court before deciding whether it would be better off there or in arbitration." *Id.* at 922 (internal quotation marks omitted). It agreed with the district court that " 'want[ing] to play heads I win, tails you lose ... is the worst possible reason' for [a party's] failing to move for arbitration sooner than it did." *Id.* Thus, although defendant had not intentionally relinquished its right to arbitration, to send the case to arbitration would allow manipulation of the judicial process.

---

[1] Neither *Dumont* nor *ABF Freight* were analyzed under the FAA.  Both Courts found the FAA inapplicable.

Remarkably, that is precisely the reason given by Defendant in this case! They argue the Court should excuse their delay in failing to move for arbitration because they wanted to see if they were better off in federal court, as opposed to arbitration. *See* Defendant's Opposition Brief, Doc. 21-1 p. 4 ("The Lamps Plus decision has a significant bearing on this litigation … Defendant risked being compelled to arbitrate this matter as a collective action"). The Court in *Hooper* described this justification as "the worst possible reason for failing to move for arbitration sooner than it did." *Hooper* at 922.

The principle that *Lamps Plus* affirmed (silence to class arbitration means no class arbitration) has been the law for years. The opinion expressly recognizes this:

> Because of these "crucial differences" between individual and class arbitration, *Stolt-Nielsen* explained that there is "reason to doubt the parties' mutual consent to resolve disputes through classwide arbitration." 559 U.S. at 687, 685–686, 130 S.Ct. 1758. And for that reason, we held that courts may not infer consent to participate in class arbitration absent an affirmative "contractual basis for concluding that the party *agreed* to do so." *Id.*, at 684, 130 S.Ct. 1758. Silence is not enough; the "FAA requires more." *Id.*, at 687, 130 S.Ct. 1758.

> Our reasoning in *Stolt-Nielsen* controls the question we face today. Like silence, ambiguity does not provide a sufficient basis to conclude that parties to an arbitration agreement agreed to "sacrifice[ ] the principal advantage of arbitration." *Concepcion*, 563 U.S. at 348, 131 S.Ct. 1740.

*Lamps Plus, Inc. v. Varela*, No. 17-988, 2019 WL 1780275, at *6 (U.S. Apr. 24, 2019).

While a change in the status of the law is not a legitimate justification to delay asserting arbitration agreements anyway (as outlined above), here, there has been no change in the status of the law. Defendant knew this because they cited the law in their own brief. *Stolt-Nielsen* established that "a party must expressly consent to class arbitration." *See*, Defendant's Memorandum in Support of Motion, Doc. 21-1, at p. 10.

In *Se. Stud & Components, Inc. v. Am. Eagle Design Build Studios, LLC*, the defendant attempted to argue, similar to this case, the delay in asserting the right to arbitrate was due to a

change in law. 588 F.3d 963, 968 (8th Cir. 2009). However, the Court found the defendant's argument to lack merit because the case relied on by Defendant "did not decide new law or reverse previous case law … it merely correctly applied the existing law." *Id*. Furthermore, the Court noted that "if [defendant] had done all it could reasonably have been expected to do in making the earliest feasible determination of whether to proceed judicially or by arbitration, it would have discovered that the Supreme Court's previous rulings permitted arbitration agreements even when they did not contain additional mutuality of obligation. Upon discovering this, it would have determined that the arbitration agreement in the Subcontract was valid and enforceable. By failing to do all it could reasonably have been expected to do, defendant failed to safeguard its right to arbitration. *Id*. at 969. "Because [defendant] had knowledge of its existing right to arbitrate but acted inconsistently with that right and prejudiced [plaintiff] by those actions, [defendant] waived its right to arbitration." *Id*. (*citing Lewallen,* 487 F.3d at 1090).

Pursuant to the *Stud & Components, Inc.* opinion, which is binding precedent on point, there was no substantial change in arbitration law, the defendant had knowledge of its existing right to arbitrate but acted inconsistently with that right, and, as a result, Plaintiff was prejudiced. Therefore, Defendant has waived its right to compel arbitration of the Plaintiff's claim and the claims for any of the putative collective members. *See, Woods v. Caremark PHC, L.L.C.*, 198 F. Supp. 3d 1046, 1050 (W.D. Mo. 2016) (holding that Defendant waived its right to compel opt-ins to arbitrate claims where the "lawsuit [was] brought as a collective action under the FLSA" and "Defendants were on notice of Plaintiffs' intention to proceed on behalf of a nationwide class and collective since the inception of the litigation."); *In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litig.*, 790 F.3d 1112, 1117-19 (10th Cir. 2015) (held where the defendant "delayed in mentioning its intent to arbitrate for a substantial period of time" defendant waived its

12

right to compel arbitration of unnamed class members because the court refused to condone the defendants "improper gamesmanship."); *Edwards v. First Am. Corp.,* 289 F.R.D. 296, 307 (C.D.Cal.2012) (explaining that parties may waive their right to arbitrate against absent class members when they could have "asserted their intention to raise arbitration as a defense at a much earlier stage in the proceeding"). *See also*, *Elliott v. KB Home N. Carolina, Inc.*, 231 N.C. App. 332, 346–47, 752 S.E.2d 694, 703 (2013) ("We agree with the court in *Edwards* that "gamesmanship" of this kind should not be encouraged. *Edwards,* 289 F.R.D. at 307–08. Holding otherwise would defeat, rather than promote, the public policy behind the favor with which the courts of this state generally view arbitration—expediting an efficient and relatively simple means of resolving disputes without the multitude of costs, in both time and money, generally associated with litigation."); *Cabinetree of Wisc., Inc. v. Kraftmaid Cabinetry, Inc.,* 50 F.3d 388, 391 (7th Cir.1995) (disapproving of parties who "play heads I win, tails you lose" by waiting to "see how the case was going in federal district court before deciding whether it would be better off there or in arbitration").

## IV.   <u>CONCLUSION</u>

In the present case, each element of the *Lewallen* test is unquestionably satisfied. The Defendant has sat on their right to assert arbitration against Plaintiff and the members of the putative collective, and, in doing so, has completely squandered the economies of arbitration. For the reasons set forth herein, the Court should DENY defendant's motion to compel arbitration in its entirety.

*[Signatures of Counsel on Following Page]*

Respectfully Submitted,

Dated:  May 17, 2019

*/s/ Charles R. Ash, IV*
Jason J. Thompson (Pro Hac Vice)
Charles R. Ash, IV (Pro Hac Vice)
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, MI 48067 PH:
(248) 355-0300
jthompson@sommerspc.com
crash@sommerspc.com

FIEDLER LAW FIRM, P.L.C.
Paige Fiedler (AT0002496)
8831 Windsor Parkway
Johnston, IA  50131
(515) 254-1999
paige@employmentlawiowa.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on May 17, 2019, I electronically filed the forgoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

*/s/ Charles R. Ash, IV*
crash@sommerspc.com