IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

ROBYN MORGAN, on behalf of herself
and all similarly situated individuals,

          Plaintiff,

vs.

SUNDANCE, INC.,

          Defendant.

No. 4:18-cv-316-JAJ-HCA

**OPINION AND ORDER
REGARDING DEFENDANT'S
MOTION TO COMPEL INDIVIDUAL
ARBITRATION AND DISMISS**

---

      This case, filed on September 25, 2018, is a putative nationwide collective action pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*, filed by a former employee seeking to recover wages and overtime pay allegedly retained by an employer using a scheme involving improper wage and hour practices. The defendant is the owner and operator of fast food franchises in several states. This case is now before the court on the defendant's May 3, 2019, Motion To Compel Individual Arbitration And Dismiss Plaintiff's Complaint [Dkt. No. 21]. The plaintiff filed her Response In Opposition Of Defendant's Motion To Compel Arbitration [Dkt. No. 24] on May 17, 2019. The defendant filed its Reply Brief In Further Support Of Its Motion To Compel Individual Arbitration And Dismiss Plaintiff's Complaint [Dkt. No. 27] on May 26, 2019. For the reasons stated below, the defendant's May 3, 2019, Motion To Compel Individual Arbitration And Dismiss Plaintiff's Complaint [Dkt. No. 21] is **DENIED.**

# I.    INTRODUCTION

## A.    Factual Background

This factual background is based on the plaintiff's allegations in her September 25, 2018, Complaint [Dkt. No. 1], the defendant's March 19, 2019, Answer And Affirmative Defenses [Dkt. No. 17], and such other facts as the court finds relevant and adequately supported by the parties' submissions.   This statement of the factual background is not intended to be comprehensive, however.   Rather, it is intended to provide the context for arguments on the present motion and the basis for essential findings of fact.

Plaintiff Robyn Morgan alleges, and defendant Sundance, Inc., admits, that Sundance owns over 150 Taco Bell franchise restaurants in multiple states.   Morgan asserts that she is now a resident of Seligman, Missouri, but from August 2015 to October or November 2015,[1] she worked as an hourly employee for Sundance as a "crew member" at its Osceola, Iowa, restaurant.   Morgan alleges that the acts about which she complains occurred in Iowa.   Morgan alleges, and Sundance denies, that, at various points within the past three years, she experienced Sundance's failure to pay her for all hours worked and Sundance's failure to pay overtime wages for all hours worked over 40 per week, when Sundance was legally required to pay such wages.   Morgan alleges, and Sundance denies, that the failure to pay the wages in question was pursuant to a business model that Sundance developed, implemented, and willfully continued to use, even though Sundance knew or should have known it was unlawful.

Sundance asserts that, when Morgan applied for employment with Sundance, she completed and electronically signed an Application For Employment, dated August 20,

---

[1] Although Morgan alleges that she was employed from August 2015 to October 2015, Sundance asserts that Morgan was employed from August 20, 2015, to November 12, 2015.

2015, on the company's website.   Sundance asserts that Application included the following arbitration clause just above the signature line:

> **Agreement to Arbitrate.** Because of the delay and expense of the court systems, Taco Bell and I agree to use confidential binding arbitration, instead of going to court, for any claims that arise between me and Taco Bell, its related companies, and/or their current or former employees. Without limitation, such claims would include any concerning compensation, employment (including, but not limited to, any claims concerning sexual harassment or discrimination), or termination of employment. Before arbitration, I agree: (i) first to present any such claims in full written detail to Taco Bell; (ii) next, to complete any Taco Bell internal review process; and (iii) finally, to complete any external administrative remedy (such as with the Equal Employment Opportunity Commission or National Labor Relations Board). In any arbitration, the then prevailing employment dispute resolution rules of the American Arbitration Association will apply, except that Taco Bell will pay the arbitrator's fees, and Taco Bell will pay that portion of the arbitration filing fee in excess of the similar court filing fee had I gone to court.

Def.'s Ex. A [Dkt. No. 21-2].   It is not clear whether Morgan genuinely disputes the authenticity of the copy of the Application For Employment submitted by Sundance or the validity of her electronic signature on it, because, in her Response, she makes only passing references to the Application as "unsigned" and as "allegedly signed via an electronic signature."   Morgan asserts that it was not until May 1, 2019, that Sundance notified her counsel of the existence of an arbitration agreement, and Sundance does not deny that is the case.

