IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| ROBYN MORGAN, on behalf of herself and all similarly situated individuals,<br><br>      Plaintiff,<br><br>vs.<br><br>SUNDANCE, INC.,<br><br>      Defendant. | Case No. 4:18-cv-00316-SHL-HCA<br><br><br>**BRIEF IN SUPPORT OF UNOPPOSED MOTION FOR APPROVAL OF SETTLMENT PURSUANT TO FAIR LABOR STANDARDS ACT** |

## TABLE OF CONTENTS

INDEX OF AUTHORITIES..................................................................................................iii

I.      INTRODUCTION ................................................................................................... 1

II.     FACTS ..................................................................................................................... 1

        A.      Plaintiff's Complaint ................................................................................... 1

        B.      Appellate Court Phase ................................................................................. 2

        C.      Settlement Negotiations ............................................................................... 3

        D.      Key Settlement Terms .................................................................................. 3

                1.      Allocation of Settlement Benefits.................................................... 4

                2.      Class Notice ..................................................................................... 5

                3.      Claim Form ...................................................................................... 5

                4.      Release of Claims............................................................................. 7

                5.      Notice to the Opt-In Plaintiffs......................................................... 8

III.    ARGUMENT............................................................................................................ 9

        A.      The Court Should Approve the Parties Settlement Since it
                Represents a Bone Fide Wage and Hour Dispute and the
                Proposed Settlement is Fair and Reasonable ................................................ 9

                1.      Bona Fide Wage Dispute ................................................................ 10

                2.      Fair and Reasonable....................................................................... 11

                        (a)     The State of Litigation........................................................ 11

                        (b)     The Complexity, Expense, and Likely Duration
                                of the Remaining Litigation................................................ 11

                        (c)     Whether the Settlement is the Product of Arm's
                                Length Negotiations ........................................................... 12

                        (d)     Whether the Settlement's Value Outweighs the
                                Potential Recovery if Litigation Continues........................ 12

                3.      The Notice to Collective Action Members is Appropriate.... 14

4.    The Attorneys' Fees and Cost Request is Reasonable............ 15

IV.    CONCLUSION....................................................................................... 15

## INDEX OF AUTHORITIES

### <u>Cases</u>

*Barbee v. Big River Steel, LLC,*
   927 F.3d 1024 (8th Cir. 2019) .............................................................15

*Brooklyn Savs. Bank v. O'Neil,*
   324 U.S. 697 (1945)..........................................................................10

*Del Toro v. Centene Mgmt. Co.,*
   No. 4:19-CV-02635-JAR, 2021 WL 1784368 (E.D. Mo. May 5, 2021) ..............9

*In re Gen. Motors Corp.,*
   153 F.3d 714 (8th Cir. 1998) ...........................................................1

*King v. Raineri Constr., LLC,*
   No. 4:14-CV-1828 (CEJ), 2015 WL 631253 (E.D. Mo. Feb. 12, 2015)..............11

*Krott v. New Directions Behav. Health, L.L.C.*
   4:19-CV-00915-DGK, 2022 WL 130978 (W.D. Mo. Jan. 13, 2022) ..................10

*Loveless v. EcoTech, LLC.,*
   No. 4:19-CV-02698-SNLJ, 2020 WL 1032239 (E.D. Mo. Mar. 3, 2020).... 10, 15

*Lynn's Food Stores, Inc. v. United States,*
   679 F.2d 1350 (11th Cir.1982) ......................................................1, 9

*Molloy v. Hoambrecker Enters., LLC,*
   No. 19-CV-06030-SJ-DGK, 2020 WL 11145247 (W.D. Mo. Sept. 8, 2020)......11

*Sanderson v. City of Potosi,*
   No. 4:13-CV-1457 NAB, 2016 WL 1746084 (E.D. Mo. May 3, 2016) ................1

*Sanderson v. Unilever Supply Chain, Inc.,*
   No. 10-CV-0775-W-FJG, 2011 WL 5822413 (W.D. Mo. Nov. 16, 2011)..........11

*Schneider v. Habitat for Human. Int'l, Inc.,*
   No. 5:14-CV-5230, 2015 WL 500835 (W.D. Ark. Feb. 5, 2015) .........................1

