UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

**ROBYN MORGAN**, individually,
and on behalf of others similarly situated,

Plaintiff,

vs.

**SUNDANCE, INC.**,

Defendant.

Case No. 4:18-CV-00316

Honorable Stephen H. Locher

**PLAINTIFF'S SUPPLEMENTAL BRIEF ON THE "SIMILARLY SITUATED" STANDARD FOR COLLECTIVE ACTIONS AND APPROVAL OF PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT, PURSUANT TO 29 U.S.C. §216(b)**

## TABLE OF CONTENTS

INDEX OF AUTHORITIES............................................................................................................ ii

I.     INTRODUCTION ...........................................................................................................1

II.    THE FLSA "SIMILARLY SITUATED" STANDARD ..................................................2

III.   THE COURT SHOULD APPROVE CERTIFICATION OF THE PROPOSED
       216(b) COLLECTIVE ....................................................................................................5

IV.    CONCLUSION.............................................................................................................10

## INDEX OF AUTHORITIES

**Federal Cases**

*Behr v. Drake Hotel*,
  586 F. Supp. 427 (N.D. Ill. 1984) ................................................................................ 5

*Bouaphakeo v. Tyson Foods, Inc.*,
  564 F. Supp. 2d 870 (N.D. Iowa 2008) ........................................................................ 3

*Bouaphakeo v. Tyson Foods, Inc.*,
  765 F.3d 791 (8th Cir. 2014) ........................................................................................ 4

*Garner v. G.D. Searle Pharm. & Co.*,
  802 F. Supp. 418 (M.D. Ala. 1991) .............................................................................. 3

*Grayson v. K Mart Corp.*,
  79 F.3d 1086 (11th Cir.1996) ....................................................................................... 4

*Gregory v. Belfor USA Group, Inc.*,
  No. 12-cv-11, 2012 WL 3062696 (E.D. Va. July 26, 2012) ....................................... 5

*Heagney v. European American Bank*,
  122 F.R.D. 125 (E.D.N.Y. 1988) ................................................................................. 5

*Hipp v. Liberty National Ins. Co.*,
  252 F.3d 1208 (11th Cir. 2001) ................................................................................ 3, 4

*Hoffman-La Roche v. Sperling*,
  493 U.S. 165 (1989) .................................................................................................. 2, 3

*Hoffmann v. Sbarro, Inc.*,
  982 F. Supp. 249 (S.D.N.Y. 1997) ............................................................................... 2

*Jackson*,
  163 F.R.D. ................................................................................................................. 3, 5

*Martinez-Hernandez v. Butterball, LLC*,
  2008 WL 8658452 (E.D.N.C. Nov. 14, 2008) ............................................................. 3

*Mooney v. Aramco Servs. Co*,
  54 F.3d 1207 (5th Cir. 1995) ........................................................................................ 2

*Morisky v. Public Serv. Elec. and Gas Co.*,
  111 F.Supp.2d 493 (D.N.J.2000) .................................................................................. 4

*O'Brien v. Ed Donnelly Enters., Inc.*,
  575 F.3d 567 (6th Cir. 2009) ........................................................................................ 4

*Palacios v. Boehringer Ingelheim Pharm.*,
  2011 WL 6794438 (S.D. Fla. April 19, 2011) ........................................................................ 5, 9

*Romero v. Mountaire Farms, Inc.*,
  796 F. Supp. 2d 700 (E.D.N.C. 2011) .................................................................................. 4

*Salazar v. Agriprocessors, Inc. (Salazar II),*
  No. 07–CV–1006–LRR, 2008 WL 782803 (N.D.Iowa March 17, 2008) ................................. 3

*Sarviss*,
  663 F. Supp. 2d .................................................................................................................... 4

*Schmidt v. Fuller Brush Co.*,
  527 F.2d 532 (8th Cir.1975) ................................................................................................. 2

*Smith v. Heartland Auto. Servs., Inc.*,
  404 F. Supp. 2d 1144 (D. Minn. 2005) ................................................................................. 3

*Thiessen v. Gen. Elec. Capital Corp.*,
  267 F.3d 1095 (10th Cir. 2001) ............................................................................................ 4

*White v. KcPar, Inc.*,
  2006 WL 1722348 (M.D.Fla. June 20, 2006) ........................................................................ 5

## Federal Statutes

29 U.S.C. § 216(b) ..................................................................................................... passim

## I.    INTRODUCTION

Plaintiff Robyn Morgan, filed this action as a FLSA collective action, and on behalf of herself and all other similarly situated individuals, she has moved for approval of the parties' settlement pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b) (ECF No. 45).

