IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

ROBYN MORGAN, Individually and on
Behalf of All Others Similarly Situated,

Plaintiff,

vs.

SUNDANCE, INC.,

Defendant.

**Case no. 4:18-cv-00316**

**ORDER GRANTING UNOPPOSED
MOTION FOR APPROVAL OF
SETTLEMENT**

Plaintiff brought putative collective action claims against Defendant, alleging violations of the Fair Labor Standards Act (the "FLSA"). After several years of litigation, including before the United States Supreme Court, the parties seek the Court's approval of an agreement to settle Plaintiff's collective action claims. (ECF 45.) The Court finds that the proposed collective class members are similarly situated, the case involves a bona fide dispute, and the proposed settlement is fair and equitable. The Court therefore GRANTS Plaintiff's Unopposed Motion for Approval of Settlement Pursuant to Fair Labor Standards Act.

## I.    The Proposed Collective Class Members are Similarly Situated.

The Court has not yet certified a collective class. When parties "propose to settle a class of FLSA claims, the court must make a final class certification finding." *Lewis-Ramsey v. Evangelical Lutheran Good Samaritan Soc'y*, No. 3:16-CV-00026, 2017 WL 821656, at *2 (S.D. Iowa Jan. 10, 2017) (quoting *Stewart v. USA Tank Sales & Erection Co.*, No. 12–05136–CV–SW–DGK, 2014 WL 836212, at *2 (W.D. Mo. Mar. 4, 2014)).[1] "In order for the court to make a final

---

[1] *See also McCaffrey v. Mortg. Sources, Corp.*, No. CIV.A. 08-2660-KHV, 2011 WL 32436, at *3 (D. Kan. Jan. 5, 2011) ("When parties settle FLSA claims before the Court has made a final certification ruling, the court must make some final class certification finding before it can approve a collective action settlement."); *Smith v. Kaiser Found. Hosps.*, 2019 WL 5864170, at *5 (S.D. Cal. Nov. 7, 2019) ("[W]hen considering a motion to approve the settlement of . . . an FLSA collective action, before a . . . collective has been certified, the Court must first certify the . . . collective for the purpose of the settlement."); *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 471 (E.D. Cal. 2010) ("Even when the parties settle, the court 'must make some final class certification finding before approving a collective action settlement.'") (quoting *Carter v. Anderson Merchandisers, LP*, Nos. EDCV 08–00025–VAP (Opx), EDCV 09–0216–VAP (Opx), 2010 WL 144067, at *3 (C.D. Cal. Jan. 7, 2010)).

1

class certification ruling, the parties must make a record demonstrating all the plaintiffs are similarly situated." *Id*. (quoting *Stewart*, 2014 WL 836212, at *2).

"Plaintiffs may be similarly situated when 'they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs.'" *Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 796 (8th Cir. 2014) (quoting *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009), *aff'd*, 136 S. Ct. 1036 (2016)). "A court may consider '(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations.'" *Id*. (quoting *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir.2001)).

Plaintiff proposes a collective class of 3,658 hourly, non-exempt fast-food franchise employees who were affected by Defendant's alleged failure to properly pay overtime wages in violation of the FLSA. (ECF 47, pp. 9–10.) These employees are alleged to have all worked at least one work week of 39 hours or more and either: (1) had time shifted between work weeks that resulted in their total number of hours equaling 40 or less; or (2) worked and recorded over 40 hours in a work week but were not paid overtime. (ECF 45, Exhibit A.) By the nature of their employment in Defendant's fast-food franchises, these individuals all worked in similar employment settings and were subject to "common pay polic[ies] and practices." (ECF 47, pp. 6–7.) The evidence used to establish FLSA violations would be the same as to all of these employees, and defenses to FLSA claims would be similar, as demonstrated by the parties' litigation over the arbitration clause found in Defendant's employment contracts. (Id., pp. 8–10.) Given these facts, the Court is satisfied the collective class members are similarly situated and therefore certifies the class for settlement purposes. *See, e.g.*, *Judkins v. Southerncare, Inc.*, 74 F. Supp. 3d 1007, 1013 (S.D. Iowa 2015) (holding plaintiffs were similarly situated when, *inter alia*, "each Plaintiff claimed that Southerncare violated the FLSA in the same way—by requiring them to work evening and/or weekend hours without overtime pay or compensation time").