## B.    *Procedural Background*

The procedural background includes various pertinent factual circumstances relevant to the motion now before the court, as well as procedural landmarks.   On

3

September 25, 2018, Morgan filed her Complaint in this action on her own behalf and on behalf of all other crew members and other hourly employees who have worked for Sundance at any time between three years before the commencement of this action and the date of final judgment in this matter.  The Complaint asserts a single claim of violation of the FLSA for failure to pay overtime wages and failure to pay minimum wages. Sundance was served with the Complaint on September 27, 2018.  *See* Proof of Service [Dkt. No. 2].  On October 18, 2018, Sundance filed its Unopposed Motion For An Extension Of Time To Answer Or Otherwise Plead To Plaintiff's Complaint [Dkt. No. 3], seeking an extension on the ground that counsel required additional time to complete an initial investigation and prepare a responsive pleading.  The court granted an extension to and including November 8, 2018, for Sundance to move or plead in response to Morgan's Complaint.  Text Order [Dkt. No. 4].

On November 8, 2018, Sundance filed a Motion To Dismiss Or, Alternatively, To Stay [Dkt. No. 9], in the interests of comity and judicial economy, on the ground that this action is duplicative of one filed over two years earlier in the Eastern District of Michigan.  That motion made no mention of the existence or applicability of an arbitration agreement between the parties in this case.  After briefing of Sundance's Motion To Dismiss Or, Alternatively, To Stay, the court denied that motion in an Order [Dkt. No. 16] filed March 5, 2019.  The court held, *inter alia*, that the Michigan action was a Michigan-only collective action, but this case involves nationwide claims, so the two actions were not duplicative.  Thereafter, Sundance filed its Answer And Affirmative Defenses [Dkt. No. 17] on March 19, 2019, which, once again, made no mention of the existence or applicability of an arbitration agreement between the parties in this case.

A scheduling conference in this matter was originally set for April 12, 2019, then continued to May 1, 2019.  The parties agreed to participate in a class-wide private mediation on April 15, 2019, in Chicago, Illinois, involving the Eastern District of

4

Michigan case, as well as this one.  Morgan asserts that, in anticipation of the mediation, the parties engaged in "informal discovery."  Specifically, she asserts that Sundance produced payroll data for nearly 12,000 members of the putative collective and thousands of pages of emails from Sundance's management.  Morgan asserts that she retained an expert to provide economic services for research and analysis relating to the payroll data, and that her counsel expended considerable time analyzing the emails in preparation for the mediation.  Sundance objects to the characterization of its provision of this information as "discovery."  Sundance points out that it did not request or receive any information from Morgan, that the emails produced by Sundance were produced in discovery in the Michigan action, not this lawsuit, and that the payroll data concerning potential class members was merely an expansion of a spreadsheet prepared for the Michigan action adding potential class members outside of Michigan.  Morgan asserts that the mediation was successful as to the Michigan action, but the parties agree that it was not successful as to this action.

On April 22, 2019, Sundance's counsel sent Morgan's counsel an email, which stated, in pertinent part, "Additionally, if you have a proposed schedule/report in mind, it may be beneficial if you could circulate a proposed report prior to the call [to discuss the planning report]."  Pl.'s Resp., Exhibit B [Dkt. No. 24-2].  Morgan characterizes this email as a "request" by Sundance that her counsel prepare and circulate a proposed litigation schedule and report for the May 1, 2019, scheduling conference.  Morgan asserts that her counsel prepared a report, but the scheduling conference was continued, again, to May 8, 2019.  Morgan asserts that at no point during the discussion of scheduling matters did Sundance ever mention the existence or applicability of an arbitration agreement between the parties in this case.

Sundance asserts that it is relevant that, on April 24, 2019, after the parties' unsuccessful mediation, the Supreme Court issued a decision in *Lamps Plus, Inc. v.*

*Varela*, 139 S. Ct. 1407 (2019).  Sundance asserts that the *Lamps Plus* decision provided "significant clarification" as to the availability of class arbitration by holding that class arbitration is not permissible when an arbitration agreement is silent or ambiguous as to the availability of class arbitration.  Morgan disputes the significance of *Lamps Plus* to this case.