*Sims v. Goodwill Indus. of Ark., Inc.,*
   No. 4:19-CV-00289-KGB, 2019 WL 5957177 (E.D. Ark. Nov. 12, 2019)...........9

*Vines v. Welspun Pipes Inc.*,
  9 F.4th 849 (8th Cir. 2021) ..................................................................................9

*Zolin,*
  491 U.S. at 563 n. 7, 109 S.Ct. 2619 ..................................................................1

## **Statutes**

29 U.S.C. §216(b) ....................................................................................................2

29 U.S.C. § 216.......................................................................................................15

## I.    INTRODUCTION

On September 25, 2018 Plaintiff filed this as a case for failure to comply with the requirements of the Fair Labor Standards Act ("FLSA") including proper time keeping and payment of wages, including overtime.    Defendant denied the allegations of wage violations, and early in the case, Defendant pursued its arbitration rights, which ended up before the United States Supreme Court.

However, after the Supreme Court issued its decision, and upon remand to the Eighth Circuit Court of Appeals for continued briefing on the arbitration issue, and based upon discovery already completed, and a prior all day mediation, the parties reached a settlement.  (***See* Exhibit A**)[1].  Plaintiff now requests Court approval, and a hearing date if necessary,   pursuant to *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353 (11th Cir.1982).

---

[1] The Settlement Agreement is being provided to the Court separately for *in camera* review and is not attached as Exhibit A. *Schneider v. Habitat for Human. Int'l, Inc.*, No. 5:14-CV-5230, 2015 WL 500835, at *3 (W.D. Ark. Feb. 5, 2015); *Sanderson v. City of Potosi*, No. 4:13-CV-1457 NAB, 2016 WL 1746084, at *2 (E.D. Mo. May 3, 2016). The parties have agreed to keep payment amounts private as part of their settlement agreement. *See In re Gen. Motors Corp.*, 153 F.3d 714, 716 (8th Cir. 1998)(citing *Zolin,* 491 U.S. at 563 n. 7, 109 S.Ct. 2619 as recognizing a higher standard of proof for public disclosure than for in camera review.).

## II.   FACTS

### A.   Plaintiff's Complaint

Plaintiff Robyn Morgan worked at Defendant Sundance Inc.'s ("Sundance or Defendant") restaurant and alleged that Defendant was failing to properly pay overtime by (1) moving time from weeks in which she worked over 40 hours to weeks in which she had not; and (2) not paying overtime even in weeks in which she recorded over 40 hours of work, including being asked to work off the clock.  If true, all these allegations would violate the requirements of the FLSA.  Furthermore, Plaintiff claimed that the alleged violations were not confined to her; meaning, she was but one person of a class of other workers.  Thus, she filed her complaint under 29 U.S.C. §216(b) of the FLSA and alleged other similarly situated workers should be provided notice and the opportunity to exercise their statutory right to join the case.  The facts underlying the wage violations and similarly situated issues were set forth in her complaint. (*See,* ECF No. 1). Defendant denied the material allegations of FLSA violations.

### B.   Appellate Court Phase

After a failed mediation with a companion case involving only Michigan workers, and after exchanging significant employment data for the mediation, Defendant filed a motion to compel arbitration. On June 28, 2019, the Court denied Defendant's Motion to compel arbitration, and thereafter an Appeal was taken and

this Court's decision was reversed, which in turn, ultimately went to the United States Supreme Court, where the Court of Appeals decision was reversed with a remand to decide the arbitration issue in light of the Supreme Court's ruling. The parties faced new briefing deadlines at the Eighth Circuit Court of Appeals in August. However, with the benefit of the Supreme Court decision, at least a preliminary view of the Eighth Circuit's likely approach to the arbitration issue, a full day mediation, extensive employment time records, and for Plaintiff, the assistance of their expert, the parties resume settlement discussions.