An employer who violates the wage requirements of the Fair Labor Standards Act ("FLSA") can be sued by the affected employees collectively. 29 U.S.C. § 216(b).  Specifically, where the employer's violations are alleged to be widespread, the FLSA affirmatively grants an aggrieved employee the right to bring an action "for and on behalf of himself . . . and other employees similarly situated." *Id*.  However, an "opt in" action under § 216(b) of the FLSA prohibits any person from being a plaintiff in an FLSA action unless they file a written consent with the Court.  Actions pursued in such a representative capacity are referred to as "collective actions." *Id*.

The parties have reached a settlement on a collective action basis.  The proposed Collective (class) includes 3,658 people, all of whom were paid on an hourly basis and worked at Defendant's restaurants.  The Settlement Agreement identified them as follows:

> 7.    Using the Employee Data provided to Plaintiff's counsel by Defendant, the Collective will consist of the 3,658 employees who worked at least one work week of at least 39 hours during the class period; who in turn collectively worked 30,501 work weeks, broken down as follows:
>
> a. 11,210 work weeks of between 39-40 hours.
> b. 19,291 work weeks of over 40 hours.
> c. The average hourly rate is $9.41 and OT rate is $14.11.

(*See*, ECF 45, Exhibit A at ¶7).  Plaintiff's motion for approval of the parties' settlement, however, contained no argument as to whether the 3,658 workers meet the test for certification as a collective action pursuant to 29 U.S.C. § 216(b), which the Court has requested, and which is now provided, by way of this supplemental brief.

1

## II.  THE FLSA "SIMILARLY SITUATED" STANDARD

A FLSA action "may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b). Congress and the Supreme Court explicitly authorized employees to pursue FLSA claims on a collective basis through the opt-in procedure set forth in 29 U.S.C § 216(b). *See Hoffman-La Roche v. Sperling*, 493 U.S. 165, 170 (1989) ("A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged ... activity").  Thus, the FLSA "allows as class members only those who 'opt in.' " *Schmidt v. Fuller Brush Co.,* 527 F.2d 532, 536 (8th Cir.1975).

Furthermore, in *Hoffman La-Roche, Inc.*, the Supreme Court held that lower courts have authority to facilitate collective actions by approving the issuance of notice and overseeing the notice process. 493 U.S. 165, 173 (1989).[1] Commenting favorably on the important role of collective actions, the Supreme Court stated that:

> A collective action allows … plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged … activity. These benefits, however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.

---

[1] Although *Hoffmann-La Roche* is an Age Discrimination in Employment Act (ADEA) case, its analysis is applicable to FLSA cases because the ADEA explicitly incorporates the FLSA collective action provisions. *Mooney v. Aramco Servs. Co*, 54 F.3d 1207, 1212 (5th Cir. 1995); *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 n.15 (S.D.N.Y. 1997) ("[I]n *Hoffmann-La Roche*, the Supreme Court construed § 216(b) on its own terms, and its analysis applies with equal force to FLSA cases.").

*Id*. at 170; see also *Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 890 (N.D. Iowa 2008)(The FLSA provides the district court with "the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure.")(citing *Hoffmann–La Roche Inc. v. Sperling,* 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)).

In light of the FLSA's remedial purpose, courts have repeatedly held the similarly situated requirement of § 216(b) must be interpreted generously to permit workers to collectively pursue their FLSA claims. *See, e.g., Hipp v. Liberty National Ins. Co.*, 252 F.3d 1208, 1214 (11th Cir. 2001) ("We conclude the similarly situated requirement is not particularly stringent[.]"); *Jackson*, 163 F.R.D. at 431 (imposition of a rigorous inquiry would undermine "the importance of early judicial management to assure efficient resolution of similar claims."); *Garner v. G.D. Searle Pharm. & Co.*, 802 F. Supp. 418, 422 (M.D. Ala. 1991) (rigorous inquiry into § 216(b)'s similarly situated requirement "would unnecessarily hinder the development of collective actions and would undermine the 'broad remedial goals' of the antidiscrimination provisions of the FLSA.") (*quoting Hoffmann-La Roche*, 493 U.S. at 173); *Martinez-Hernandez v. Butterball, LLC*, 2008 WL 8658452, at *4 (E.D.N.C. Nov. 14, 2008) (denying *decertification* because it would mean that class members would be financially precluded from pursuing their smaller claims).