II.     **The Settlement Agreement Is a Fair and Equitable Resolution of a Bona Fide Dispute.**

Prior to approving the settlement of FLSA claims, the Court must determine whether (1) the case involved a "bona fide dispute," and (2) the proposed settlement is "fair and equitable." *Guy v. DMG Installations, Inc.*, No. 4:20-CV-00331-SBJ, 2021 WL 4973251, at *4 (S.D. Iowa

Oct. 22, 2021).[2] As to the first requirement, the parties have litigated this case for over four years, including before the United States Supreme Court. The case clearly involves a bona fide dispute.

To determine whether a proposed settlement is fair and equitable, courts "consider a broad array of factors." *Lewis-Ramsey v. Evangelical Lutheran Good Samaritan Soc'y*, No. 3:16-CV-00026, 2017 WL 821656, at *4 (S.D. Iowa Jan. 10, 2017) (quoting *Loseke v. Depalma Hotel Corp.*, No. 4:13-CV-3191, 2014 WL 3700904, at *1–2 (D. Neb. July 24, 2014). These factors include:

1. The amount of overtime to which class members may be entitled;
2. Whether the employee initiated the claim in a lawsuit;
3. Whether the employee is represented by counsel;
4. Whether the employer appears to be able to exercise undue leverage or influence over the employee;
5. How close to full compensation of the employee's claim is the proposed settlement;
6. Whether the settlement includes or excludes liquidated damages and/or the employee's attorney's fees and expenses;
7. Whether the proposed settlement requires the employee to release other non-FLSA claims or places other restrictions on the employee in order to receive FLSA compensation;
8. The extent of discovery that has taken place;
9. The stage of the proceedings, including the complexity, expense and likely duration of the litigation;
10. The extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses;
11. The absence of fraud or collusion in the settlement;
12. Whether the settlement agreement is the product of arm's-length bargaining; and
13. The experience of counsel who have represented the plaintiffs.

*Loseke*, 2014 WL 3700904, at *1–2; *Lewis-Ramsey*, 2017 WL 821656, at *4. The Court must consider these factors in the context of the parties' proposed settlement agreement, which the parties provided the Court for *in-camera* review. (ECF 45, Exhibit A.)[3]

Pursuant to the agreement, Defendant will create a settlement fund to pay collective class member benefits, the costs of notice and administration, attorneys' fees and costs, and an award to the Named Plaintiff for a general release and her participation in this case. (Id., pp. 4–5.) Class members will be sent notice and must affirmatively "opt-in" to be bound by the settlement. (Id., p. 4.) The notice will contain a claim form asking class members whether "they ever (a) had time

---

[2] *See also Meller v. Bank of the W.*, No. 3:18-CV-00033-JAJ-SBJ, 2018 WL 5305562, at *8 (S.D. Iowa Sept. 10, 2018), *report and recommendation adopted*, No. 3:18-CV-00033-JAJ, 2018 WL 5305556 (S.D. Iowa Oct. 1, 2018) (same); *Hansen v. Per Mar Sec. Servs.*, No. 3:12-CV-00113-RAW, 2013 WL 12310935, at *2 (S.D. Iowa May 15, 2013) (same).

[3] To ensure a clear record, the Court will file the Settlement Agreement on the docket under seal concurrent with this Order.

shifted between work weeks that resulted in their total number of hours equaling 40 or less; or (b) [] they ever worked and recorded over 40 hours in a work week but did not receive overtime." (Id.) The notice will also include a cover letter and a copy of a "Settlement Acceptance and Release." (Id., p. 8.) Class members will have 45 days to return the claim form. (Id. at 4.) Depending on their responses, class members will then be eligible for credit for either overtime or "straight time" or both. (Id., p. 5.) Depending on the number of class members who opt in, the per-member payments may be prorated. (Id.) The portion of the fund allotted to class member benefits is structured to ensure a minimum amount is paid to class members regardless of how many opt in. (Id.) This means opt-in class members could be paid: (a) more than the full amount of their allegedly unpaid overtime hours; (b) the exact amount of their allegedly unpaid overtime hours; or (c) some portion of their allegedly unpaid overtime hours, depending on the number of class members who opt in.