Whatever the significance of the Supreme Court's decision in *Lamps Plus* may be, Morgan asserts, and Sundance does not dispute, that Sundance first notified her counsel of the existence of an arbitration agreement on May 1, 2018.  On May 3, 2019, Sundance filed its Motion To Compel Arbitration And Dismiss.  In light of that motion, the scheduling conference was continued for a fourth time, to July 8, 2019, by text order [Dkt. No. 22] dated May 3, 2019.

## C.     *The Motion To Compel Arbitration*

In support of its Motion, Sundance argues that all the requirements for enforcement of the parties' arbitration agreement have been met. These arguments do not address the real fighting issues, here, however.  Rather, the real fighting issue is whether Sundance waived its right to compel arbitration.  Sundance argues that it did not, because it has not substantially invoked the litigation machinery and because Morgan cannot show any prejudice.

In response, Morgan argues that she has demonstrated all the requirements to show waiver by Sundance of its right to arbitration.  Morgan contends that it is particularly relevant that Sundance waited eight months to assert a right to compel arbitration, while engaging in other litigation-related activities.  Morgan also contends that she has been prejudiced by Sundance's failure to make a timely motion to compel arbitration, while giving the appearance of having no sincere interest in avoiding litigation, thus

6

squandering the economies of arbitration.  She argues that she was prejudiced, because of the work and expense of preparing to address class-wide claims and damages.

In reply, Sundance reiterates that it has not acted inconsistently with its right to compel arbitration, nor has Morgan been prejudiced, because of the limited actions Sundance has taken in this case and the limited progress the case has made prior to Sundance's Motion To Compel Arbitration.  Sundance argues that Morgan has shown no prejudice for the further reason that it was Morgan's choice to engage in expensive and time-consuming activities in anticipation of a private mediation.

## II.     LEGAL ANALYSIS

### A.     Applicable Standards

The Eighth Circuit Court of Appeals agreed with several of its sister circuits that standards under Rule 12(b)(6) or Rule 56 of the Federal Rules of Civil Procedure apply to a motion to compel arbitration.  *See City of Benkelman, Nebraska v. Baseline Eng'g Corp.*, 867 F.3d 875, 881 (8th Cir. 2017) (citing cases).  The court concluded, further, that it did not need to choose between those rules, in a case where the parties both submitted materials beyond the pleadings in support of and resistance to a motion to compel arbitration, because in such a case, Rule 56 standards would apply pursuant to Rule 12(d).  *Id*. at 881-82.  Because both parties, here, have submitted materials outside of the pleadings, Rule 56 standards apply to Sundance's Motion To Compel Arbitration.  Thus, the question is whether there are genuine issues of material fact and whether Sundance is entitled to judgment as a matter of law that arbitration must be compelled.  *Id*. at 882.[2]

---

[2] Presumably, unlike the situation on summary judgment, however, when a party moves to compel arbitration, the court must consider whether *either* party is entitled to judgment as a

(Footnote continued . . .

7

"When reviewing an arbitration clause, [courts] ask only whether a valid arbitration agreement exists and, if so, whether the particular dispute falls within the terms of that agreement." *Dickson v. Gospel for ASIA, Inc.*, 902 F.3d 831, 834 (8th Cir. 2018) (citing *Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004); *Parm v. Bluestem Brands, Inc.*, 898 F.3d 869, 873 (8th Cir. 2018) (citing *Unison Co. v. Juhl Energy Dev., In*c., 789 F.3d 816, 818 (8th Cir. 2015)).   The parties do not dispute that these requirements are met, here.

On the other hand, "[p]arties can waive their contractual right to arbitration even if their agreement to arbitrate is valid and enforceable." *Schultz v. Verizon Wireless Servs., LLC*, 833 F.3d 975, 978 (8th Cir. 2016) (citing *Erdman Co. v. Phoenix Land & Acq., LLC*, 650 F.3d 1115, 1117 (8th Cir. 2011).   As the Eighth Circuit Court of Appeals has explained,

> A party waives its right to arbitration if it "(1) knew of an existing right to arbitration; (2) acted inconsistently with that right; and (3) prejudiced the other party by these inconsistent acts." *Lewallen [v. Green Tree Servicing, L.L.C.]*, 487 F.3d [1085,] 1090 [(8th Cir. 2007)]. A party acts inconsistently with its right to arbitrate if it "substantially invokes the litigation machinery before asserting its arbitration right, … when, for example, it files a lawsuit on arbitrable claims, engages in extensive discovery, or fails to move to compel arbitration and stay litigation in a timely manner." *Id*. (citations omitted). To safeguard its right to arbitration, a party must "do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration." *Id*. at 1091 (quoting *Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir.1995)).