## C.    Settlement Negotiations

Over the course of several months, the parties exchanged tentative proposals for settlement, including proposals as to the class size, payment structure, dollar amounts and fees. (*See* **Exhibit B**, Declaration of Jason J. Thompson at ¶46). The parties sought and obtained an extension of the briefing deadlines from the Eighth Circuit Court of Appeals to allow for more time to negotiate, and by mid August, they reached agreement in principle. The final Settlement Agreement was memorialized by late September, and executed by the parties soon thereafter (*See* **Exhibit A**).

## D.    Key Settlement Terms

In return for the undertakings by Plaintiff in this Agreement, and the Named Plaintiff's execution of this Settlement Agreement and Release of Claims and the

Opt-In Plaintiffs' endorsement of the Settlement Checks as referenced in paragraph 8 below, Defendant agrees to pay a total sum into a common fund.[2] as follows:

a.     A total all-in Gross Settlement Fund to pay Collective Member Settlement Benefits, costs of notice and administration, attorneys' fees and costs, and named plaintiff settlement (with general release).

b.     Release of claims by all Collective Members who receive notice and opt in by filing a timely claim form, and general employment release by Morgan.

c.     Gross Settlement Fund to be divided into (a) Collective Benefit Pool and (b) an amount for Attorney's Fees, Litigation Costs and Class Notice/Settlement Administration costs.

The two pools are subject to court approval, and any amounts not approved will be added to the amounts paid to Collective Members on a *pro rata* basis.

**1.     Allocation of Settlement Benefits:**

Using the Employee Data[3] provided to Plaintiff's counsel by Defendant, the Collective will consist of the 3,658 employees who worked at least one work week of 39 hours during the class period; who in turn collectively worked 30,501 work weeks, broken down as follows:

a.     11,210 work weeks of between 39-40 hours.

b.     19,291 work weeks of over 40 hours.

---

[2] The dollar amounts are all set forth in the Settlement Agreement that the parties are supplying to the Court for review *in camera*. Since this is not a Rule 23 class action, there is no need to publically reveal the dollar amounts for purposes of class members exercising their rights to opt out or object to the settlement.

[3] A spreadsheet identifying the Collective Members and their work history is attached to the Settlement Agreement as **Exhibit 1**.

c.    The average hourly rate is $9.41 and OT rate is $14.11.

**2.    Class Notice:**

Class Members will be sent class notice with a simple claim form asking them if they ever (a) had time shifted between work weeks that resulted in their total number of hours equaling 40 or less; or (b) if they ever worked and recorded over 40 hours in a work week but did not receive overtime.

**3.    Claim Form:**

Collective Members who timely submit a claim – either by mail or online – and affirmatively indicate at least one of the above events occurred while employed will be Eligible Class Members, who in turn will receive their respective share of the Collective Benefit Pool under the following structure and criteria, and based exclusively on the Employment Data:

a.    For each work week in which the Eligible Class Member worked less than 40 hours, they will be credited with the equivalent of one hour of OT at $14.11

b.    For each work week in which the Eligible Class Member worked 40 or more hours, they will be credited with the equivalent of one hour of straight time at $9.41

The total amount of money to be shared by Eligible Class Members will be calculated based on the total individual amounts calculated using the above criteria.

If the total is:

a.      Less than 50% of the fund an added amount needed to reach the 50% threshold   will be allocated to pay up to the total amount of notice and settlement administration until the 50% threshold  figure is reached;

b.      Over 50% but less than the full Collective Benefit Pool amount, then claims shall be paid using the above formula with no other payments owed by Defendant;

c.      Over the Collective Benefit Pool amount,  then each payment amount to the Eligible Collective Member shall be reduced on a pro rata basis so that the total payout, with the cost of notice and administration, equals the Collective Benefit Pool amount.

If an Eligible Collective Member does not accept the Settlement by failing to endorse the settlement check within 120 days of issuance, the amount to which that person would be entitled will revert to Defendant and not be distributed to any remaining class members.

The aforementioned payments will be paid in two separate installments due to the fact that claims must be received and processed for straight time or overtime payment rates, and pro-rata adjustment, if any, in order to calculate the amount for each settlement check.  First, the Attorney's Fees, Litigation Costs and Class Notice/Settlement Administration cost pool shall be paid within seven (7) calendar days of entry of the order approving settlement, or sooner if less than seven calendar days remain between entry of the approval order and December 28, 2022. Second, the Collective Benefit Pool shall be paid within twenty-one (21) days of notice to the parties by the settlement administrator that all settlement check amounts have

6

been calculated.   Defendant shall deliver to the Settlement Administrator, pursuant to their bank wire instructions. the above funds.