In the Eighth Circuit, "An employee may bring an FLSA action on behalf of himself and any other 'similarly situated' employees." *Salazar v. Agriprocessors, Inc. (Salazar II),* No. 07–CV–1006–LRR, 2008 WL 782803, at *3 (N.D.Iowa March 17, 2008) (quoting 29 U.S.C. § 216(b)). While the FLSA does not define the term "similarly situated," courts have held that plaintiffs "need show only that their positions are similar, not identical to the positions held by the putative class members." *Smith v. Heartland Auto. Servs., Inc.*, 404 F. Supp. 2d 1144, 1149 (D.

Minn. 2005)(citing *Grayson v. K Mart Corp.,* 79 F.3d 1086, 1096 (11th Cir.1996) (ADEA claim)(internal quotations omitted); *see also Morisky v. Public Serv. Elec. and Gas Co.,* 111 F.Supp.2d 493, 498 (D.N.J.2000) ("[A] collective action would only be appropriate where the plaintiffs make some showing that the nature of the work performed by other claimants is at least similar to their own." (internal quotations and alterations omitted)).  For example, employees are considered "similarly situated" if they "suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all plaintiffs." *Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 796 (8th Cir. 2014) (quoting *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009)), aff'd, 136 S. Ct. 1036 (2016).  In determining whether potential opt-in plaintiffs are similarly situated, a court may consider: "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." *Id*. (alteration in original) (quoting *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001)); *accord* 2 Wage & Hour Law § 20:10. Ultimately, however, the decision to certify a collective opt-in class under § 216(b) is within the sound discretion of the district court. *Bouaphakeo*, 765 F.3d at 796 (citing *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir.2001)).

But, the "situations need not be identical. Differences as to time actually worked, wages actually due and hours involved are, of course, not significant to this determination." *Romero v. Mountaire Farms, Inc.*, 796 F. Supp. 2d 700, 705 (E.D.N.C. 2011). A plaintiff "'need not show that his position is or was *identical* to the putative class members' positions; a class may be certified under the FLSA if the named plaintiff can show that his position was or is similar to those of the absent members.'" *Sarviss*, 663 F. Supp. 2d at 903 (citation omitted). Likewise, the

requirement of a common policy or plan "is not to say that there can be no differences among class members or that an individualized inquiry may not be necessary in connection with fashioning the specific relief or damages to be awarded to each class member." *Gregory v. Belfor USA Group, Inc.*, No. 12-cv-11, 2012 WL 3062696, at *5 (E.D. Va. July 26, 2012).

In determining what evidence is required to obtain conditional certification, some courts have relied solely on the allegations contained in the complaint. *See, e.g., Jackson*, 163 F.R.D. at 432; *Heagney v. European American Bank*, 122 F.R.D. 125, 128 (E.D.N.Y. 1988); *Behr v. Drake Hotel*, 586 F. Supp. 427, 430-31 (N.D. Ill. 1984). In addition, some courts view opt-ins who have already submitted consents to join, as evidence of the existence of similarly situated employees. *Palacios v. Boehringer Ingelheim Pharm.*, 2011 WL 6794438, at *4 (S.D. Fla. April 19, 2011).  In *Palacios,* the Court stated, "a plaintiff may present evidence of other employees who desire to opt-in via affidavits, consents to join the lawsuit or expert evidence of the existence of similarly situated employees." *Id*. at *4 (citing *White v. KcPar, Inc*., 2006 WL 1722348, at *3 (M.D.Fla. June 20, 2006).

It is against this well-developed backdrop that courts should decide conditional certification in a motion to approve FLSA settlement and Section 216(b).

## III.     THE COURT SHOULD APPROVE CERTIFICATION OF THE PROPOSED 216(b) COLLECTIVE

In this case, Plaintiff alleges that Defendant violated the FLSA by failing to properly pay overtime by (1) moving time from weeks in which she and other Hourly Employees worked over forty (40) hours to weeks in which they did not; and (2) not paying overtime even in weeks in which they recorded over forty (40) hours of work, including being asked to work off the clock. Defendant, Sundance, Inc. is "one of the largest franchisees in the Yum! Brands family, with 178 stores located throughout Iowa, Illinois, Indiana, Michigan, Ohio, and Wisconsin."  *See*,

5

http://www.perfecttacos.com/ (last visited 11/14/22).   Defendant's "primary brand is Taco Bell, but [they] also own stores that offer KFC, Pizza Hut, and A&W quality food products."[2] Defendant's website states that in order to make and serve the aforementioned food, Defendant employs hourly (non-exempt) employees, including but not limited to Crew Members, Team Leaders, and Shift Managers (collectively referred to as "Hourly Employees").