In exchange for these payments, opt-in class members agree to release "all 'Released Claims' against the 'Released Parties.'" (Id., p. 7.) The Released Claims include "any and all claims which were or could have been asserted in the Lawsuit, including, but not limited to all wage and hour claims of any type." (Id., p. 8.) The Released Parties include Defendant and related parties. (Id.) In addition to the standard release, the Named Plaintiff will agree not to seek reemployment with Defendant and to release any other claims that arose out of her employment with Defendant or her separation from that employment. (Id., pp. 7–8, 10.) The agreement further contains confidentiality and non-disparagement provisions. (Id., pp. 8–9.)

Counsel for both sides appear to be experienced and competent, and there is no evidence of fraud or collusion in the settlement; to the contrary, the settlement is the product of arms-length bargaining. While from a discovery standpoint the case is in the relatively early stages, the parties have been engaged in litigation for years over whether arbitration was required. (See ECF 43.) If the parties were to move forward with full-fledged discovery, it would be costly and cause further delay to a recovery already long in the making for class members. *See Guy v. DMG Installations, Inc.*, No. 4:20-CV-00331-SBJ, 2021 WL 4973251, at *6 (S.D. Iowa Oct. 22, 2021) ("[I]t is noteworthy this case is at an early stage and, consequently, the parties will not incur the expense of lengthy litigation and Plaintiffs avoid the risk of being unsuccessful in pursuing their claims against defendants."). The parties have, in any event, engaged in some discovery, as Defendant provided class counsel with employee data from which the parties were able to derive information sufficient to identify a collective class of hourly, non-exempt employees. (ECF 47, p. 13.)

4

Depending on the rate of participation, the settlement may provide complete (or more than complete) compensation to employees for allegedly unpaid overtime hours.

For these reasons, among others, the Court concludes the settlement agreement is fair and equitable and is "not a mere waiver of statutory rights by employees or overreaching by employers." *Guy*, 2021 WL 4973251, at *6 (approving FLSA settlement); *see also Hansen v. Per Mar Sec. Servs.*, No. 3:12-CV-00113-RAW, 2013 WL 12310935, at *2 (S.D. Iowa May 15, 2013) (approving FLSA settlement when, *inter alia*, "[n]o fraud or collusion [was] evident," the case "was vigorously pursued on both sides," and "Plaintiffs' counsel are experienced wage and hour litigators").

The Court further finds that Named Plaintiff Robyn Morgan's incentive award for her work as the named plaintiff and for executing a general employment release (see ECF 45, Exhibit A) is reasonable. An incentive payment is appropriate given Morgan's "time and effort devoted in pursuing the present litigation." *Wineland v. Casey's Gen. Stores, Inc.*, 267 F.R.D. 669, 677 (S.D. Iowa 2009). This is especially so given that Morgan's release is broader than that executed by other collective class members. (ECF 45-3, p. 10.)

Finally, the Court need not review "settled attorney fees" agreed to in connection with a settlement of FLSA claims. *Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019) ("[W]e agree with Barbee that any authority for judicial approval of FLSA settlements in 29 U.S.C. § 216 does not extend to review of settled attorney fees."). The Court does, however, "retain the authority to ensure the attorney fees were in fact negotiated separately and without regard to the plaintiff's FLSA claim, and there was no conflict of interest between the attorney and his or her client." *Id*. at 1027 n.1; *see also Vines v. Welspun Pipes Inc.*, 9 F.4th 849, 853 (8th Cir. 2021) (same). Here, the parties treated fees separate from their negotiations of "class size, payment structure, [and] dollar amounts" throughout their negotiations. (ECF 45-1, p. 8.) The Court is unaware of any conflict of interest between class members and class counsel.

## III.    Conclusion.

The Court concludes that the collective class members are similarly situated, the case involves a bona fide dispute, and the proposed settlement agreement is fair and equitable. The Court therefore **GRANTS** Plaintiff's Unopposed Motion for Approval of Settlement Pursuant to Fair Labor Standards Act.

**IT IS SO ORDERED.**

Dated: December 15, 2022

_____
Stephen H. Locher
UNITED STATES DISTRICT JUDGE