---

matter of law on the issue, because the court must decide whether or not to compel arbitration, not simply decide whether there is a jury question on the issue.

*Messina v. N. Cent. Distrib., Inc.*, 821 F.3d 1047, 1050 (8th Cir. 2016); *ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 728 F.3d 853, 862 (8th Cir. 2013) (same test); *Wootten v. Fisher Investments, Inc.*, 688 F.3d 487, 492–93 (8th Cir. 2012) (same test); *Erdman Co. v. Phoenix Land & Acquisition, LLC*, 650 F.3d 1115, 1117 (8th Cir. 2011) (same test). The Eighth Circuit Court of Appeals has described the three elements cited, above, as "the elements of the *Lewallen* waiver test." *Id.*

The court's application of the "*Lewallen* waiver test" in *Messina* is instructive. In that case, application of the test led the Eighth Circuit Court of Appeals to conclude that the employer had waived its right to compel arbitration:

> Yosemite's conduct satisfies each element of the *Lewallen* waiver test. First, it knew of its existing right to arbitration because it possessed the arbitration agreement. Second, Yosemite acted inconsistently with its right to arbitrate by proceeding in court for more than eight months before asserting that right. *See Lewallen*, 487 F.3d at 1090. The *Lewallen* court concluded that the defendant in that case had waived its right to arbitration after filing discovery, seeking an extension of time to respond to the complaint, filing a joint motion to continue trial, and waiting eleven months to invoke its right until it filed its motion to dismiss. *Id.* at 1091. Yosemite's eight month delay is of similar length, and it participated in somewhat similar pretrial proceedings. Yosemite "substantially invoke[d] the litigation machinery," *id.* at 1090, by removing the case to federal court, filing an answer, participating in a pretrial hearing, filing a scheduling report which recommended a trial date and discovery deadlines, and filing a motion to transfer venue.

> Yosemite also failed to "do all it could reasonably have been expected to do" to raise its right at the earliest feasible time. *Lewallen*, 487 F.3d at 1091. Yosemite failed to mention the arbitration agreement in its answer which listed twenty four other affirmative defenses, in the joint Rule 26(f) report, at the pretrial scheduling conference, or in its motion to transfer venue. As in *Lewallen*, Yosemite "had several

opportunities to seek arbitration after [Messina] put it on notice of [his] claims, and it let each of those opportunities pass." *Id*. Moreover, until Yosemite filed its motion to compel arbitration in March 2015, it had consistently indicated that it was prepared to take the case to trial in federal court and never indicated otherwise. For example, in the joint Rule 26(f) report Yosemite recommended that the district court set a trial date on or after August 1, 2015. In its motion to transfer venue, Yosemite argued that it would be a hardship "to litigate this matter in Minnesota" as opposed to "litigating in the Eastern District of California," and that the court in California would have more expertise in applying California law. Through these actions and comments, Yosemite "evidenced a preference for litigation that supports a finding of waiver." *See PPG Indus., Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 109 (2d Cir.1997).

Yosemite only moved to compel arbitration after it lost the motion to transfer venue. The timing of Yosemite's actions demonstrates that it "'wanted to play heads I win, tails you lose,' which 'is the worst possible reason' for failing to move for arbitration sooner than it did." *Hooper v. Advance Am., Cash Advance Centers of Mo., Inc.*, 589 F.3d 917, 922 (8th Cir.2009) (quoting *Cabinetree*, 50 F.3d at 391). The district court thus did not err in finding that Yosemite acted inconsistently with its right to arbitration.

*Messina*, 821 F.3d at 1050-51.