**4.      Release of Claims:**

Release by Robyn Morgan: An added sum will be paid to Plaintiff Morgan as the named plaintiff and for executing a general employment release. In return for the payments made pursuant to the Settlement, Robyn Morgan, by executing this Settlement Agreement and Release of Claims, agrees to release Sundance, Inc. and all of its predecessors, successors, affiliates, subsidiaries, parent companies, partners, shareholders, current and past employees, servants, insurers, agents, business partners, including any professional employer organizations, legal representatives and any other related entities, including, but not limited to any person or entity who may have allegedly jointly employed the Named Plaintiff, from any and all claims which were or could have been asserted in the Complaint or Amended Complaint in this Lawsuit, and any and all claims of any kind arising out of or reasonably related to the period Named Plaintiff worked for Defendant, or the separation of their relationship with Defendant, at any time prior to the date Named Plaintiff signs the Release.

Release by Opt-in Plaintiffs: In order to receive a settlement check, each Eligible Collective Member will be required to sign and return an acknowledgement that they are releasing their FLSA claims, called a "Settlement Acceptance and

7

Release." A copy of the Settlement Acceptance and Release and release language is attached as **Exhibit 2** to the Settlement Agreement.

In return for the payments made pursuant to the Settlement, the Opt-in Plaintiffs, by executing the Settlement Acceptance and Release. agree to release Sundance, Inc. and all of its predecessors, successors, affiliates, subsidiaries, parent companies, partners, shareholders, current and past employees, servants, insurers, agents, business partners, including any professional employer organizations, legal representatives and any other related entities, including, but not limited to any person or entity who may have allegedly jointly employed the Opt-In Plaintiffs, from any and all claims which were or could have been asserted pursuant to the FLSA in the Lawsuit. All such claims by all Opt-In Plaintiffs are fully, finally completely and irrevocably released and waived from the beginning of time through the date of Court Approval.

5.    **Notice to the Opt–in Plaintiffs:**

Notice will be issued by a mutually agreed to settlement administration company. If any payments to the Eligible Collective Members are returned as undeliverable, Defendant will provide Settlement Administrator with any last known personal identification information in its possession for such Plaintiffs to help correct any address errors. Any checks that are not negotiated within 120 days of the

first, or if needed, second, date of issuance shall be null and void and the funds will revert to Defendant.

## III.    ARGUMENT

**A.    The Court Should Approve the Parties' Settlement Since it Represents a Bone Fide Wage and Hour Dispute and the Proposed Settlement is Fair and Reasonable.**

Whether court approval is required for the settlement of all FLSA claims remains undecided in the Eighth Circuit. *See Vines v. Welspun Pipes Inc.*, 9 F.4th 849, 854 n.1 (8th Cir. 2021) (citation omitted) (observing a circuit split as to whether judicial approval is required for all FLSA settlements and electing to "leave the question of whether judicial approval is required for all FLSA settlements for another day"). When parties request judicial approval of the settlement, District Courts typically proceed under the assumption that judicial approval is required. *See, e.g., Del Toro v. Centene Mgmt. Co.*, No. 4:19-CV-02635-JAR, 2021 WL 1784368, at *1 (E.D. Mo. May 5, 2021); *Sims v. Goodwill Indus. of Ark., Inc.*, No. 4:19-CV-00289-KGB, 2019 WL 5957177, at *2 (E.D. Ark. Nov. 12, 2019).

When judicial approval of an FLSA settlement is required, courts must find the matter involves a bona fide wage and hour dispute, and the proposed settlement is fair and reasonable. *See Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1354-55 (11th Cir. 1982); *Krott v. New Directions Behav. Health, L.L.C.*,

4:19-CV-00915-DGK, 2022 WL 130978, at *2 (W.D. Mo. Jan. 13, 2022) (citation omitted).