Review of employee time card and payroll data confirms that Defendant has employed several thousand Hourly Employees, including Plaintiff, within the past three years and across six states to make its food and serve its customers.  The workers, in each position, perform the same tasks at each restaurant since the restaurants are part of a franchise.

Important to the question of whether the hourly workers of the proposed collective are similarly situated, is the fact that the proposed collective is comprised of non-exempt hourly fast-food workers, specifically, in the franchise setting.  This is important because franchises are premised on systematic work and practices, including time clock and pay practices.

In a fast food franchise, simplicity and uniformity that is repeated to perfection is the goal. For example, job duties do not vary from location to location in franchises, specifically in fast food restaurants like Taco Bell. Team Member (f/k/a "Crew Member") is described on the Defendant's website as follows:

> The Taco Bell Team Member is the first face that customers see when they walk through the door or first voice they hear when they place a drive-thru order so YOU will set the tone for the Taco Bell customer experience and bring the great Taco Bell tastes to life. This is a very important job for a friendly, helpful individual who enjoys working in a fast-paced environment and paying attention to detail. Key responsibilities include taking orders or preparing food, assisting in resolving any service or food issues, maintaining food-safety standards and maintaining a clean, safe work and dining environment. A successful candidate will have a clean and tidy appearance, good work habits and a positive attitude. If you want to build a great career while providing fast, fun and friendly service to our customers, Taco

---

[2] For ease of reference, "Taco Bell" will be used to describe the restaurants operated by Sundance herein.

Bell is the place to learn, grow and succeed!

Shift Lead is described on the Defendant's Website as follows:

> You support the Restaurant General Manager (RGM) by running great work shifts and meeting Taco Bell standards. You take ownership and responsibility to solve problems, seek help when needed and are willing to help and guide others. Key responsibilities include making sure Team Members complete all assigned duties and serve safe, quality food in a friendly manner. You'll also ensure that the restaurant is a safe place for Team Members to work and customers to visit.
> **Shift Lead behaviors include:**
> * Solving customer complaints quickly and with a smile.
> * Providing feedback to Team Members in a positive manner.
> * Communicating openly and honestly with the Restaurant Management team.
> * Following cash, security, inventory and labor policies and procedures.

Of note is that both positions provide the same description across all the states in which they are listed. Additionally, both positions are full-time, hourly and apply to the first, second, and third shifts. *See*, http://www.perfecttacos.com/ (last visited 11/14/22).

Turning to the record, Plaintiff was employed by Defendant as an hourly Crew Member at the company's Taco Bell store, located in Osceola, Iowa. (*See*, ECF No. 1, the "Complaint") Defendant maintained a common pay policy and practices for its Hourly Employees of pay for all hours worked. (ECF No. 1, at ¶¶ 17-27). As alleged in the Complaint, Defendant's unlawful policies and practices were achieved by "shifting" hours that an employee works during one week over to the following week, so that an employee's time records do not demonstrate that the employee worked over 40 hours in a given work week. In order to aid in this, as alleged, Defendant maintains a whiteboard in its office on which it keeps track of its Hourly Employees' "shifted hours" from week to week. Defendant knew or should have known the business model it developed and implemented was unlawful under applicable laws. Furthermore, Defendant adopted a uniform policy and practice whereby it required its Hourly Employees to clock out, but required them to continue working, and failed to pay them their regular hourly rate for hours worked under

7

forty (40) hours in a workweek. Each potential opt-in plaintiff shared the same pay practices, was subjected to the same alleged improper policies and rules and would rely on the same evidence to establish the above. (*Id.*)   Thus, the Complaint filed in this matter, together with the above mentioned common knowledge as to fast food franchises, provides a solid basis to find that Robyn Morgana and her Taco Bell hourly co-workers were similarly situated when it comes to job and pay practices.

In addition to the Complaint, four (4) other Hourly Employees have filed consent to join forms in this case, indicating similar job duties and pay practices of the Plaintiff, and that they believe other Hourly Employees would join the case should they be made aware of it and a pattern of behavior by Defendant, all giving rise to similarly situated collective members.  (ECFs 23-1 & 26-1).  Each opt-in confirmed they were not paid properly by Defendant Sundance:

> I work or worked for Sundance, Inc. ("Defendant") as an hourly, non-exempt crew member and worked uncompensated overtime. Additionally, while working for Defendant, I was not paid my regular hourly rate for hours worked under 40 in a workweek.