As to the third element of the "*Lewallen* waiver test," the court also found prejudice to the employee:

Yosemite's actions caused Messina prejudice because, as the district court found, he "spent considerable time and money obtaining new counsel, partaking in pretrial hearings, and responding to the transfer motion." Prejudice from a failure to assert an arbitration right occurs when, for example, "parties use discovery not available in arbitration, when they litigate substantial issues on the merits, or when compelling arbitration would require a duplication of efforts." *Kelly v.*

10

*Golde*n, 352 F.3d 344, 349 (8th Cir.2003). Delay in seeking to compel arbitration "does not itself constitute prejudice." *Stifel, Nicolaus & Co. Inc. v. Freeman*, 924 F.2d 157, 159 (8th Cir.1991). Delay can however combine with other factors to support a finding of prejudice. *Kelly*, 352 F.3d at 350 (district court did not err in finding prejudice when party seeking arbitration caused "substantial delay," expenses, and potential duplication of efforts when it "failed to object or move to compel arbitration throughout a year of court proceedings").

Yosemite caused delay by waiting eight months from the time of filing to first mention arbitration. During that time Messina was forced to defend against Yosemite's motion to transfer venue to California where Yosemite sought to "litigate" the case. In response to that motion, Messina compiled affidavits and a list of witnesses. Later after Yosemite agreed to a discovery schedule, Messina served discovery on Yosemite. According to Messina, he has spent "considerable time and thousands of dollars" on the lawsuit to date, including obtaining new counsel. Further, granting Yosemite's belated motion to compel arbitration would likely cause Messina to duplicate his efforts to keep the case in Minnesota which Yosemite would presumably seek to arbitrate in California. *See Kelly*, 352 F.3d at 349–50. The district court thus did not err in finding that Yosemite's actions prejudiced Messina.

*Messina*, 821 F.3d at 1051. The court in *Messina* denied the motion to compel arbitration. *Id.*

With this guidance in mind, the court turns to application of the "*Lewallen* waiver test" in this case.

### B.    Application Of The Standards

### 1.    Knowledge of the right to arbitration

There is no dispute that Sundance knew of the existence of the arbitration agreement on which it now relies, and hence its right to arbitrate, well before this case was ever filed.  *Messina*, 821 F.3d at 1050 (first element of the "*Lewallen* waiver test" is whether the party seeking to compel arbitration ""(1) knew of an existing right to arbitration'" (quoting *Lewallen*, 487 F.3d at 1090)).   No rational trier of fact could conclude that Sundance did not know of the right to compel arbitration of claims by or against employees when that right was set out in a standard contract on the company's website.  *Id.* (the movant knew of its existing right to arbitration because it possessed the arbitration agreement); *see also City of Benkelman*, 867 F.3d at 882 (summary judgment standards apply to a motion to compel arbitration when the parties have submitted materials in support of and resistance to the motion); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042-43 (8th Cir. 2011) (en banc) (the court may grant summary judgment only "[w]here the record taken as a whole could not lead a rational trier of fact to find" a fact on which a party relies (internal quotation marks and citations omitted)).

### 2.    Actions inconsistent with the right

Whether the second element of the "*Lewallen* waiver test"—which asks whether the party seeking to compel arbitration "'acted inconsistently with that right,'" *Messina*, 821 F.3d at 1040 (quoting *Lewallen*, 487 F.3d at 1090)—is somewhat more complicated, here.   The complication arises, because the parties have not addressed whether this element depends upon a sort of "totality of the circumstances" analysis to determine whether the party seeking to compel arbitration "'invoke[d] the litigation machinery before asserting its arbitration right,'" or whether certain circumstances identified in *Messina* and *Lewallen* are each individually sufficient.  *See id.* (quoting *Lewallen*, 487 F.3d at 1090).   After reviewing how the test is framed and applied in those cases,

however, it is clear to the court that the circumstances identified are each individually sufficient.

First, in both *Messina* and *Lewallen*, the court explained, "A party acts inconsistently with its right to arbitrate if it 'substantially invokes the litigation machinery before asserting its arbitration right, … when, *for example*, it files a lawsuit on arbitrable claims, engages in extensive discovery, *or* fails to move to compel arbitration and stay litigation in a timely manner.'" *Id.* (emphasis added) (quoting *Lewallen*, 487 F.3d at 1090). The italicized words show that each circumstance identified is *one example*, independently sufficient, of "invok[ing] the litigation machinery" in a way that is "inconsistent[] with [a] right to arbitrate." *Id.* (internal quotation marks omitted).