### 1.    Bona Fide Wage Dispute

A bona fide wage dispute exists when an employee and an employer disagree "with respect to coverage or amount due under the [FLSA]." *Brooklyn Savs. Bank v. O'Neil*, 324 U.S. 697, 703 (1945). Throughout the pendency of this matter, the parties have disputed, among other things, whether the proposed collective action members were properly paid overtime compensation for all hours worked.  The parties continue to dispute whether Sundance violated the FLSA. (*See* Exhibit A, at p. 2.; ECF 17, Defendant's Answer). Likewise, the parties reviewed actual time and pay records, and Plaintiff hired an expert to calculate potential damage models for the alleged violations.  Defendant has strenuously disputed all of Plaintiff's allegations and thus there is indeed a bona fide dispute over Plaintiff's FLSA claims. All this evidences a bone fide dispute. *Loveless v. EcoTech, LLC.*, No. 4:19-CV-02698-SNLJ, 2020 WL 1032239, at *1 (E.D. Mo. Mar. 3, 2020):

> [t]he parties—both represented by counsel experienced
> in FLSA matters—have indicated they "exchanged
> and reviewed employment-related documents and engaged in weeks
> of negotiations based on plaintiff's counsel's review and analysis of
> [the] payroll records produced by defendant." The review and analysis
> of relevant records by opposing counsel and the "weeks of
> negotiations" over the implications of those records is enough to
> establish, for purposes here, that their dispute was bona fide.

*Id.*

## 2.    Fair and Reasonable

When determining whether an FLSA settlement is fair and reasonable, courts consider several factors, including but not limited to (1) the stage of litigation during which the settlement was reached; (2) the complexity, expense, and likely duration of the remaining litigation; (3) whether the settlement is the product of arm's length negotiations; and (4) whether the settlement's value outweighs the potential recovery if litigation continues. *See Molloy v. Hoambrecker Enters., LLC*, No. 19-CV-06030-SJ-DGK, 2020 WL 11145247, at *3 (W.D. Mo. Sept. 8, 2020); *King v. Raineri Constr., LLC*, No. 4:14-CV-1828 (CEJ), 2015 WL 631253, at *2 (E.D. Mo. Feb. 12, 2015); *Sanderson v. Unilever Supply Chain, Inc.*, No. 10-CV-0775-W-FJG, 2011 WL 5822413, at *2 (W.D. Mo. Nov. 16, 2011).

### (a)    The Stage of Litigation

The parties have been in litigation for several years, but most of that time has been spent fighting appeals on the arbitration issue. Nonetheless, the parties exchanged substantial information in connection with the early mediation that took place prior to the dispute over the propriety of arbitration.

### (b)    The Complexity, Expense, and Likely Duration of the Remaining Litigation

Based on the above fact, the parties face several more years of litigation over the merits of the FLSA claims. A settlement today, therefore, brings relief to a relatively low wage earner class with no further delay. Likewise, the current

11

settlement reduces the expense for both sides, including Defendant's liability for Plaintiff counsel's fees under the FLSA. The current settlement offers a much better alternative for both sides, and is in large part why Plaintiff's counsel have reduced their current lodestar by over 50% in exchange for the settlement.

**(c)     Whether the Settlement is the Product of Arm's Length Negotiations**

With a mediation, and several years of appellate proceedings at great expense, there is no basis to suspect collusion between the parties. The parties have experienced FLSA lawyers representing them and all firms have participated in the negotiations. The settlement is indeed the product of arm's length negotiations.

**(d)     Whether the Settlement's Value Outweighs the Potential Recovery if Litigation Continues**

Damages are, by definition, difficult to calculate in cases involving claims of off-the-clock work.    Plaintiffs, however, retained an expert in wage and hour damage calculations, David MacPherson, Ph.D., to create models for various iterations of a class – including nationwide under Rule 23 and a 216(b) collective. Furthermore, an assumed one-hour of off-the-clock work was used for the model, and furthermore, a one year term of employment.