*Id*.

Next, and as mentioned in the motion for approval of settlement, this action has a companion action against the same defendant Taco Bell franchisee, *Wood et al. v. Sundance, Inc.*, Case No. 16-cv-13598 (E.D. Mich. June 6, 2019), filed in the Eastern District of Michigan. That complaint involved the same wage and hour violation allegations and involved Taco Bell workers. Discovery from the Michigan case was shared with Plaintiff's counsel here, which included depositions of co-workers[3], emails from managers supporting the alleged improper pay practices at issue here and over 75 signed questionnaires of co-works confirming the pay violations.  In fact, Defendant filed a motion to stay this case based on the similar nature of the two cases, and

---

[3] Denise Wood and Revelation Russaw

8

described it as "overlapping" (ECF No. 9-1) and "nearly identical" (ECF No. 11 at p. 1). Again, as Defendant is a franchise business, Plaintiff, and all other Hourly Employees employed by Defendant, perform the same basic job duties. Thus, in this instance, in addition to Robyn Morgan, there are four opt-in workers in this case, and over 75 added co-corkers from the Michigan case, all of whom worked at Defendant's Taco Bell restaurants and filed suit over the same alleged wage and hour violations. This supports a finding of similarly situated. *Palacios, supra.*

Second, discovery responses provide a basis for finding that the collective is similarly situated. In response to requests for time records and payroll data for other Sundance Hourly Employees (i.e. Crew Members, Team Leaders, and Shift Managers) workers, Defendant produced an extensive spreadsheet. The spreadsheet listed each hourly worker whom Defendant believed meet the request – i.e. worked in a Taco Bell operated by Sundance, during the relevant time period – and listed each workweek by date, their hourly pay rate, the number of hours recorded for the time period and the total pay, including any overtime. This data was analyzed by Plaintiff's expert, who in turn, provided further refined spreadsheets of the same data to indicate which workers were similarly situated to Plaintiff for purposes of the case, including damages. (ECF no. 45, Exhibit B at ¶25). That spreadsheet was then reviewed by defense counsel, jointly refined with Plaintiff's counsel, and used in reaching the settlement currently before the court. (*Id.* at ¶26). The settlement identifies the Collective based on whether they worked 39 hours or more, and whether they were paid overtime in any work weeks. (ECF No. 45, Exhibit A). Only workers who shared those features – and thus were similarly situated – were included in the settlement.

Lastly, the extensive appellate record supports a finding that the Collective workers are similarly situated. The key appellate issue made by Sundance – application of the arbitration clause as a bar to all collective action workers –is premised on a uniform employment contract clause,

applicable to the hourly workers in the collective, and imposing the same legal effect on their FLSA court claims – a complete bar to litigating the claims.  (ECF No. 21-1 at pp. 10-11)  Thus, Defendant's main defense to the case – arbitration agreements – also supports a finding that Plaintiff has met her burden of proof as to the similarly situated standard.

## IV.    CONCLUSION

Plaintiff, and the 3,658 other Sundance workers included in the parties' proposed settlement are all similarly situated for purposes of the FLSA section 216(b) standards, including critically, as to job duties, the pleaded time-keeping violations allegations, hours worked and Defendant's pay policies and practices. The Complaint, opt-ins and a Michigan companion case reveal ample evidence to support a finding that the Collective is comprised of similarly situated workers under the FLSA.  Likewise, the legal defenses applied to all the collective members.

For purposes of Plaintiff's unopposed motion to approve the parties' settlement agreement, the Court has a sufficient basis to find the Collective meets the test for similarly situated pursuant to Section 216(b), and Plaintiff's request the Court grant the motion.

Dated: November 18, 2022                    Respectfully submitted,

_/s/ Jason J. Thompson_____
Jason J. Thompson (*Admitted Pro Hac Vice*)
MI Bar No. P64371
**SOMMERS SCHWARTZ, P.C.**
One Towne Square, Suite 1700
Southfield, Michigan 48076
248-355-0300
jthompson@sommerspc.com

10

Paige Fiedler AT0002496
FIEDLER LAW FIRM, P.L.C.
8831 Windsor Parkway
Johnston, Iowa 50131
Phone: (515) 254-1999
Fax: (515) 254-9923
paige@employmentlawiowa.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on November 18, 2022, I electronically filed the forgoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Jason J. Thompson*
jthompson@sommerspc.com

11