Second, the follow-up statement—"To safeguard its right to arbitration, a party must 'do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration,'" *id.* (quoting *Lewallen*, 487 F.3d at 1091)—applies to each circumstance separately, because *each* is a failure to do all that the party can to raise the issue of arbitration as early as possible. To put a finer point on it, delay in and of itself is a failure to do all that the party can to raise the issue as early as possible.

Third, in *Messina*, the court found, first, that "Yosemite acted inconsistently with its right to arbitrate by proceeding in court for more than eight months before asserting that right." *Id.* (citing *Lewallen*, 487 F.3d at 1090). Thus, the court treated the delay *alone* as sufficient. The court then *also* determined that, like the movant in *Lewallen*, "Yosemite 'substantially invoke[d] the litigation machinery' by removing the case to federal court, filing an answer, participating in a pretrial hearing, filing a scheduling report which recommended a trial date and discovery deadlines, and filing a motion to transfer venue." *Id.* The fact that the court in both *Messina* and *Lewallen* considered more than one of the listed circumstances in its analysis of the second element, *see id.* at

1050-51 (citing *Lewallen*, 487 F.3d at 1091), does not mean that *only the totality of the circumstances* demonstrated that the movant had invoked the litigation machinery before asserting its arbitration right.   Rather, that analysis simply showed that the movant had previously invoked the litigation machinery *in more than one way,* where *each would have been sufficient.*

Here, tracking the analysis in *Messina*, Sundance acted inconsistently with its right to arbitrate by proceeding in court for almost eight months before asserting that right. *Id.*   That delay is comparable to the delay of more than eight months in *Messina*.   *Id.* Sundance *also* "substantially invoked the litigation machinery" by seeking an extension of time to respond to the Complaint, filing an answer, filing a motion to dismiss, and participating in the discussion of scheduling issues—even inviting Morgan's counsel to circulate a scheduling report, if counsel had prepared one.   *Cf. id.*; *Lewallen*, 487 F.3d at 1091. Separately or together, the delay and these actions by Sundance were inconsistent with asserting the right to arbitrate.

Contrary to Sundance's contentions, the second requirement of the "*Lewallen* waiver test" does not require that the movant's conduct during the delay involved some challenge to *the merits* of the claims.   The court did not consider that to be the case in either *Messina* or *Lewallen*, because the movant's conduct during the delay did not involve any action on the merits in either case, but the court still found that conduct inconsistent with the right to arbitrate.   Specifically, in *Lewallen*, the court found that the movant had waived its right to arbitrate during the eleventh-month delay by filing discovery, seeking an extension of time to respond to the complaint, and filing a joint motion to continue trial.   *Id.* at 1050 (citing *Lewallen*, 487 F.3d at 1091).   Similarly, the court in *Messina* found that the movant had waived its right to arbitrate during the eight-month delay by removing the case to federal court, filing an answer, participating in a pretrial hearing, filing a scheduling report which recommended a trial date and discovery

14

deadlines, and filing a motion to transfer venue. *Id.* Thus, Sundance's conduct during the delay was sufficient to waive a right to arbitrate, even if Sundance did not challenge the claims on the merits during the delay.

Furthermore, as in *Messina*, Sundance failed to "'do all it could reasonably have been expected to do' to raise its right at the earliest feasible time." *Id.* (quoting *Lewallen*, 487 F.3d at1091). Sundance failed to mention the arbitration agreement in its answer, which listed numerous (fourteen) other affirmative defenses. *Cf. id.* (the movant failed to raise the arbitration agreement in its answer containing twenty-four affirmative defenses). Sundance also failed to mention the arbitration agreement when moving to dismiss or stay, in light of the Michigan litigation, or in any of the requests for continuances of the scheduling conference. *Cf. id.* Thus, "[a]s in *Lewallen* [and *Messina*], [Sundance] 'had several opportunities to seek arbitration after [Morgan] put it on notice of [her] claims, and it let each of those opportunities pass.'" *Id.* (quoting *Lewallen*, 487 F.3d at 1091). "Moreover, until [Sundance] filed its motion to compel arbitration [on May 3, 2018,] it had consistently indicated that it was prepared to take the case to trial in federal court and never indicated otherwise." *Id.* The request for a stay pending completion of the Michigan litigation and the indication of Sundance's intent to participate in the scheduling conference to prepare the case for trial "'evidence[d] a preference for litigation that supports a finding of waiver.'" *Id.* at 1050-51 (quoting *PPG Indus., Inc.*, 128 F.3d 109).