Defendant denied all liability, and strenuously disputed that it required or permitted any employees to work off the clock—a fact which must be weighed against Plaintiff's model. Furthermore, the nature of fast-food employment is such

that long-term employment is rare. The evidence uncovered from reviewing the actual time records indicates that most workers did not work an entire year, and in some instances, they worked a few weeks. Therefore, Plaintiff's damage model represented an extreme result and overstatement of the likely damages, even setting aside the heavily disputed merits.

Furthermore, the issue of whether Plaintiff's claim should be committed to individual arbitration remains for resolution by the Eighth Circuit Court of Appeals. The Supreme Court remand leaves ample room for the Eighth Circuit to still conclude that Sundance did not waive its right to compel individual arbitration. This fact alone bears upon whether the original damages model should be discounted substantially.

In contrast, the settlement was based on one hour of work for the collective action worker population. If all collective members were eligible to receive overtime pay, for the full one hour of work, the total due would have been approximately $430,000. Under a more blended approach of straight time and overtime, as used in the settlement negotiations, the total owed would be approximately $321,990.00.

Under the proposed settlement, Defendant has guaranteed a payment pool of 50% of the total net settlement fund. If claims do not result in that threshold being owed as benefit payments, then each claimant's share will be increased on a pro rata

basis until the full 50% threshold  is exhausted. Therefore, in reality, participating claimants stand to receive much more than the one hour used in the model.  This is a significant potential benefit to the settlement.

If claims result in more than the 50% threshold of claimant benefit payments, but less than the fund's full amount, then the actual amount of the total payments will be paid by Defendant.  And only if the claims rate is exceptionally high for a worker population of this transient type will the fund's cap  be effectuated, in which case each claimant's amount will be reduced on a pro rata basis until the total fund amount is paid.

When considering the totality of the circumstances, the settlement in this matter is fair and reasonable and far outweighs the risks, and expense, of continued litigation.  To arrive at the settlement, the parties and their counsel engaged in arm's length negotiations, and no representations or promises were made to induce a party to enter into the Settlement Agreement. Had the matter been tried, the parties would have assumed real and inherent uncertainty, risk, expense, and time.

**3.	The Notice to Collective Action Members is Appropriate**

Notice will be direct mail to the workers, and is easily the best and most practicable notice available.

14

**4.      The Attorneys' Fees and Cost Request is Reasonable**

The Eighth Circuit has concluded "judicial approval of FLSA settlements in 29 U.S.C. § 216 does not extend to review of settled attorney fees." *Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019) (finding when parties separately negotiate attorneys' fees without regard to the plaintiff's FLSA claim, the amount an employer pays an employee's counsel "has no bearing on whether the employer has adequately paid its employees in a settlement."); *Loveless v. EcoTech, LLC.*, No. 4:19-CV-02698-SNLJ, 2020 WL 1032239, at *1 (E.D. Mo. Mar. 3, 2020). Nonetheless, Plaintiff's counsels' lodestar, most of which was on the appellate work, and faced even more in continued appellate briefing, greatly exceeds the negotiated fee amount, and all costs were reasonable and incurred in the prosecution of the case. (*See* Declaration of Jason Thompson).

## IV.    CONCLUSION

The parties' settlement meets the standards for a fair and reasonable resolution of the wage and hour dispute in Plaintiff's Complaint, there is more than a sufficient basis to approve the settlement, and Plaintiff requests the Court grant its unopposed motion and enter an order approving the settlement and dismissing the action with prejudice.

Dated: October 11, 2022          */s/ Jason J. Thompson*
                                 Jason J. Thompson (*Admitted*)
                                 MI Bar No. P47184
                                 **SOMMERS SCHWARTZ, P.C.**

One Towne Square, Suite 1700
Southfield, Michigan 48076
Phone: (248) 355-0300
jthompson@sommerspc.com

Paige Fiedler AT0002496
FIEDLER LAW FIRM, P.L.C.
8831 Windsor Parkway
Johnston, Iowa 50131
Phone: (515) 254-1999
paige@employmentlawiowa.com

*Attorneys for Plaintiffs*

.

## CERTIFICATE OF SERVICE

I certify that on October 11, 2022, I electronically filed the forgoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

*/s/ Jason J. Thompson*
jthompson@sommerspc.com

16