Finally, as to this part of the "*Lewallen* waiver test," Sundance "only moved to compel arbitration after it lost the motion [to dismiss or stay]," and after participating in the failed mediation, and "[t]he timing of Sundance's actions demonstrates that it '"wanted to play heads I win, tails you lose," which "is the worst possible reason" for failing to move for arbitration sooner than it did.'" *Id.* at 1052 (quoting *Hooper*, 589 F.3d at 922). The court also is not persuaded that the Supreme Court's decision in *Lamps*

*Plus* somehow justifies Sundance's delay.  In *Lamps Plus*, the Court explained, "In *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010), we held that a court may not compel arbitration on a classwide basis when an agreement is 'silent' on the availability of such arbitration." *Lamps Plus*, 139 S. Ct. at 1412.  The Court then held that an "ambiguous" arbitration agreement cannot provide the necessary "contractual basis" for compelling class arbitration, adding that this was "a conclusion that follows directly from our decision in *Stolt-Nielsen*." *Id.* at 1415.  In this case, the arbitration agreement between Sundance and Morgan is not simply "ambiguous," but "silent" on the availability of arbitration of class claims.  Certainly, Sundance has not shown, and the court has not found, anything in the arbitration agreement creating such an ambiguity.  Thus, the ability to arbitrate individual claims, but not class claims, was apparent at the time Morgan filed this action in light of the decision in *Stolt-Nielsen*.

Consequently, as a matter of law, Morgan has proved the second element of the "*Lewallen* waiver test."

### 3.  Prejudice

The final element of the "*Lewallen* waiver test" is that the non-movant was "'prejudice[d]'" by the movant's "'inconsistent acts.'"  *Messina*, 821 F.3d at 1050 (quoting *Lewallen*, 487 F.3d at 1090).  Although, as the court explained, above, delay standing alone may establish that the movant acted inconsistently with the right to arbitrate, "[d]elay in seeking to compel arbitration 'does not itself constitute prejudice.'" *Id.* at 1051 (quoting *Stifel, Nicolaus & Co.*, 924 F.2d at 159.  On the other hand, "[d]elay can . . . combine with other factors to support a finding of prejudice." *Id.* (citing *Kelly*, 352 F.3d at 350).

Here, as in *Messina*, in addition to the delay caused by Sundance waiting almost eight months to notify Morgan's counsel of the arbitration agreement and assert its motion

16

to compel arbitration, Morgan was forced to defend Sundance's motion to dismiss or stay, even though that motion was not on the merits. *See id.* (the motion the non-movant was required to defend during the delay was a motion to transfer venue).   Although Morgan may not have received the payroll information and emails from Sundance as the result of discovery, and Morgan may have "chosen" to expend time and money reviewing them to prepare for a class-wide mediation, it is still clear that Sundance's delay caused Morgan reasonably to believe that her class-wide claims would proceed to class-wide mediation and, if mediation failed, to "litigation" in federal court. *Cf. id.* The question of prejudice, here, may not involve the potential for "duplication" of effort that was a problem in *Messina*, *see id.*, but it does involve a waste of effort that would not have been necessary, or a reasonable choice, had Sundance asserted its right to compel arbitration promptly after the lawsuit was filed.

Thus, as a matter of law, Morgan has also proved this third element of the "*Lewallen* waiver test."

## III.   CONCLUSION

The court finds, as a matter of law, that Morgan has proved all three elements of the "*Lewallen* waiver test," so that, as a matter of law, Sundance has waived its right to arbitrate Morgan's claims.

Upon the foregoing,

**IT IS ORDERED** that the defendant's May 3, 2019, Motion To Compel Individual Arbitration And Dismiss Plaintiff's Complaint [Dkt. No. 21] is **DENIED.**

**DATED** this 28th day of June, 2019.

_____
JOHN A. JARVEY, Chief Judge
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

17